UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                    :

IN RE *EX PARTE* APPLICATION OF    :
TIBERIUS GROUP AG FOR AN ORDER TO  :
OBTAIN DISCOVERY FOR USE IN A     :   Misc. Action No. _____
FOREIGN PROCEEDING                  :
                                    :
-------------------------------------------------------------- X

### DECLARATION OF MICHAEL MEREDITH IN SUPPORT OF AN *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782

Pursuant to 28 U.S.C. § 1746, Michael Meredith declares:

1.      I am a British citizen residing in Zug, Switzerland.

2.      I am a director and shareholder of Tiberius Group AG, and in that capacity am familiar with the facts and circumstances underlying this Application.

3.      As set forth below, I have personal knowledge of the following facts, except as to those facts alleged on information and belief, and as to those facts I am informed and believe they are true.

**Relevant Parties**

4.      Applicant Tiberius Group AG ("Tiberius") is an asset management and non-ferrous metal trading company based in Zug, Switzerland. Tiberius physically trades in various products of tin, aluminum, lead and zinc

5.      Tiberius is engaged in the purchase and sale of tin concentrates in Nigeria.  In connection with these activities, on 24th August 2016 Tiberius created a subsidiary called West African Mineral Trading Ltd. ("WAMT"), based in Jos, Nigeria, for the exporting of tin concentrates.

6.      All of Tiberius' physical trading activities in Nigeria are conducted in US Dollars, with international funds transfers necessarily passing through correspondent banks in the United States.

7.      Michel Babic is a Croatian citizen residing in Lagos, Nigeria.  From 24th August 2016 until 20th May 2019, Michel Babic was a director of WAMT.

8.      Murtala Laushi is a Nigerian citizen residing in Jos, Nigeria.  Until 21st January 2019, Laushi was a director of WAMT.

9.      Malcomines Ltd. is a Nigerian company engaged in the procurement of tin concentrates and other minerals in the Plateau state of Nigeria.  Laushi was a director and sole shareholder of Malcomines until August 2019, at which time Babic became a 50% owner.

10.     Malcomines GmbH is a Swiss entity in which Babic and Laushi are equal shareholders.  Malcomines GmbH currently owns 100% of Malcomines Ltd.

11.     Laushi is also the owner of a Nigerian company entity called S&M Pan African Mines & Logistics Ltd. which was involved in Malcomines' activities on behalf of Tiberius.

**Summary of this Application**

12.     As set forth in detail below, Tiberius, through its subsidiary WAMT, advanced in 2019 US$34,445,000.00 in prepayments to Malcomines Ltd. for the purchase of tin concentrates from Nigeria.  The funds advanced including prepayment for 113 shipments of tin concentrate valued at US$30,095,120.87, as well as excess funding in the amount of US$4,349,879.13. Malcomines has failed to deliver the shipments purchased and has failed, despite demand, to return the excess funds advanced.  Tiberius has reason to believe that Malcomines Ltd. has simply absconded with the excess funding, and has sold, or in in the process of selling, the undelivered balance of tin concentrate, and intends to use the outstanding prepayment balance and proceeds

2

from the sale of the undelivered tin concentrate to capitalize its new Swiss affiliate, Malcomines GmbH.

13.    Tiberius has commenced legal proceedings in the High Court of Lagos State Nigeria to enforce its rights and collect amounts owed to it by Malcomines Ltd.  This Application seeks information from US banks believed to have operated as correspondent or clearing banks in connection with relevant transactions in US dollars.

**The Tiberius-Malcomines Ltd. Relationship**

14.    Tiberius, through WAMT, entered into a business relationship with Malcomines Ltd., a Nigerian company, in January 2018 (and via a former subsidiary since 2016), pursuant to which Malcomines Ltd. would source tin concentrates, procure them from Nigerian sellers in its name, pack the tin concentrates for transport, sell them to Tiberius and transport them to Lagos, Nigeria for export by WAMT on the behalf of Tiberius.

15.    Tiberius, in turn, entered into contracts for sale of the tin concentrates to third parties, including Gerald Metals.

16.    The relationship and business were introduced to Tiberius by Michel Babic and the relationship with Laushi has always been handled by Babic.

17.    To finance its activities pursuant to the agreement with Tiberius, Malcomines Ltd. required pre-financing for each cargo shipment to be sold and shipped to Tiberius.  WAMT provided that pre-financing.

18.    WAMT would issue requests for pre-financing to Tiberius in the form of Prepayment Invoices for cargo ordered from Malcomines Ltd., which Tiberius would pay to WAMT.  WAMT, in turn, would make payment to Malcomines.

**Malcomines' Diversion of Tiberius Funds**

19.     During 2019, Tiberius paid a total of US$34,445,000.00 based on Prepayment Invoices issued by WAMT for 113 containers of tin concentrates to be supplied by Malcomines Ltd. to Tiberius.

20.     In support of the Prepayment Invoices, Malcomines Ltd. issued packing list and waybills to Tiberius to document its purchase of tin concentrates for Tiberius, as well as its packaging and shipment of such cargo to Lagos for subsequent export by Tiberius.

21.     Tiberius has received only 97 containers of the 113 containers for which it advanced funds to Malcomines Ltd. through WAMT in 2019.  The remaining 16 containers have not been received.

22.     The actual value of the 113 containers of tin concentrate is approximately US$30,095,120.87.  The amount paid by Tiberius to Malcomines Ltd. exceeds the actual value of the 113 containers by US$4,349,879.13.

23.     The understanding of the parties was that the excess funds advanced by Tiberius to Malcomines Ltd. would be used for future purchases of tin concentrates by Malcomines Ltd. on behalf of Tiberius, or, if additional cargoes of tin concentrates were not available, the excess would be refunded to Tiberius.

24.     On 2nd August 2019, Tiberius and Malcomines Ltd via WAMT. agreed that exposure limits had been reached, and Tiberius therefore requested that the exposure on Malcomines Ltd. be reduced either by Malcomines Ltd. delivering additional shipments of tin concentrates to Tiberius or its returning the relevant funds. Tiberius confirmed to Malcomines Ltd. that no more additional funds would be advanced until the exposure had been reduced.

25.     On 5th August 2019, Malcomines Ltd. informed Tiberius, through WAMT, that it did not have the excess US$4,349,879.13 advanced by Tiberius with which to purchase additional tin concentrates, and that it was not in possession of any containers of tin concentrates to supply to Tiberius.

26.     Contrary to Malcomines Ltd.'s representation, Tiberius learned on  30th August 2019 that Malcomines had advised a third party that it was in possession of four containers of tin concentrates available for shipment on 13th September 2019.

27.     The four containers being prepared for export by Malcomines Ltd. as referenced above are being handled/processed using the unique methods designed by Tiberius and WAMT, including the fact that the number sequence of these containers continues the sequence of the shipments last delivered to Tiberius in Lagos and the fact that the same shipping logistics infrastructure was being used, Full Bliss Logistics Ltd., as the local forwarder to move the material to be loaded on a vessel and to custom clear the material.

**28.**     Based on the above, I believe that the four containers of tin concentrates and additional material that Malcomines Ltd. is offering to new overseas buyers was purchased by Malcomines Ltd. with the excess US$4,349,879.13 advanced by Tiberius.  Pursuant to the parties' agreement and course of dealing, these containers should have been delivered to Tiberius, but were wrongfully appropriated and diverted by Malcomines Ltd.

**Proceedings in the High Court of Lagos State, Nigeria**

29.     Based upon the foregoing, Tiberius and WAMT commenced proceedings against Malcomines in the High Court of Lagos State, Nigeria (the "Nigeria Proceedings").  Tiberius is seeking delivery of tin concentrates for which it has paid Malcomines Ltd., with a value in excess

of US$4 million, and for the excess payment by Tiberius to be paid back in the form of cash or assets.

30.     In connection with  the Nigeria Proceedings, on 10th September, 2019 Tiberius filed an  Ex Parte Motion for a Mareva Injunction restraining Malcomines and others acting in concert directly or indirectly, from dissipating or disposing, moving or removing from Nigeria any assets within the jurisdiction of the Court, freezing and/or attaching the bank accounts maintained by Malcomines at any of eighteen banks listed in the application and restraining such banks from releasing any funds or negotiable instruments for the credit of Malcomines Ltd or otherwise making transfers or payments of any money maintained in accounts by Malcomines Ltd. or its agents, privies, subsidiaries or related companies with such banks.  True and correct copies of Motion on Notice submitted on behalf of Tiberius to the Nigerian Court, together with my sworn Declaration in Support (without the voluminous Exhibits thereto) are annexed hereto as Exhibit 1.

31.     Following a hearing before the High Court of Lagos State, an Order of Mareva Injunction was issued on September 10, 2019.  A true and correct copy of the Order issued is attached hereto as Exhibit 2.

32.     The scheduled hearing for the extension of the Mareva Injunction is due to be heard on 21st October 2019, with further dates being set for the litigation against Malcomines at that time.  If the injunction is upheld and extended, Malcomines Ltd.'s assets and bank accounts will continue to be frozen.  If the injunction is lifted, Tiberius will proceed with an action to recover the funds and material owed to it by Malcomines Ltd.

33.     Since the issuance of the Mareva Injunction, additional evidence has come to light indicating that Malcomines has continued in full operation since its representation on 5th August

2019 that it was not in possession of additional shipments of tin concentrates with which to satisfy its obligation to Tiberius.

34.     Specifically, Tiberius has learned that additional shipments of tin concentrates and material has been delivered by Malcomines Ltd. to third parties via port Lagos and Port Harcourt, tin concentrates and minerals are currently being held at Bollore warehouse in Lagos due to the Mareva Injunction.

35.     Upon information and belief, material is still being offered by Malcomines Ltd. to offer counterparties as recently as 10th October, despite the fact that Malcomines Ltd. is prohibited from doing so by the Mareva Injunction.  Tiberius believes it is possible that Babic, Laushi and/or Malcomines Ltd. may be conducting business through related entities in Nigeria owned or controlled by them, including S&M Pan African Mines & Logistics Ltd., in an attempt to avoid the Mareva Injunction.

**Involvement of Michel Babic and Murtala Laushi**

36.     As noted above, during the relevant time period in 2019, Babic was a director of WAMT.  Babic had also been an employee of Tiberius since January 2018.  In his WAMT capacity, Babic submitted Prefinancing Invoices to Tiberius for tin concentrates to be sourced by Malcomines Ltd and helped with the logistics and operations of the tin concentrates business. During his tenure, he had the authority to initiate payments, including wire transfers, from WAMT to Malcomines Ltd. and others.

37.     Michel Babic has taken steps to frustrate Tiberius in taking control of WAMT and its bank accounts in Nigeria after Tiberius terminated his appointment as director of WAMT and an employee of Tiberius.  Babic represented to Tiberius that on 6th August 2019, the WAMT bank accounts had been closed and statements could no longer be provided.  Babic has purposefully

allowed the official corporate records in Nigeria not to be updated with the directorship changes reflecting his removal.  Babic will not comply with lodging appropriate documents to the relevant authorities in Nigeria to allow the update of the directors of the company.  The second of the two WAMT directors required under Nigerian law is employed by a law firm with which Babic has a relationship.  This director has also not cooperated with Tiberius' attempt to update the Nigerian corporate records.

38.     Tiberius has learned that the Swiss entity created and jointly owned by Babic and Laushi, Malcomines GmbH, acquired all the shares of Malcomines Ltd. on 28th August 2019, resulting in a valuation/capital increase of Malcomines GmbH of approximately US$4 million.  See, Exhibit 3.  This suggests that this amount would have been on account for Malcomines Ltd. at that time.  This capital infusion occurred within weeks of Malcomines Ltd. informing Tiberius that it was no longer in possession of the US$4,349,879.13 excess funding provided by Tiberius, or of additional shipments of tin concentrates to satisfy its obligation to Tiberius.

39.     In my experience and dealing with Malcomines, it is also common for Malcomines Ltd. to have in its possession or control shipments of tin concentrates or other minerals in advance of purchase of such material by Tiberius or others.  Malcomines Ltd. purchase of such materials has often been funded by excess funds advanced by Tiberius.

40.     Tiberius has reason to believe that the excess funds advanced by Tiberius, or the outstanding shipments of tin concentrates paid for by Tiberius but not delivered by Malcomines Ltd., are being or will used by Babic and Laushi to provide equity or financing support for their new company Malcomines GmbH.

41.     Through this Application, Tiberius seeks information regarding US dollar transactions instituted by Babic through WAMT in his capacity as a director, as well as US dollar

transactions to or for the benefit of Babic, Laushi, Malcomines Ltd. or related entities, including S&M Pan African Mines & Logistics Ltd. both before and after entry of the Mareva Injunction.

42.     Such information will be used to enable Tiberius to track the use and diversion of its funds, to identify non-compliance with the Mareva Injunction, to support the current proceedings in Nigeria to collect amounts due to it by Malcomines Ltd. and/or in support of further proceedings in Nigeria or elsewhere to arrest assets or otherwise recover amounts due to it.

43.     I have been advised by Nigerian counsel representing Tiberius in the pending legal action that evidence obtained from US banks through this Application would be admissible in Nigerian courts in support of current or future proceedings.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of October, 2019, at Zug, Switzerland.

Michael Meredith

9

Exhibit 1

IN THE HIGH COURT OF LAGOS STATE

IN THE LAGOS JUDICIAL DIVISION

HOLDEN AT LAGOS

SUIT NO: LD/        /2019

BETWEEN:

TIBERIUS GROUP AG                    ... 1ST CLAIMANT/APPLICANT

WEST AFRICAN MINERALS TRADING LTD    ... 2nd CLAIMANT /APPLICANT

AND

MALCOMINES LIMITED                              ...DEFENDANT

## MOTION ON NOTICE

BROUGHT PURSUANT TO ORDER 42 OF THE HIGH COURT OF LAGOS STATE (CIVIL PROCEDURE) RULES 2019 AND UNDER THE INHERENT JURISDICTION OF THIS HONOURABLE COURT

---

TAKE NOTICE that this Honourable Court will be moved on the ____ day of _____ 2019 at the hour of 9' 0 Clock in the forenoon or soon thereafter as Counsel may be heard on behalf of the Claimants/Applicants ("**Applicants**") praying this Honourable Court for:

1. **AN ORDER OF MAREVA INJUNCTION** pending the hearing and determination of the substantive suit herein restraining the Defendant, its servants, agents, nominees, privies, assignees, or others howsoever called, directly or indirectly, and by any means whatsoever, save with the prior consent of this Court from dissipating or disposing, moving, removing or causing to be dissipated or disposed, moved, removed from Nigeria any assets (whether moveable or immoveable) which are within the jurisdiction of this honourable Court and the territory of the Federal Republic of Nigeria.

2. **AN ORDER OF MAREVA INJUNCTION** freezing and/or attaching the Defendant's accounts maintained with the banks (stated as Nos 1-18 in **Schedule 1** to this Application) and restraining the aforementioned banks from releasing, further releasing any funds, negotiable instruments domiciled in the aforementioned banks standing to the credit of the Defendant or dealing in

1

any manner, whatsoever, or making transfers or payments of any money maintained in any account by the Defendant or its agents, privies, subsidiaries or sister/related companies or the like, with the aforementioned banks, pending the hearing and determination of the substantive suit herein.

3.  **AN ORDER** distraining/attaching the Defendant's assets, goods or other chattels, bonds or other securities, owned by the Defendant (which are in the possession/custody of the Defendant or third parties) within the jurisdiction of this honourable Court and the territory of the Federal Republic of Nigeria, pending the hearing and determination of the substantive suit herein.

4.  **AN ORDER** restraining further processing of Tin Concentrates and goods and any other minerals in the possession of the Defendant and restraining the movement of already processed Tin Concentrates or any other minerals whatsoever whether in the hands of the Full Bliss Logistics Company, Ballore Transport & Logistics, Cosco Shipping Line (to be Shipped via Songa Toscana Vessel/1905E whose details are in **Schedule 2** to this Application) or any other shipping agent whatsoever.

5.  **AN ORDER OF THIS HONOURABLE COURT** directing all relevant agencies including the Nigerian Ports Authority and the Nigeria Police to assist the Applicants in the enforcement of the Mareva Injunction or any other Order made by this Honourable Court.

6.  **AND For** such other order/orders as this Honourable Court may deem fit to make in the circumstances.

## THE GROUNDS OF THIS APPLICATION ARE:

1.  This honourable Court is sufficiently clothed with the requisite judicial powers to grant the Orders sought in this application.

2.  The Defendant has moveable and immovable assets within the jurisdiction of this honourable Court and elsewhere.

3.  The Applicants have reasonable cause to believe that the Defendant is about to dispose of its assets or remove its assets from jurisdiction of this honourable Court, and elsewhere.

4.  The Defendant's assets within the jurisdiction of this Court and elsewhere will be dissipated by the Defendant before the hearing and determination of the Motion on Notice unless restrained by this honourable Court.

5.  The assets (movable and immovable) of the Defendant within the jurisdiction of this honourable Court and elsewhere are the only means known to the Applicant by which the Applicant can obtain a fulfillment of any

order/judgment that might be made in their favour by this honourable Court in this suit.

6.  Unless this application is granted, the Defendant will remove its funds in the aforementioned banks and its other assets out of Nigeria and thereby frustrate the enforcement of any judgment in favour of the Applicant in this suit.

**Dated this 10th Day of September 2019.**

**MR OLUSEYE OPASANYA SAN**

**DR K.U.K. EKWUEME**

**OLABISI MAKANJUOLA [SIGNED]**

**CLAIMANTS/APPLICANTS' COUNSEL,**

**OLANIWUN AJAYI LP,**

The Adunola,

Plot L2, 401 Close,

Banana Island,

Ikoyi, Lagos

□drp@olaniwunajayi.net │□: 08029305505

**For Service On:**

**The Defendant**

No. 47 Liberty Boulevard,

Jos, Plateau State



3

IN THE HIGH COURT OF LAGOS STATE

IN THE LAGOS JUDICIAL DIVISION

HOLDEN AT LAGOS

SUIT NO: LD/         /2019

**BETWEEN:**

TIBERIUS GROUP AG                     ... 1ST CLAIMANT/APPLICANT

WEST AFRICAN MINERALS TRADING LTD          ... 2nd CLAIMANT /APPLICANT

**AND**

MALCOMINES LIMITED                              ...DEFENDANT

**AFFIDAVIT IN SUPPORT OF THE MOTION ON NOTICE**

I, **Michael Meredith**, Adult, Male, British Citizen of Dorfstrasse 13 CH-6340, Baar Switzerland, hereby make oath and state as follows:

1.  I am a director and shareholder of the 1st Claimant/Applicant ("**1st Applicant**") in the instant case and by virtue of my position I am conversant with the facts and the details of this case.

2.  I have the consent of the Claimants/Applicants ("**Applicants**") to depose to this Affidavit.

3.  Unless otherwise stated, the facts to which I depose are facts within my personal knowledge, derived in the course of my employment and from reading the case file and relevant documents in this matter. Where I refer to information provided to me by third parties, I have identified the source of that information and believe such information to be true to the best of my knowledge and belief.

4.  The 1st Applicant caused the 2nd Claimant/Applicant ("**2nd Applicant**") to be incorporated for the purpose of carrying on the 1st Applicant's business operations of purchasing Tin Concentrates in Nigeria. The business relationship between the Applicants is also governed by the Purchase Contract dated 10.01.18. **Now produced and marked as Exhibit MM1 is a copy of the Purchase Contracts.**

5.  The 2nd Applicant in carrying out this responsibility entered into a business relationship with the Defendant to (x) source the Tin Concentrates, (y) procure the Tin Concentrates in its own name, (z) pack the Tin Concentrates for transportation, (xx) sell them to the 1st Applicant and (xy) finally transport them to Lagos for export to the 1st Applicant.

6.  The Defendant always needed pre-finance from the 2nd Applicant for every cargo to be sold and shipped to the 1st Applicant. The 2nd Applicant presented the request for pre-finance to the 1st Applicant by issuing Prepayment Invoices and the 1st Applicant makes payment for the pre-finance of the cargoes ordered from the Defendant.

7.  At all material times relevant to this action, the 2nd Applicant acted as the agent of the 1st Applicant for the purposes of remitting funds received from the 1st Applicant to the Defendant and also as the agent of the Defendant for the purposes of delivering Tin Concentrates received from the Defendant to the 1st Applicant.

8.  This is the established course of dealings between the Parties and at no time did the 1st Applicant received any complaint from the Defendant of denial of receipt of funds from the 2nd Applicant.

9.  In 2019, the 1st Applicant paid a total of US$34,445,000.00 based on Prepayment Invoices issued by the 2nd Applicant for 113 Containers of Tin Concentrates as at 02.08.19 to be supplied the 1st Applicant by the Defendant. **Now produced and attached to this affidavit, are the bundle of documents of 2019 Prepayment Invoices and the Bank Payment slips marked as Exhibit MM2 and Exhibit MM3.**

10. As proof of receipt of payments, the Defendant sources and purchases the Tin Concentrates for the 1st Applicant and issues Packing lists and waybills to the 1st Applicant. **Now produced and attached to this affidavit are the bundle of documents of the 2019 Packing list and the Waybills both marked and as Exhibit MM4 and Exhibit MM5 respectively.**

11. The 1st Applicant has received a total of 98 Containers of the 113 Containers of Tin Concentrates expected, with an outstanding of 15 Containers which are still being expected.

12. However, the value of US$34,445,000.00 paid is in excess of the actual value of the 113 Containers of the Tin Concentrates as the actual value of the Containers is about US$30,095,120.87 and the understanding of parties was that the excess of US$4, 349,879.13 would be used to purchase more Tin Concentrates for the 1st Applicant and where Tin Concentrates are not

available to be supplied to the 1st Claimant, the excess of US$4, 349,879.13 would be refunded to the 1st Applicant.

13. On 05.08.19, the Defendant suddenly informed the 1st Applicant, via the 2nd Applicant, that the Defendant does not have the excess US$4, 349,879.13 funds to purchase Tin Concentrates; and do not have containers of Tin Concentrates to supply to the 1st Applicant.

14. However, to the surprise of the Applicant, on 30.08. 19, the 1st Applicant received information that the Defendant already have four (4) containers of Tin Concentrates for shipment, latest 13.09.19, to unknown overseas buyers at a time when the Defendant claims that it does not have containers of Tin Concentrates to supply to the 1st Applicant. **Now attached and marked as Exhibit MM6 and Exhibit MM7 are an email from Funso Opeyemi of Cosco Shipping dated 30.08.19 confirming that 4 Containers have been gated at the port with details ready to be shipped out and the Shipping Details of one of the 4 Containers.**

15. Furthermore, the containers being prepared for export by the Defendant are being handled/processed, adopting the unique methods designed by the Applicants, including the fact that the number sequence of these containers is in line with the sequence of the shipments last delivered to the Applicants in Lagos as opposed to a new and unrelated number sequence. Further the same logistics infrastructure is used and applied, i.e. Full Bliss Logistics Ltd.

16. I verily believe that this contemplated shipment to new overseas buyers has been sourced from the excess USD$4,349,879.13 and ought to have been delivered to the 1st Claimant but have been dishonestly diverted by the Defendant for sale to the overseas buyers.

17. I verily believe that the Defendant has diverted the funds supplied by the 1st Applicant, in sourcing for Tin Concentrates and diverting same to other overseas buyers in order to make extra money to the detriment of the 1st Applicant.

18. I verily believe that if the Defendant is not restrained from shipping out the 4 containers of Tin Concentrate currently at the port in Lagos awaiting shipment, and or dissipating assets up to the value of US$4,349,879.13 (Four Million, Three Hundred and Forty-Nine Thousand Eight Hundred and Seventy-Nine Hundred Dollars and Thirteen Cents), a judgment of this Honourable Court in favour of the Applicants would be rendered nugatory and a *fiat accompli* foisted on this Honourable Court.

3

19. I am aware that the Defendant's assets apart from Cash in bank, within the jurisdiction of this honourable Court and within the territory of the Federal Republic of Nigeria are:

    a. All Tin Concentrates at the Collection Station in Jos;

    b. 2 High Intensity 3 Disc Separator c/w control panel totalling an average of US$217,532.26.

    c. 4 Containers of Tin Concentrates at the Apapa Port with the estimated value of US$1,200,000.

20. I verily believe that there are special circumstances in the Applicants' case which necessitate the filing of this application before this honourable Court.

21. I verily believe that it is in the interest of justice that this application be granted.

22. The Claimants are able to and undertake to indemnify the Defendant for any damage or loss it may suffer in the event that this honourable Court ought not to have granted the prayers sought.

23. I swear to this Affidavit in good faith, conscientiously believing the contents to be true and correct, and in accordance with the Oaths Law of Lagos State.

**Deponent**

Sworn to at the High Court Registry, Lagos
this ____ day of September 2019

**BEFORE ME**

SHIYANBOLA (MRS)
CEO HIGH COURT

**COMMISSIONER FOR OATHS**



4

IN THE HIGH COURT OF LAGOS STATE

IN THE LAGOS JUDICIAL DIVISION

HOLDEN AT LAGOS

SUIT NO: LD/          /2019

BETWEEN:

TIBERIUS GROUP AG                           ... 1ST CLAIMANT/APPLICANT

WEST AFRICAN MINERALS TRADING LTD           ... 2nd CLAIMANT /APPLICANT

AND

MALCOMINES LIMITED                                         ...DEFENDANT

---

### WRITTEN ADDRESS IN SUPPORT OF THE MOTION ON NOTICE

---

1. **INTRODUCTION**

1.1   This Written Address is filed in support of this motion on notice (the "Application") by the Claimants/Applicants (the "Applicants").

1.2.   The Applicants instituted this suit against the Defendants by a writ of summons dated 10.09.19, claiming,

    a. An Order directing the Defendant to deliver to the 1st Claimant, the 15 Containers of Tin Concentrates which are due to the 1st Claimant; and

    b. AN ORDER directing the Defendant to deliver to the 1st Claimant, tin concentrates to the value of $4,349,879.13 (Four Million, Three Hundred and Forty-Nine Thousand Eight Hundred and Seventy-Nine Hundred Dollars and Thirteen Cents).

    ALTERNATIVELY,

    c. AN ORDER directing the Defendant to pay the 1st Claimant the sum of $4,349,879.13 (Four Million, Three Hundred and Forty-Nine Thousand Eight Hundred and Seventy-Nine Hundred Dollars and Thirteen Cents) being the amount owed to the 1st Claimant by the Defendant.

    d. Interest on the sum of $4,349,879.13 at 13% from the date of filing this suit till judgment is delivered and thereafter, at the rate of 10% until full liquidation

1.3.   The Applicants have further brought this Application praying this honourable Court for interlocutory orders of injunction restraining the Defendant from removing assets from Nigeria or disposing of, dealing with or diminishing its assets within the jurisdiction of this honourable Court and the territory of the Federal Republic of Nigeria and freezing or attaching the Defendant's accounts maintained with the banks named on this application, amongst others.

1.4.   The Application is supported by a 23-paragraph affidavit (the "**MM Affidavit**") deposed to by Michael Meredith, director and shareholder in the 1st Claimant/Applicant in the instant suit and 7 Exhibits. Reliance is placed on all the paragraphs of the Affidavit and the attached Exhibits.

## 2.   ISSUE FOR DETERMINATION

The Applicant humbly submits that the sole issue for determination in this matter is: *"Whether the Applicants have made out a case to entitle it to the grant of the reliefs sought".*

## 3.   ARGUMENT

3.1.   The power to grant injunctions (including Mareva injunctions) is inherent in the Court. As stated above Order 42 of the High Court Civil Procedure Rules 2019 (the "**Rules**") provide the basis of the power as it relates to the grant of a Freezing Injunction while the  and it states *"When by any contract a prima facie case of liability is established and there is alleged as a matter of defence a right to be relieved wholly or partially from such liability, a Judge may make an order for the preservation or interim custody of the subject- matter of the litigation or may order that the amount in dispute be brought into Court or otherwise secured".*

3.2.   The principles governing the grant of an order of freezing injunction have been enunciated in the case of **Sotuminu v Ocean Steamship (Nig.) Ltd.** (1992) NWLR (Pt. 239)1 where the Supreme Court stated that the factors to be considered are:

i.   that he has a cause of action against the defendant which is justiciable in England

ii.   that there is a real and imminent risk of the defendant removing his assets from jurisdiction and thereby rendering nugatory any judgment which the plaintiff may obtain:

2

    iii.   that the applicant has made a full disclosure of all material facts relevant to the application

    iv.   that he has given full particulars of the assets within the jurisdiction.

    v.   that the balance of convenience is on the side of the applicant; and

    vi.   that he is prepared to give an undertaking as to damages.

3.3.   In the instant case, the Applicants humbly submits that the facts as laid out in the MM Affidavit in support of this Application shows the liability of the Defendant to the Applicants and as such establishes a prima face case against the Defendants. Further the Applicants have disclosed the assets of the Defendants to the best of their knowledge.

3.4.   The Applicants further submits that the orders also being an injunction, the factors which the Courts need to consider in exercising its discretion on whether to grant an injunction or not is well laid out in our jurisprudence and quite similar to the conditions needed to be fulfilled in establishing a proprietary claim and a freezing order. In the case of **Onyesoh v Nnebedun** (1992) 3 NWLR pt.229 pg 315, the Supreme Court restated the following factors to be considered:

    a.   That there is a serious issue to be tried;

    b.   That the balance of convenience is on the side of the applicant;

    c.   That monetary damages will not be an adequate compensation for the injury resulting from the violation of his rights if he succeeds the action;

    d.   That the conduct of parties is a relevant factor.

3.5.   Thus the applicant must show that there is a serious issue to be tried, that the balance of convenience is on his side; that is, that more justice will result in granting the application than in refusing it and that damages cannot be an adequate compensation for his damage or injury, if he succeeds at the end of the day. See **Akinpelu v Adegbore** (2008) 10 NWLR (Pt.1096) 531 S.C.

3.6.   The Court further held in **Onyesoh v Nnebedun (supra)** that implicit in the above conditions is the requirement that the evidence must disclose that the applicant has a legal right to bring the substantive action on which the application is based and that he has established a prima facie right to the injunction. This principle finds further support in the case of **Sulu-Gambari v Bukola** [2004] 1 NWLR (Pt.853)122 where the Court of Appeal held that "It is a fundamental principle of our legal system for the grant of an application for an *injunction that the application will always be granted*

*to support a legal right*. The onus is on the applicant for an interlocutory injunction to establish that the balance of convenience is on his side. This is because *it is only when the extent of the inconvenience likely to be incurred by one side and by the other is determined that a court will be in a proper position to exercise its discretion to grant the injunction or refuse it*". (Italics Supplied).

3.7.   In line with this, the Supreme Court held in **Obeya Memorial Hospital v A.G. Federation** (1987) NWLR (Pt. 60) 325 that "*the object of interlocutory injunction is to protect the plaintiff against injury by violation of his right for which he could not be adequately compensated in damages recoverable in the action if the uncertainty were resolved in his favour at the trial; but the plaintiff's need for such protection must be weighed against the corresponding need of the defendant to be protected against injury resulting from his having been prevented exercising his own legal rights for which he could not be adequately compensated under the plaintiff's undertaking in damages if the uncertainty were resolved in the defendant's favour at the trial*". The court must weigh one need against another and determine where the "balance of evidence lies." It could be seen that the High Court and the Court of Appeal surrendered their discretion to the vagaries of ascertaining from affidavit evidence conclusive proof of proprietary or occupational rights at this early stage.

3.8.   In the instant case, the Applicants are seeking an order of this Honourable Court restraining the Defendants from removing from Nigeria any assets which are in Nigeria up to the value of $4,349,879.13 (Four Million, Three Hundred and Forty-Nine Thousand Eight Hundred and Seventy-Nine Hundred Dollars and Thirteen Cents). Flowing from this, the Applicants therefore submit to this Honourable Court that the question of if there is a serious question to be tried between the parties is answered in the affirmative and given the nature of the case, if the reliefs sort for are not granted, it would place the Applicant in a position which monetary damages would be unable to solve and which would render the judgment of this Honourable Court nugatory. Indeed there is a real risk of dissipation of the assets as demonstrated above, such that the judgment of the court would be unenforceable against the defendants. We urge this Honourable Court to so hold.

3.9.   In determining the balance of convenience, it has been held in the case of **Egbe v. Onogun** (1972) All N.L.R. 99 at 101 that the proper thing to do is

to look at both sides of the coin thus; if the injunction were to be granted and it turned out that it ought not to have been granted or if it were refused and it turned out it ought to have been granted who would have suffered more having regard to the case of both parties.

3.10. With respect to a Mareva application particularly, the Sotuminu case is illustrious on this point. In the Sotuminu case, the apex court in determining whether an application for a Mareva injunction should be granted stated as follows:

> "... But, above all, the greatest weakness to the Appellant's case was the balance of convenience. Now, if the Appellant had succeeded in showing that he has a cause of action against the Defendants he would have been obliged to show, inter-alia, like in an interlocutory injunction, that the balance of convenience was in his favour before he would be entitled to the grant of a Mareva injunction ... The intendment of the section as well as the implication of balance of convenience is that the court must weigh and determine on which side justice lies – whether there will be better justice in granting it than in refusing it".

3.11. In Adewale v Gov. Ekiti State [2007] 2 NWLR (Pt 1019) 634 at 652, para H, the Court of Appeal succinctly stated the test on balance of convenience as follows:

> "... the court is required to consider where the balance of convenience lies between the parties. This is a matter of competing legal rights. It is a question of fact and not law, and so the court is required to consider whether, if the applicant were to succeed in proving his entitlement to a perpetual injunction at trial of the substantive suit, he would be adequately compensated in damages for the loss he would have sustained if the Defendant/Defendant is allowed to continue doing what was sought to be enjoined between the time of the application and the trial". See also **Akinpelu v. Akinpelu** [2008] 10 NWLR (1096) 531 at 556, paras A-F.

3.12. We humbly submit that the balance of convenience is on the side of the Applicant as the Defendants are not likely to suffer any inconvenience by the grant of this application; rather the Applicant would be seen to suffer more where this application is refused. We urge this Honourable Court to so hold.

3.13. It has been held that unless in exceptional circumstances, where a person seeks an order of injunction, he is required to give an undertaking as to

damages, should it be subsequently found that the order ought not to have been made. This is said to be the price for the grant of the injunction. See **Victory Merchant Bank v. Pelfaco Ltd** [1993] 9 NWLR (Pt 317) 340 at 356 and **Afro-Continental Nigeria Limited v. Ayantuyi** [1995] 9 NWLR (Pt 420) 411 at 428, para F.

3.14. The Applicants have indicated their preparedness to provide undertaking as to damages in paragraph 22 of the MM Affidavit and averred that they are capable to meet the said undertaking.

**4.     CONCLUSION**

It is respectfully submitted that the facts disclosed in the material placed before the Court are such that the Court should grant the relief sought, pending the hearing and determination of the motion on notice.

**Dated this** 10th **day of September 2019**

**MR OLUSEYE OPASANYA SAN**

**DR K.U.K. EKWUEME**

**OLABISI MAKANJUOLA [SIGNED]**

**CLAIMANTS' COUNSEL,**

**OLANIWUN AJAYI LP,**

The Adunola,

Plot L2, 401 Close,

Banana Island,

Ikoyi, Lagos

□drp@olaniwunajayi.net │ □: 08029305505

**For Service On:**

**The Defendant**

No. 47 Liberty Boulevard,

Jos, Plateau State

## SCHEDULE 1 - LIST OF BANKS

1.  ACCESS BANK PLC
2.  CITIBANK NIGERIA LIMITED
3.  ECOBANK LIMITED
4.  FIDELITY BANK PLC
5.  FIRST BANK LIMITED
6.  FIRST CITY MONUMENT BANK LIMITED
7.  GUARANTEE TRUST BANK PLC
8.  HERITAGE BANK PLC
9.  KEYSTONE BANK PLC
10. SKYE BANK PLC
11. STANBIC IBTC BANK NIGERIA PLC
12. STANDARD CHARTERED BANK
13. STERLING BANK PLC
14. UNION BANK PLC
15. UNITED BANK FOR AFRICA PLC
16. UNITY BANK PLC
17. WEMA BANK PLC
18. ZENITH BANK PLC

## SCHEDULE 2 – SONGA TOSCANA VESSEL

(a)   MO: 9477385

(b)   MMSI: 636018281

(c)   Call Sign: A8VR4

(d)   Flag: Liberia [LR]

(e)   AIS Vessel Type: Cargo - Hazard A (Major)

(f)   Gross Tonnage: 48338

(g)   Deadweight: 62272

(h)   Length Overall x Breadth Extreme: 255.4m × 37.4m

(i)   Year Built: 2013

(j)   Status: Active

access >:-                                                                      InfoGrid 

## Accesspay Payment Receipt

| | |
|---|---|
| LAWYER FULNAME (Surname First): | MAKANJUOLA OLABISI |
| PHONE NUMBER (234...): | 08029305505 |
| EMAIL: | |
| BRANCH-NAME: | Lagos Branch - 058 |
| BRANCH-CODE: | 058 |
| DEPOSIT SLIP-NO: | 4027420 |
| PAYMENT TYPE: | CASH |
| CHEQUE NO (Cheq Only): | |
| Payment Reference: | NBA|28-Mar-2019|000295 |
| Branch Name: | ALFRED REWANE ROAD |
| Depositor Name: | MAKANJUOLA OLABISI |
| Date: | 28-Mar-2019 07:32 AM |
| Depositor ID : | Others |
| Payment Method: | Cash |
| Amount: | NGN 12,000.00 |
| Payment For: | NBA Stamp and Seal Fees |

Customer's Signature : ...........................................

NIGERIAN BAR ASSOCIATION COLLECTIONS

Exhibit 2

IN THE HIGH COURT OF LAGOS STATE
IN THE LAGOS JUDICIAL DIVISION
**HOLDEN AT LAGOS**
BEFORE THE HON. JUSTICE K.A JOSE (MRS)
TODAY TUESDAY 10TH DAY OF SEPTEMBER 2019

SUIT NO LD/2657/19

BETWEEN

TIBERIUS GROUP AG

WEST AFRICAN MINERALS TRADING LIMITED                    CLAIMANTS/APPLICANTS

AND

MALCOMINES LIMITED                                    DEFENDANT/RESPONDENT

## ENROLMENT OF ORDER
## MOTION EXPARTE
**BROUGHT PURSUANT TO ORDER 49 RULES 5 (1) & (2) OF THE LAGOS STATE HIGH COURT (CIVIL PROCEDURE) RULES 2019 AND UNDER THE INHERENT JURISDICTION OF THE HONOURABLE COURT**

**UPON THIS MOTION EXPARTE** dated the 10th Day of September, 2019 coming up before this Honourable Court.

**AND UPON READING** through the affidavit in support sworn to by MICHEAL MEREDITH, Adult, Male, British Citizen of Dorfstrasse 13 CH-6340, Baar Switzerland.

**AND AFTER HEARING** O. OPASANYA (SAN) of Counsel for the Claimants/Applicants move the Court in support of the Motion.



K. A JOSE (MRS)

**IT IS HEREBY ORDERED AS FOLLOWS:**

JUDGE



(1)  Leave is hereby granted for the Applicants to depart from the Provisions of Order 2 and Order 5 Rule 1 (2) of the Rules of Court on the requirements for Pre-Action Form 01 in line with the Practice Direction on Pre-emptive Remedies in Practice  Directions No 2 of 2019.

(2)  An Order of Mareva Injunction is made restraining the Respondent, its servants, agents, nominees, privies, assignees, or others howsoever called, directly or indirectly, and by any means whatsoever, save with the prior consent of this Court from dissipating or disposing, moving, removing, or causing to be dissipated or disposed, moved, removed from Nigeria any assets (whether moveable or immoveable) which are within the jurisdiction of this Court and the territory of the Federal Republic of Nigeria.

CERTIFIED TRUE COPY

K. A. JOSE (MRS)

JUDGE

(3)  An Order of Mareva Injunction is made freezing and/or attaching the Respondent's accounts maintained with the banks (stated as Nos 1-18 in Schedule 1 to the Application) and restraining the aforementioned banks from releasing any funds, negotiable instruments domiciled in the aforementioned banks standing to the Credit of the Respondent or dealing in any manner, whatsoever or making transfers or payments of any money maintained in any account by the Respondent or its agents, privies, subsidiaries or sister/related companies or the , with the aforementioned banks.

(4)  An Order is made directing the aforementioned banks, within 3 days of receipt of or service on them of the Order of Injunction of this Court , to file an affidavit to show compliance with the Orders of this Court.

(5)  An Order is made directing the Respondent, within 3 days from the date of receipt of or service on it of the Order of Injunction of this Court, to prepare and file before this Court details of all moveable and immoveable assets owned by it and their location within the jurisdiction of this Court or elsewhere.

(6)  An Order of Court directing all relevant government agencies including the Nigerian Ports Authority, and the Nigerian Police to assist the Applicants in the enforcement of the Mareva Injunction or any other order of this Court.

(7)  All other prayers on the application are refused and the above orders shall last for a period of seven days from the date of this order.

Dated this 10th day of September, 2019.

MRS. R. A. ALEJO
REGISTRAR

## SCHEDULE 1 - LIST OF BANKS

1.   ACCESS BANK PLC
2.   CITIBANK NIGERIA LIMITED
3.   ECOBANK LIMITED
4.   FIDELITY BANK PLC
5.   FIRST BANK LIMITED
6.   FIRST CITY MONUMENT BANK LIMITED
7.   GUARANTEE TRUST BANK PLC
8.   HERITAGE BANK PLC
9.   KEYSTONE BANK PLC
10.  SKYE BANK PLC
11.  STANBIC IBTC BANK NIGERIA PLC
12.  STANDARD CHARTERED BANK
13.  STERLING BANK PLC
14.  UNION BANK PLC
15.  UNITED BANK FOR AFRICA PLC
16.  UNITY BANK PLC
17.  WEMA BANK PLC
18.  ZENITH BANK PLC

Exhibit 3

Certified translation from German to English
Zug Commercial Registry Office
**2 Sep. 2019**

**Document no.** 46/19
**dated** 28/08/2019
**Copy** 1/4

3 SEP. 2019

Document no.                    Folder no. 12676

# PUBLIC RECORD

on the decisions made by the extraordinary shareholder meeting

- Ordinary capital increase -

of

### Malcomines GmbH

based in Cham

The undersigned notary for Zug canton, Michael Renggli, lawyer, today, 28 August 2019, attended the extraordinary shareholder meeting of Malcomines GmbH, Cham, at his office at Baarerstrasse 21, 6300 Zug. The following record was created for the resulting resolutions:

**I.** Meeting opened

**1.**
Mr Misel Babic, born on 10 August 1973, Croatian national, residing in Zagreb, Croatia, managing director of the company, opens the shareholder meeting and assumes the role of chairperson. He also acts as secretary and vote-counter.

[Emblem:]
ZUG CANTON
COMMERCIAL REGISTER

Digitally signed by: Cristina Fiesolani-Cangi (Qualified Signature)

It is hereby officially certified that this copy matches the original document.
The original document is available in hardcopy.
Location: Zug
Date: Wednesday, 11 September 2019 8:28:43 AM CEST

[Stamp: MICHAEL RENGGLI
LAWYER • NOTARY PUBLIC]

[Signature]

**2.**

The chairperson finds that:

- The company's total share capital of CHF 20,000.00 is represented;
- Today's extraordinary shareholder meeting is constituted as a General Shareholders' Meeting ('*Universalversammlung*' under Swiss law) as defined by Art. 805 Para. 3 and 5 No. 5 of the Swiss Code of Obligations (OR) in conjunction with Art. 701 OR and Art. 17 of the company statutes, and has a quorum.

No objections are raised against these findings.


II. Share-capital increase

The shareholder meeting decides, unanimously and without vote abstention, to ordinarily increase the share capital by CHF 3,900,000.00 from CHF 20,000.00 to CHF 3,920,000.00, and establishes the following:

a) Total nominal amount by which the share capital is to be increased: CHF 3,900,000.00.

b) Amount of contributions to be paid in for this: CHF 3,900,000.00.

c) 3,900 shares, each with a par value of CHF 1,000.00, are issued.

d) The issuing amount is USD 4,000,000.00 (USD 1,025,641 per share).

e) Dividend entitlements to commence on the date on which the share-capital increase is entered into the commercial register.

f) Type of contributions:

- A contribution in kind of 1,000,000 shares with a par value of 1 NGN (Nigerian naira), and thus NGN 1,000,000, from Malcomines Limited, 45 Liberty Boulevard, Jos, Plateau State, Nigeria, with a total value of USD 4,000,000.00, for which 1,950 Malcomines GmbH shares with a total par value of CHF 1,950,000.00 are issued to each contributing party – Misel Babic and Murtala Laushi (each currently 50% shareholders of Malcomines GmbH) – for an issuing amount of USD 2,000,000.00 (USD 1,025,641 per share).
The difference between the issuing price and par value of the shares due to be issued (currency difference) is credited to the company's reserves (capital-contribution reserve).

[stamp: MICHAEL RENGGLI
LAWYER • NOTARY PUBLIC]

[signature]

g) Prior rights for individual categories: None.

h) Article 10 of the company's by-laws includes a non-competition clause for the shareholders, and articles 11 and 12 mention a pre-emptive right. Articles 6 and 7 govern the transferability of shares.

i) The previous shareholders' subscription right is fully secured. Any subscription rights not exercised are placed at the disposal of the senior management, which can use these in the interests of the company, ensuring equal treatment of all shareholders. As all shares are assigned to the two capital contributors and previous shareholders as a result of the capital contribution, no further assignment applies.

**III**. Execution

In accordance with Art. 781 Para. 2 OR, this increase in share capital must be performed by the senior management within three months.

If the increase is not entered into the commercial register within this time, today's decision by the extraordinary shareholder meeting shall cease to apply.

**IV.** Entry and publication

The unanimous decisions made at this general shareholders' meeting must be entered and published in the Zug cantonal commercial register.

The company's senior management is authorised to take all necessary legal action to ensure the extraordinary shareholder meeting's decisions are entered, and in particular to make the necessary editorial changes to the files itself, or to have this done by an authorised party.

Zug, 28 August 2019

[stamp: MICHAEL RENGGLI
LAWYER • NOTARY PUBLIC]

[signature]

4

The chairperson

[signature]

Misel Babic

[stamp: MICHAEL RENGGLI
LAWYER • NOTARY PUBLIC]

[signature]

# PUBLIC NOTARIAL REGISTRATION

The undersigned notary of Zug canton, Michael Renggli, lawyer, Baarerstrasse 21, 6300 Zug, hereby publicly certifies that:

1.  The aforementioned record accurately reflects my experiences and perceptions at today's extraordinary shareholder meeting for Malcomines GmbH, Cham. It has been personally signed in front of me by Mr Misel Babic.

2.  Mr Misel Babic identified himself through his passport.

3.  The specific documents mentioned in the record were presented to me and the extraordinary shareholder meeting. They are enclosed with this record as an integral part thereof.


This record is issued in 4 copies as follows:
1 copy for the notary
1 copy for the commercial registry office
2 copies for the company


Zug, 28 August 2019                              The notary:

                                                        [stamp: MICHAEL RENGGLI
                                                        LAWYER • NOTARY PUBLIC]

                                                        [signature]

*I hereby certify that the foregoing translation is a true and complete translation of the original.* *In witness whereof I have hereunder set my hand and seal at*

*Brühl,* 14.10.2019

Certified translation from German to English
Zug Commercial Registry Office
**2 Sep. 2019**

**Document no.** 47/18
**dated** 28/8/2019
**Copy** 1/4

3 SEP. 2019

Document no.          Folder no. 12676

# PUBLIC RECORD

on the decisions made by the extraordinary shareholder meeting

- Findings on the ordinary capital increase -

of

**Malcomines GmbH**

based in Cham

The undersigned notary for Zug canton, Michael Renggli, lawyer, today, 28 August 2019, attended the management meeting of Malcomines GmbH, Cham, at his office at Baarerstrasse 21, 6300 Zug. The following record was created for the resulting resolutions:

I. Meeting opened

**1.**
Mr Misel Babic, born on 10 August 1973, Croatian national, residing in Zagreb, Croatia, sole managing director of the company, opens the shareholder meeting and assumes the role of chairperson. He also acts as secretary and vote-counter.

**2.**
The chairperson finds that:
− The company's sole managing director is present;
− The senior management is thus totally present and has a quorum.

No objections may be raised against these findings.

[stamp: MICHAEL RENGGLI
LAWYER • NOTARY PUBLIC]

[signature]

2

**3.**
The chairperson advises that the senior management has executed the decisions made by the extraordinary shareholder meeting on 28 August 2019 regarding ordinarily increasing the share capital by CHF 3,900,000.00 from CHF 20,000.00 to CHF 3,920,000.00.

**II.**
The chairperson presents the following documents:
- The public record of the decisions made by the extraordinary shareholder meeting on 28 August 2019 regarding ordinarily increasing the share capital by CHF 3,900,000.00 from CHF 20,000.00 to CHF 3,920,000.00.

- 2 subscription forms as per Art. 781 Para. 3 OR, regarding full subscription of the newly issued share capital by:
  a) Mr Misel Babic, Croatian national, residing in Zagreb, Croatia: 1,950 shares at a par value of CHF 1,000.00, for an issuing amount of USD 2,000,000.00
  b) Mr Murtala Laushi, Nigerian national, residing in Jos, Nigeria: 1,950 shares at a par value of CHF 1,000.00, for an issuing amount of USD 2,000,000.00

- Contribution-in-kind contract dated 28 August 2019 regarding the contribution in kind stated in Article 4a of the by-laws, which are yet to be accepted. The contract is concluded between the company and the capital contributors, and stipulates that said capital contributors will contribute all shares of Malcomines Ltd, Jos, Nigeria, totalling USD 4,000,000.00, through 3,900 shares, each with a par value of CHF 1,000.00. This capital contribution serves to fully cover the contributions promised by the subscribers.

- Capital-increase report by the senior management as per Art. 781 Para. 5 No. 4 in conjunction with Art. 652e OR dated 28 August 2019.

- Audit confirmation as per Art. 781 Para. 5 No. 4 in conjunction with Art. 652f OR dated 28 August 2019 by JOLFID CONSULTING di J. RUSIMBAMIGERA (CHE158.383.233), Mendrisio, according to which the managing directors' report is complete and correct.

[stamp: MICHAEL RENGGLI
LAWYER • NOTARY PUBLIC]

[signature]

3

**III.**
Based on these documents, the senior management unanimously establishes the following.

1. All newly issued shares have been duly subscribed.

2. The promised contributions for 3,900 shares, each with a par value of CHF 1,000.00 and a total issuing amount of USD 4,000,000.00, match the total issuing amount, and have been fully made by the capital contributors.

3. The contributions made by subscribers Misel Babic and Murtala Laushi for the 3,900 shares, each with a par value of CHF 1,000.00, are covered by the capital contribution of USD 4,000,000.00 as per the capital-contribution contract, meaning the new shares are fully paid-up. Any residual amount is credited to the company's reserves (capital-contribution reserve).

4. Once the capital increase has been entered in the commercial register, the company, as owner, has immediate and unlimited access to the aforementioned capital contributions.

5. As such, the contributions have been made in accordance with the legal regulations, by-laws, and the shareholder-meeting decision.

**IV.**
The senior management decides to change the company by-laws as follows:

Art. 4 shall now read:

### Article 4 – Amount

*The share capital totals CHF 3,920,000.00. It is divided into 3,920 shares, each with a par value of CHF 1,000.00.*

*The share capital is fully paid-up.*

[stamp: MICHAEL RENGGLI
LAWYER • NOTARY PUBLIC]

[signature]

The new Art. 4a is included in the by-laws as a result of the capital contribution:

### *Article 4a – Capital contribution*

*By virtue of the contribution-in-kind contract dated 28 August 2019, the ordinary share-capital increase of CHF 3,900,000.00 from CHF 20,000.00 to CHF 3,920,000.00 on 28 August 2019 sees the company adopt 500,000 of the 1,000,000 shares, each with a par value of 1 NGN (Nigerian naira), of Malcomines Limited, 45 Liberty Boulevard, Jos, Plateau State, Nigeria, valued at CHF 1,950,000.00 and for a price of USD 2,000,000.00 through capital contributor Misel Babic, for which the capital contributor is issued 1,950 company shares, each with a par value of CHF 1,950,000.00, for an issuing amount of USD 2,000,000.00, and 500,000 of the 1,000,000 shares, each with a par value of 1 NGN (Nigerian naira), of Malcomines Limited, 45 Liberty Boulevard, Jos, Plateau State, Nigeria, valued at CHF 1,950,000.00, for a price of USD 2,000,000.00, from capital contributor Murtala Laushi, for which the contributor is issued 1,950 company shares, each with a par value of CHF 1,950,000.00 and for an issuing amount of USD 2,000,000.00. Any residual amount (currency difference) is allocated to the capital-contribution reserves.*

For the rest, the previous provisions shall continue to apply unchanged.

**V.**
The chairperson presents a copy of the company by-laws, and explains that these are the complete, valid by-laws that have taken into account the aforementioned changes. These by-laws form an integral part of the record.

**VI.**
In accordance with Art. 652g Para. 2 OR in conjunction with Art. 781 Para. 5 No. 5 OR, the undersigned notary confirms that he and the senior management have been provided with documents individually cited in this record (public record of the decisions made by the extraordinary shareholder meeting on 28 August 2019, 2 subscription forms, contribution-in-kind contract dated 28 August 2019, capital-increase report by the senior management as per Art. 781 Para. 5 No. 4 in conjunction with Art. 652e OR dated 28 August 2019, audit confirmation as per Art. 781 Para. 5 No. 4 in conjunction with Art. 652f OR dated 28 August 2019 and by-laws).

**VII.**
The senior management must promptly lodge the aforementioned by-law change and its findings for entry in the commercial register, and make any formal changes itself or through an authorised party.

[stamp: MICHAEL RENGGLI
LAWYER • NOTARY PUBLIC]

[signature]

5

Zug, 28 August 2019

The chairperson:

[signature]
Misel Babic

[stamp: MICHAEL RENGGLI
LAWYER • NOTARY PUBLIC]

[signature]

6

# PUBLIC NOTARIAL REGISTRATION

The undersigned notary of Zug canton, Michael Renggli, lawyer, Baarerstrasse 21, 6300 Zug, hereby publicly certifies that:

1.  The aforementioned record accurately reflects my experiences and perceptions at today's management meeting for Malcomines GmbH, Cham. It has been personally signed in front of me by Mr Misel Babic.

2.  Mr Misel Babic identified himself through his passport.

3.  The specific documents mentioned in the record (public record of the decisions made by the extraordinary shareholder meeting on 28 August 2019, 2 subscription forms, contribution-in-kind contract dated 28 August 2019, capital-increase report by the senior management as per Art. 781 Para. 5 No. 4 in conjunction with Art. 652e OR dated 28 August 2019, audit confirmation as per Art. 781 Para. 5 No. 4 in conjunction with Art. 652f OR dated 28 August 2019 and by-laws) were presented to me and the senior management.

This record is issued in 4 copies as follows:
1 copy for the notary
1 copy for the commercial registry office
2 copies for the company

Zug, 28 August 2019          The notary:

[stamp: MICHAEL RENGGLI
LAWYER • NOTARY PUBLIC]

[signature]

*I hereby certify that the foregoing translation is a true and complete translation of the original, in witness whereof I have hereunder set my hand and seal at*

*Brühl,* 14.10.2019

[stamp: Anne Warmbier — Für die Gerichte des Saarlandes und des saarländischen Notars ermächtigte vereidigte Übersetzerin für die englische, spanische und deutsche Sprache — Diplom-Übersetzerin]

Certified translation from German to English
**JoliFid Consulting di J. Rusimbamigera**
**Via Antonio Rinaldi 31C**
**6864 Arzo**
**Tel: +41 76 615 84 03**
**Email: _rusimbajoli@hotmail.com_**

> To the shareholders of
> Malcomines GmbH
> Alte Steinhauserstrasse 19
> 6330 Cham

> Arzo, 28/8/2019 JR

**Audit confirmation for the shareholders of Malcomines GmbH**

In our capacity as auditors, we have audited the capital-increase report provided by you, and dated 28 August 2019, in accordance with the legal regulations.

The managing director is responsible for the capital-increase report, while our task is to audit and evaluate this. We confirm we meet the legal requirements regarding competence and independence.

Our audit was conducted in compliance with the principles of the profession, according to which an audit must be planned and performed in such a way so as to identify any major errors in the capital-increase report with an appropriate degree of reliability.

We conducted the audit in a suitable manner, and are of the opinion that our audit provides an adequate basis for our assessment.

Based on our assessment, the information in the capital-increase report is complete and correct.

> **JoliFid Consulting di J. Rusimbamigera**
> **Accredited auditor**
> [signature]

Page 1

*I hereby certify that the foregoing translation is a true and complete translation of the original. In witness whereof I have hereunder set my hand and seal at*

*Brühl,* 14.10.2019

Certified translation from German to English

**Capital-increase report**

by the senior management

of

**Malcomines GmbH**

based in Cham

in accordance with Art. 781 in conjunction with Art. 652e OR

---

With reference to the decisions made by the extraordinary shareholder meeting regarding the ordinary capital increase for Malcomines GmbH, Cham, on 28 August 2019, the following report is compiled in accordance with Art. 781 Para. 5 No. 4 in conjunction with Art. 652e OR in relation to the capital increase of CHF 3,900,000.00 from CHF 20,000.00 to CHF 3,920,000.00:

## 1. Capital increase and subscription

a) A total of 3,900 new shares, each with a par value of CHF 1,000.00, are issued to Mr Misel Babic and Mr Murtala Laushi for an issuing price of USD 1,025.641 per share based on the existing ownership structure.

b) The new shares have been duly subscribed.

c) The new share capital is fully paid up by virtue of a contribution in kind as per the contribution-in-kind contract dated 28 August 2019, according to which Malcomines GmbH, Cham, adopts all shares of Malcomines Ltd based in Jos, Nigeria, from contributors Mr Misel Babic and Mr Murtala Laushi.

2. **Report on the type and condition of the contribution in kind, and the appropriateness of the evaluation (Art. 652e No. 1 OR)**

   a) By virtue of the contribution-in-kind contract dated 28 August 2019, Malcomines GmbH, Cham, assumes all shares (1,000,000 shares) of Malcomines Ltd, Jos, Nigeria (contribution in kind) as follows:

      – 50% (500,000.00 shares) from Mr Misel Babic
      – 50% (500,000.00 shares) from Mr Murtala Laushi

      valued at a total of USD 4,000,000.00 and for a total price of USD 4,000,000.00, for which contributor Misel Babic is issued with 1,950 Malcomines GmbH shares, each with a par value of CHF 1,950,000.00, and for an issuing amount of USD 2,000,000.00, and contributor Murtala Laushi is issued with 1,950 Malcomines GmbH shares, each with a par value of CHF 1,950,000.00, and for an issuing amount of USD 2,000,000.00.

   b) The total acceptance price of USD 4,000,000.00 (equivalent to at least CHF 3,900,000.00) corresponds to the present-day value of the contribution in kind, and covers the amount to be paid up by the contributors for the issue of 3,900 company shares with a nominal value of CHF 3,900,000.00, and for an issuing amount of USD 4,000,000.00.

   c) The contribution in kind is the shares in Malcomines Ltd, Jos, Nigeria. The appraisal of Malcomines Ltd, Jos, Nigeria is based on an appraisal confirmation by JOLIFID CONSULTING di J. RUSIMBAMIGERA, Arzo, dated 24 June 2019. The company's value has not changed significantly in the meantime. The resulting value covers the issuing amount for 3,900 shares in Malcomines GmbH, totalling CHF 3,900,000.00 (USD 4,000,000.00).

   d) Given the above, the senior management concludes that the appraisal of the contribution in kind was conducted in accordance with the legal regulations, complies with commercial principles, and is appropriate to the circumstances. The senior management hereby acknowledges the accuracy and appropriateness of the appraisal.

   e) Malcomines GmbH is entitled to freely dispose of all shares of Malcomines Ltd, Jos, Nigeria, as soon as the capital increase has been entered in the commercial register. The contribution in kind is transferred completely, unreservedly, and unencumbered from any third-party rights, to the ownership of Malcomines GmbH. This free disposal of the contributed Malcomines Ltd shares is guaranteed.

Capital-increase report for Malcomines GmbH

f) No further contributions in kind and/or (intended) transfer of assets have been made/performed.

g) The company's freely disposable equity is not changed in any way.

h) The company's debts are being not offset.

i) No special privileges have been granted.

3.  **Information on upholding the general shareholder meeting's decision, limiting subscription rights (Art. 652e No. 4 OR), and dividend entitlement**

a.  The capital increase fully complies with the decisions made by the company's extraordinary shareholder meeting on 28 August 2019. The 3,900 new shares to be issued at a par value of CHF 1,000.00 each are assigned to the aforementioned shareholders for an issue price of USD 1,025,641 per share in accordance with Point II of the public record on the decisions made by the extraordinary shareholder meeting. The amount exceeding the increase amount (currency difference) is allocated to the company's reserve (capital-contribution reserve).

b.  The existing company's subscription right has been fully secured. The existing shareholders exercised all subscription rights, meaning no non-exercised subscription rights needed to be assigned.

c.  The dividend entitlement for the new shares starts on the day the capital increased is entered into the commercial register.

3.  **Audit confirmation as per Art. 652f OR**

As the contribution to the new share capital is made by virtue of a contribution in kind, this capital-increase report must, in accordance with Art. 652f in conjunction with Art. 781 Para. 5 No. 4 OR, be audited by an accredited auditor, and the audit outcome detailed in an audit confirmation.

For the rest, no further comments need to be made in relation to the capital increase.

Capital-increase report for Malcomines GmbH

Zug, 28 August 2019

The company's manager:

[signature]

Misel Babic

*I hereby certify that the foregoing translation is a true and complete translation of the original. In witness whereof I have hereunder set my hand and seal at*

*Brühl,* 14.10.2019

Certified translation from German to English

# Contribution-in-kind contract

between

– **Misel Babic**, born on 10 August 1973, Croatian national, residing in Zagreb, Croatia, Croatian passport 014597403, and

– **Murtala Laushi**, born on 13 July 1983, Nigerian national, residing in Jos, Nigeria, Nigerian passport A 10422878

**capital contributors**

and

**Malcomines GmbH**, Alte Steinhauserstrasse 19, 6330 Cham, entered into the commercial register of Zug canton under number CHE – 444.929.759, acting through its managing director and sole signatory, Mr Misel Babic

**company**

## I. Object and value of the contribution in kind

The capital contributors are the holders of all shares in Malcomines Ltd, 45 Liberty Boulevard, Jos, Plateau State, Nigeria, a company based in Jos, Nigeria, entered under company number 1150904. As part of increasing the share capital of Malcomines GmbH, Cham, by CHF 3,900,000 from CHF 20,000.00 by issuing 3,900 shares with a par value of CHF 1,000.00 each, the capital contributors transfer all shares in Malcomines Ltd, Jos, to Malcomines GmbH, Cham, as follows:

– Mr Misel Babic transfers 500,000 of the 1,000,000 shares, each with a par value of 1 NGN (Nigerian naira), in Malcomines Ltd, 45 Liberty Boulevard, Jos, Plateau State, Nigeria, valued at USD 2,000,000 (corresponding to approximately CHF 1,950,000).

– Mr Murtala Laushi transfers 500,000 of the 1,000,000 shares, each with a par value of 1 NGN (Nigerian naira), in Malcomines Ltd, 45 Liberty Boulevard, Jos, Plateau State, Nigeria, valued at USD 2,000,000 (corresponding to approximately CHF 1,950,000).

The appraisal of Malcomines Ltd, Jos, was conducted in accordance with generally recognised principles of appraisal, and the result thereof was audited and confirmed by the auditing company JOLIFID CONSULTING di J. RUSIMBAMIGERA, Mendrisio. According to this, the appraised value of Malcomines Ltd, Jos, Nigeria, is USD 4,000,000.00.

## II. Remuneration, service in return

The capital contributors transfer all 1,000,000 shares in Malcomines Ltd, Jos, for a total value of USD 4,000,000.00.

As a service in return for the contribution in kind, the capital contributors receive shares in Malcomines GmbH, Cham, as follows:

- Misel Babic receives 1,950 shares, each with a par value of CHF 1,000.00, for an issue amount of USD 2,000,000.00.

- Murtala Laushi receives 1,950 shares, each with a par value of CHF 1,000.00, for an issue amount of USD 2,000,000.00

The difference between the issue price and par value of the shares due to be issued (currency difference) is credited to the company's reserves (capital-contribution reserve).

The parties are aware of the transfer regulations (Art. 6), the non-competition clause for shareholders (Art. 10), and the pre-emptive right (Art. 12), as established in the company's by-laws. No obligations to make additional capital contributions, or ancillary obligations, exist.

## III. Additional contractual clauses

1. By signing this contract, the capital contributors grant Malcomines GmbH irrevocable authority to effectively and legally dispose of all transferred assets once the entry in the commercial register has been made. Upon entering the Malcomines GmbH capital increase in the commercial register, the company may freely and unreservedly dispose of the contribution in kind.

2. The assets assumed are not encumbered by any third-party rights.

3. The usage and risk associated with all transferred assets are deemed to have been transferred to Malcomines GmbH by virtue of the capital increase being entered in the daily register at the Zug commercial registry office.

4. This contract is concluded under waiver of any guarantee, insofar as this is permitted by law.

5. This contract is concluded subject to the condition precedent that the capital increase is entered in the daily register at the Zug commercial registry office.

6. The contract costs are borne by the company.

Contribution-in-kind contract for Malcomines Ltd

Zug, 28 August 2019

The capital contributors:

[signature]                          [signature]
Misel Babic                          Murtala Laushi, represented by
                                     Misel Babic

On behalf of Malcomines GmbH

[signature]
Misel Babic

*I hereby certify that the foregoing translation is a true and complete translation of the original. In witness whereof I have hereunder set my hand and seal at*

*Brühl,* 14.10.2019

Certified translation from German to English

## Zug Canton

Economics Department
Commercial Registry Office

3 SEP. 2019

ug Commercial Registry Office
2 Sep. 2019

Document no.                Folder no. 12676

## Registration declarations I (Stampa) and II (Lex Koller)

regarding contributions in kind, transfers of assets, and similar scenarios relating to establishing companies, increasing capital, subsequent payment under subscription, and similar changes for

**joint-stock corporations (AG), commercial partnerships limited by shares (Kommandit-AG), limited liability companies (GmbH), co-operative associations, foundations, general partnerships (Kollektivgesellschaft), and limited partnerships (Kommanditgesellschaft)**

In view of the provisions of the Swiss Code of Obligations (OR), the commercial registry regulations (HRegV), and the Swiss federal act on the purchase of property by persons abroad (BewG, Lex Koller) and its regulatory statutes (BewV), the undersigning parties declare the following with regards to the company stated below:

Trade name and headquarters: Malcomines GmbH, Cham ...........................................................................

### 1. Contributions in kind and transfers of assets

The company has not accepted, or has committed to not accepting, any sizeable assets, such as properties, chattels, securities, patents, receivables, business or holdings involving assets and liabilities from participants or their affiliates, with the exception of those listed in the by-laws and registration.

### 2. Intended transfer of assets

The company does not intend to accept specific sizeable assets from participants or their affiliates immediately after the company founding, capital increase or payment under subscription, with the exception of those assets listed in the by-laws and registration.

### 3. Offsets

No offsetting factors other than those found in the commercial-registry documents exist.

### 4. Founder benefits and special rights

The company has not granted or promised participants or third parties any specific benefits (e.g. shares in the net profit or liquidation surplus extending beyond shares) not listed in the by-laws and registration.

### 5. Purchase of property by persons abroad ("Lex Koller")

The registered business does not require approval as defined by the BewG and BewV. If persons abroad as defined by Art. 5 BewG have holdings in the company/registered business, it is hereby declared that any properties in Switzerland, shares or rights as per Art. 4 BewG shall serve as permanent places of business as per Art. 2 Para. 2 a BewG.

./2

[stamp: illegible]

Page 2/2

Persons abroad require a permit from the relevant cantonal authority in order to purchase property (Art. 2 Para. 1 BewG). A purchase is considered:

- A holding in a general or limited partnership (Kollektivgesellschaft/Kommanditgesellschaft) whose actual purpose is to purchase properties that are not places of business (Art. 4, Para. 1 b BewG, Art.18b BewV).
- Acquisition of ownership of a share in a legal entity whose actual purpose is to purchase properties that are not places of business, insofar as the shares in this legal entity are not listed on a stock exchange in Switzerland (Art. 4 Para. 1 e BewG).
- An interest in a company founding and, insofar as this strengthens the purchaser's position, in the capital increase of legal entities whose actual purpose is to purchase properties (Art. 4 Para. 1 e BewG) that, pursuant to Art. 2 Para. 2 a BewG, cannot be purchased without a permit.
- Taking over a property that, pursuant to Art. 2 Para. 2 a BewG, cannot be purchased without a permit, together with an asset or business (Art. 69 ff FusG (Swiss act on mergers), Art. 181 OR), or by merging, transforming or splitting companies under the Swiss act on mergers, insofar as this increases the purchaser's rights to this property (Art. 1 Para. 1 a and b BewV).

**If the commercial registry office cannot automatically discount the requirement of a permit, it suspends the entry process, and refers the applicant to the permit authority (Art. 18 Para. 1 and 2 BewG).**

City/Date: Zug, 28 August 2019 ...........................................................................................................

Signatures of the founders (in the case of a new entry) or applicants (in the event of other amendments):
.........................[signature]...........................................................................................................

**Swiss federal act on the purchase of properties by persons abroad (BewG) SR 211.412.41, dated 16 December 1983 (as at 1 March 2013)**

**Art. 2 Permit requirement**
[1] Persons abroad require a permit from the relevant cantonal authority in order to purchase properties.
[2] The purchase does not require a permit if:
   a. The property serves as the permanent place of business for a commercial, manufacturing or other commercially run trade, a skilled tradesman's business, or an independent profession;
   b. The property serves as the purchaser's (as a natural person) principal domicile at the site of his/her legal and actual place of residence; or
   c. An exception as per Article 7 exists.
[3] When purchasing properties as per Paragraph 2 a, it is possible that residences stipulated by residential space regulations or areas reserved for this may also be acquired.

**Art. 5 Persons abroad**
[1] Persons abroad are considered to be:
   a. Citizens of member states of the European Community or European Free Trade Association whose legal and actual place of residence is not located in Switzerland;
   a2. Citizens of other foreign nations who are not entitled to reside in Switzerland;
   b. Legal entities or solvent companies without a legal personality, which have their regulatory and actual headquarters abroad;
   c. Legal entities or solvent companies without a legal personality, which have their regulatory and actual headquarters in Switzerland, and in which persons abroad hold managerial positions;
   d. Natural persons, legal entities, and solvent companies without a legal personality, which are not persons abroad as per letters a, a2, and c when purchasing a property on behalf of persons abroad.

HABE 18.12.2007/13.03.2014

*I hereby certify that the foregoing translation is a true and complete translation of the original in*
*witness whereof I have hereunder set my hand and seal at*

Brühl, 14.10.2019