```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
IN RE  EX PARTE  APPLICATION  OF                             :
TIBERIUS GROUP AG FOR AN ORDER TO                            :
OBTAIN  DISCOVERY  FOR  USE  IN  A                           :   Misc. Action No. _____
FOREIGN PROCEEDING                                           :
                                                             :
------------------------------------------------------------ X
```

# MEMORANDUM OF LAW IN SUPPORT OF
# APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782

TRESSLER LLP

Courtney E. Scott (CS9744)
Charles B. Bergin (CB0503)
One Penn Plaza
Suite 4701
New York, NY 10119
Telephone:  (646) 833-0900
Facsimile:  (646) 833-0877

*Attorneys for Tiberius Group AG*

Tiberius Group AG ("Tiberius"), by its undersigned counsel, respectfully submits this memorandum of law in support of its Application pursuant to 28 U.S.C. § 1782 for an Order authorizing discovery in this district from Citibank N.A., Deutsche Bank Trust Company, HSBC Bank USA N.A., JPMorgan Chase Bank N.A., Bank of NY Mellon, UBS AG and Bank of America (the "New York Banks"), for use in the foreign proceedings described below.

## PRELIMINARY STATEMENT AND FACTUAL BACKGROUND

Tiberius seeks this Court's authorization to take discovery in this Judicial District for use in a foreign proceeding currently pending in the High Court of Lagos State, Nigeria (the "Nigerian Action"). The Nigerian Action is a part of Tiberius' effort to recoup approximately $4.3 million that it advanced to a Nigerian entity, Malcomines Ltd., in connection with the purchase of certain mineral purchases on its behalf that were never consummated, and to recover an additional approximately $4 million for minerals purchased by it and not delivered by Malcomines Ltd. The funds and assets of Tiberius appear to have been wrongfully diverted by Malcomines Ltd. and/or related parties.

The New York Banks, each present in this judicial district, are likely to possess critical evidence related to the Nigerian Action. Each of the New York Banks acts as correspondent bank for US dollar transactions through Nigerian Banks Tiberius has identified as potentially holding accounts for the benefit of Malcomines Ltd., its principals or related entities. As a result, the New York Banks are likely to possess crucial evidence that Tiberius intends use in the Nigerian Action and/or contemplated further legal proceedings against Malcomines Ltd. in Nigeria or elsewhere.

I. **FACTUAL BACKGROUND**

The facts underlying the instant application are summarized below in the interest of brevity and are set forth in detail in the Declaration of Tiberius director Michael Meredith sworn

to on October 18, 2019 and submitted herewith (the "Meredith Declaration"). Tiberius is an asset management and metals trading company based in Switzerland which is engaged in the purchase and sale of tin concentrates in Nigeria through its subsidiary West African Mineral Trading Ltd, ("WAMT"), based in Nigeria. Meredith Declaration, ¶¶ 4-5. From its formation in 2016 until May 20, 2019, Michel Babic ("Babic"), was a director of WAMT based in Nigeria. Meredith Declaration, ¶ 7. In connection with Tiberius' activities in Nigeria, Babic introduced Tiberius to Malcomines Ltd., a Nigerian entity engaged in the procurement of tin concentrates in Nigeria, and to its principal, Murtala Laushi. Meredith Declaration, ¶¶ 9, 16.

Pursuant to Tiberius' relationship with Malcomines Ltd., Malcomines Ltd. would source tin concentrates in Nigeria, purchase them from Nigerian sellers, pack them for export, sell them to Tiberius and transport the shipments to Nigerian ports for export by Tiberius to third parties with whom Tiberius had entered into sales contract. Meredith Declaration, ¶¶ 14-15. To fund Malcomines Ltd.'s local procurement of tin concentrates, Malcomines Ltd. sought pre-financing from Tiberius through WAMT. Meredith Declaration, ¶17. WAMT, through Babic, would submit Prepayment Invoices to WAMT for shipments of tin concentrates sourced by it, and Tiberius would provide funds to WAMT for such shipments. WAMT, in turn, would advance funds to Malcomines Ltd. for the purchase of tin concentrates and Malcomines Ltd. would confirm its purchase, packaging and transport of the goods by providing packing lists and waybills to WAMT and Tiberius. Meredith Declaration, ¶¶ 17, 18-20.

During 2019, Tiberius paid a total of approximately $34.5 million to Malcomines Ltd. for the purchase shipments of tin concentrates based on Prepayment Invoices issued by WAMT. Meredith Declaration, ¶ 19. This amount included payment for 113 shipments valued at approximately $30 million, as well as excess funding of approximately $4.3 million. Meredith

Declaration, ¶¶ 19-22. The excess funding advanced to Malcomines Ltd. was to be used by it to purchase additional shipments of tin concentrates, or, if none were available, to be returned to Tiberius upon demand. Notwithstanding its payment, Tiberius received only 97 containers of the 113 purchased. Meredith Declaration, ¶¶ 21.

In August 2019, Tiberius and Malcomines Ltd. agreed, through WAMT, that the limit of its exposure to Malcomines Ltd. *i.e.,* the value of excess funding advanced, had been reached. Tiberius requested that its exposure be reduced by Malcomines' either by its procuring and delivering additional containers or by returning the excess funding to Tiberius. Meredith Declaration, ¶ 24. Shortly thereafter, Malcomines advised that it was not in possession of additional containers of tin concentrates nor of the excess advanced funds. Meredith Declaration, ¶ 25. As detailed in the Meredith Declaration, Tiberius learned that Malcomines Ltd.'s representation was false, as it was offering additional containers of tin concentrates directly for sale to third parties, including customers of Tiberius. Meredith Declaration, ¶¶ 26-28.

Tiberius has further learned that at or around the time Malcomines Ltd. made the above representation, Tiberius' former employee and WAMT director Babic had become 50% owner of Malcomines Ltd., with Laushi owning the other 50%, that the two had created a Swiss entity called Malcomines GmbH, of which each is a director and 50% owner, and that the shares of Malcomines Ltd. had been contributed to fund Malcomines GmbH. Meredith Declaration, ¶¶ 36-38, Exh. 3. Tiberius thus believes that the excess funding it advanced, as well as additional shipments of tin concentrate it purchased from Malcomines Ltd. but did not receive, have been diverted and misappropriated by Malcomines Ltd., Babic and Laushi.

## II. THE NIGERIAN ACTION

Tiberius commenced proceedings in the High Court for the State of Lagos, Nigeria on September 10, 2019 (the "Nigerian Action") seeking delivery of the tin concentrates purchased and return of the excess funding.  Meredith Declaration, ¶ 29, Exh.1.  Tiberius sought and was granted a "Mareva Injunction"[1] freezing the assets of Malcomines Ltd. at eighteen Nigerian banks it had identified as holding accounts associated with Malcomines Ltd.  Meredith Declaration, ¶¶ 30-32, Exh. 2.

As detailed in the Meredith Declaration, Tiberius has reason to believe that Malcomines Ltd., its principals Babic and Laushi, and related entities, have continued the diversion of its funds after the entry of the Mareva Injunction.  Meredith Declaration, ¶¶ 33-35.  Further, Babic has acted to frustrate Tiberius' efforts to obtain a full accounting of WAMT's financial transactions during Babic's tenure as director of WAMT, as well as Tiberius' efforts to formalize his removal as director with Nigerian authorities.  Meredith Declaration, ¶¶ 36-40.

A hearing is currently scheduled in the Nigerian Action for October 21, 2019 for the extension of the Mareva Injunction and to set dates for further proceedings in Nigeria for Tiberius to recover the funds and materials owed to it.  Meredith Declaration, ¶¶ 32.

## III. THE NECESSITY FOR U.S. DISCOVERY

The evidence sought in the present Application encompasses the dollar-denominated transfers from the account of its Nigerian subsidiary WAMT at the direction of Babic, and transfers and to and from the accounts of Malcomines Ltd., its principals and affiliates (the "Target Entities"), that passed through the New York Banks from August 24, 2016, to the

---

[1] A Mareva Injunction is an equitable remedy available in equity in England other countries, including as Nigeria, in the form of a "pre-judgment order enjoining a debtor from moving its assets," in order "to ensure the effectiveness of an ultimate remedy" *See, e.g., S.E.C. v. Cavanagh*, 445 F.3d 105, 117 (2d Cir.2007).

4

present. In broad outline, Tiberius intends to use the evidence relating to the Target Entities in the Nigerian Action to enable it to locate and arrest assets and to recover amounts due to it by Malcomines Ltd..

## ARGUMENT

### I.     TIBERIUS HAS SATISFIED THE REQUIREMENTS OF 28 U.S.C. § 1782(A)

The discovery sought by Tiberius is precisely the sort of discovery contemplated by Section 1782, which authorizes federal district courts, "upon the application of any interested person," to order discovery of a "person [who] resides or is found" in the district "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a) (2010). Those statutory requirements are met here.

First, the parties from whom discovery is sought, *i.e.,* the New York Banks, are all "found" within this Judicial District, as they are either incorporated, headquartered, and/or engaged in "systematic and continuous activities" in this District. *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (citation omitted). Citibank N.A. is a national association that conducts business in New York and has offices located at 399 Park Avenue, New York, NY 10022. Deutsche Bank Trust Company Americas conducts business in New York and has offices at 60 Wall Street, New York, NY 10005. HSBC Bank USA N.A. is a national association that conducts business in New York and has offices at 452 Fifth Avenue, New York, NY 10017. JPMorgan Chase Bank N.A. is a national association that conducts business in New York and has offices at 1 Chase Plaza, New York, NY 10005. Bank of New York Mellon is a national association that conducts business in New York and has offices located at 240 Greenwich Street, New York, NY 10286. UBS AG conducts business in New York and has offices at 1285 Avenue of the Americas, New York, NY 10019. Bank of America is a national

association that conducts business in New York and has offices located at 115 West 42nd Street, New York, NY 10036.

Second, the discovery sought with this Application is for use in a "proceeding in a foreign or international tribunal," namely, the Nigerian Action. *Id*. The court where the Nigerian Action is pending is a "foreign tribunal," *i.e.,* a conventional civil court in a foreign country. *See Intel Corp.*, 542 U.S. at 258 (endorsing the view that the term "foreign tribunal" includes "investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts"); *c.f. In re Chevron Corp.*, 709 F. Supp. 2d 283, 292 (S.D.N.Y. 2010) ("District courts have granted Section 1782 applications routinely in connection with matters pending before Ecuadorian courts . . . ."). Moreover, further "proceeding[s] in a foreign or international tribunal" are contemplated by Tiberius in the Nigerian courts, and possibly in other jurisdictions to which funds rightfully belonging to Tiberius may have been transferred, once the requested discovery is obtained. *Intel*, 542 U.S. at 258-59 (holding that under § 1782 Congress "does not limit the provision of judicial assistance to 'pending' adjudicative proceedings"; proceedings must merely "be within reasonable contemplation"); *In re Grupo Qumma*, S.A. de C.V., No. M 8-85, 2005 WL 937486, at *1 (S.D.N.Y. Apr. 22, 2005) (holding that the foreign proceeding "need not be pending or imminent," but only "within reasonable contemplation") (*quoting Intel*).Third, Tiberius, as plaintiff in the Nigerian Action, is squarely an "interested person" under 28 U.S.C. § 1782(a) (2010). *Intel*, 542 U.S. at 256 ("No doubt litigants are included among . . . the interested persons who may invoke § 1782."); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) (party to proceedings in Saudi Arabia and Cayman Islands was an "interested person" within the meaning of § 1782).

## II.     THE *INTEL* DISCRETIONARY FACTORS ALSO FAVOR GRANTING THE APPLICATION

Where, as here, the Application meets the statutory requirements, the Supreme Court has directed that a court should consider four factors to determine whether to exercise its discretion to grant a Section 1782 application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign proceeding and whether the foreign tribunal is receptive to U.S. judicial assistance; (3) whether the discovery request is an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the application is unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264-66. In exercising its discretion, the Court must take into account the twin aims of Section 1782: "'providing efficient means of assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 193 (S.D.N.Y. 2006) (*quoting Schmitz v. Bernstein Liebhard & Lifshitz*, 376 F. 3d 79, 84 (2d Cir. 2004)).  "The Second Circuit has consistently ruled that it is far better to provide federal court assistance than none at all." *Minatec Finance S.A.R.L. v. SI Group Inc*., No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *4 (N.D.N.Y. Aug. 18, 2008) (*citing Schmitz*, 376 F. 3d at 83 & 85; *In re Metallgesellschaft*, 121 F. 3d 77, 80 (2d Cir. 1997)).  Here, all four *Intel* factors weigh in favor of granting Tiberius' Application.

First, the New York Banks are not parties to the Foreign Actions. The court in the Nigerian Action does not have jurisdiction to order the New York Banks to appear or produce evidence. *See Intel*, 542 U.S. at 264 (noting that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising

abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence"); *Ahmad Hamad Algosaibi Bros*., 785 F. Supp. 2d at 437 ("[T]here is a greater need for § 1782 aid when the respondent is a non-participant 'because a foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence.'") (*quoting Intel*, 542 U.S. at 264); *see also, e.g., In re Chevron Corp*., 709 F. Supp. 2d at 292; *In re Imanagement Servs. Ltd.*, 2005 WL 1959702, at * 10 (E.D.N.Y. Aug. 16, 2005); *In re Grupo Qumma*, 2005 WL 937486, at *3.

Second, there is no reason to believe that the court in the Nigerian Action would be unreceptive to U.S. judicial assistance in regard to discovery. Meredith Declaration, ¶ 43. *In re Gushlak*, No. 11-MC-218 (NGG), 2011 WL 3651268, at *4 (E.D.N.Y. Aug. 17, 2011) ("[C]ourts should err on the side of ordering discovery, since foreign courts can easily disregard material they do not wish to consider.") (*citing Euromepa S.A. v. R. Esmerian, Inc*., 51 F.3d 1095, 1101 (2d Cir. 1995)); *see also Minatec Finance*, 2008 WL 3884374, at *4 ("The Second Circuit has consistently ruled that it is far better to provide federal court assistance than none at all.") (collecting cases).

Third, this Application is not an attempt to circumvent foreign proof-gathering policies. There is no rule or law applicable in the Nigerian court that would foreclose the gathering of evidence relating to correspondent bank accounts at the New York Banks.[2] Moreover, where, as here, the relevant foreign tribunal in the Nigerian Action lacks jurisdiction to order discovery from non-parties, a Section 1782 application is a "reasonable effort to overcome a technical discovery limitation." *In re Imanagement Servs*., 2005 WL 1959702, at *5; *see also, e.g., In re*

---

[2] The common law principles applied by the High Court of Lagos State do not prohibit the discovery of documents obtained from third parties in the United States or elsewhere by means of a subpoena authorized by a US court and the Evidence Act, 2011 of Nigeria permits the use of business records obtained through such process.

*Chevron Corp.*, 709 F. Supp. 2d at 293 (opining that there was no attempt to circumvent foreign proof-gathering policies where the foreign tribunal could not compel the production of documents against a non-party). The present Application is a transparent, good faith attempt to trace assets and find evidence and accounts that can be used to monitor compliance with the Mareva Injunction issued in the Nigerian Action, to support further related proceedings in Nigeria and to facilitate contemplated further proceedings against Malcomines Ltd. and others in Nigeria or elsewhere. *See Minatec Finance*, 2008 WL 3884374, at *8 (holding that there is no requirement to first seek discovery from foreign tribunal and observing that, with respect to the third discretionary factor, "[t]he primary issue for us is whether [the applicant] is pursuing this discovery in bad faith," and finding that, as here, the application was made in good faith). *See also*, *In re Application of Hornbeam Corp.,* No. 14-MC-424 (Part I), 2014 WL 8775453, at *4 ("The burden is on the opponent of a § 1782 request to prove that the foreign court would reject the evidence obtained through § 1782.").

Fourth, Tiberius' application is neither unduly intrusive nor burdensome. Section 1782(a) requires that discovery under the statute be produced "in accordance with the Federal Rules of Civil Procedure." Under Rule 26(b)(1), parties are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense," subject to the requirement that the request is "reasonably calculated to lead to the discovery of admissible evidence." This standard "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Indeed, a discovery request is "reasonably calculated" to lead to relevant matter if there is "'any possibility that the information sought may be relevant to the subject matter of the action.'" *Daval Steel Prods. v. M/V*

9

*Fakradine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (citations omitted; emphasis in original); *see also In re Gushlak*, 2011 WL 3651268, at *6.

Here, the information sought by the requested subpoenas is reasonably calculated to lead to the discovery of admissible evidence. Tiberius seeks correspondent banking documentation that will help to track the diversion of funds rightfully belonging to it, to ascertain the whereabouts of the Target Entities' assets, and to track cash flows between these companies, individuals, and their affiliates and agents. This information is central to the Tiberius' claims in the Nigerian Action, and discovery of such documentation is regularly granted by courts pursuant to Section 1782. *See, e.g., In re Gushlak*, 2011 WL 3651268, at *9 (granting § 1782 application for documents and testimony relevant to assets owned or controlled by respondent); *Ahmad Hamad Algosaibi Bros.*, 785 F. Supp. 2d at 439 (granting § 1782 application for discovery of documents from banks which had offices and did business in New York, where the documents were relevant to establishing petitioner's fraud claims).

Equally, the proposed subpoenas are tailored to the available facts and limited to the relevant period. Only those correspondent banks that Tiberius reasonably believes to have been potentially involved in relevant transactions have been included among the New York Banks, and these accounts are easily identifiable for the New York Banks. Moreover, Tiberius seeks documents only for the narrow time period between August 24, 2016 and the present, these documents are limited in scope, and narrowly defined by the available evidence.

## CONCLUSION

For the foregoing reasons, Tiberius respectfully requests that this Court issue an order pursuant to 28 U.S.C. § 1782 permitting Tiberius to serve the subpoenas attached as Exhibits A through G to the Declaration of Courtney E. Scott submitted in support of this Application.

Dated: New York, New York
October 18, 2019

Respectfully submitted,

TRESSLER LLP

By: _____
Courtney E. Scott (CS9744)

Charles B. Bergin (CB0503)
One Penn Plaza, Suite 4701
New York, NY 10119
Telephone: (646) 833-0900
Facsimile: (646) 833-0877
*Attorneys for Tiberius Group AG*