UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE *EX PARTE* APPLICATION OF TIBERIUS GROUP AG FOR AN ORDER TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING | Misc. Action No. 1:19-MC-00467<br><br>**DECLARATION OF MURTALA AHMAD LAUSHI IN SUPPORT OF MOTION TO QUASH** |

I, Murtala Ahmad Laushi, pursuant to 28 U.S.C. § 1746, hereby declare:

1.  I am the Managing Director of Malcomines Ltd. ("Malcomines"). I make this declaration in support of the motion to quash by Malcomines, Malcomines GmbH, S&M Pan African Mines & Logistics Ltd., Michel Babic, Malcomines Minor Metals Ltd., and me (collectively, the "Objectors"). I have personal knowledge of the facts set forth in this declaration.

WAMT Owes Malcomines $5,362,489

2.  I am also a 50% shareholder in Malcomines GmbH. Michel Babic is the Managing Director of Malcomines GmbH and holds the other 50% of the shares. I agree that, as stated in paragraph 8 of the Declaration of Michael Meredith dated October 18, 2019 (ECF No. 3-9, the "Meredith Decl."), I was a Director of West African Mineral Trading Limited ("WAMT") until January 21, 2019, when I resigned from WAMT.

3.  Paragraphs 9 and 10 of the Meredith Declaration are correct.

4.  In paragraph 11 of the Meredith Declaration, Meredith seems to speculate that S&M Pan African Mines & Logistics Ltd. is controlled by me. This is false. S&M Pan African

Mines & Logistics Ltd. is a separate distinct entity from Malcomines. Furthermore, I categorically state that I have never been in control of nor managed S&M Pan African Mines & Logistics Ltd. Consequently, it is palpably improper for Tiberius Group AG ("Tiberius") to demand information about S&M Pan African Mines & Logistics Ltd.

5. Malcomines is a duly registered Nigerian company licensed to deal in lead, columbite, tantalite, tin and other minerals, and has been engaged in the business of trading in minerals since 2013. As an independent trading company, Malcomines has several customers and none of its customers has any exclusive right or monopoly to the supply/sale of any of the minerals traded by Malcomines.

6. WAMT was a customer of Malcomines.

7. Tiberius was a customer of WAMT.

8. At all times relevant, WAMT's business was that it received through Tiberius advance funding from the ultimate buyer of the minerals, and WAMT in turn paid the advance funding to the mineral trader (here, Malcomines) as provisional payment under the pre-payment arrangement.

9. At all times relevant, the transactions between WAMT and Malcomines required pre-payment – which pre-payments were subject to adjustment. WAMT would advance money as provisional payment under a pre-payment arrangement; Malcomines would supply/deliver Tin concentrates to WAMT through a freight forwarding/shipping agent, Full Bliss Integrated Logistics Limited ("Full Bliss").

10. With regard to the supply of the tin concentrates, in relation to all provisional payments actually made under the pre-payment arrangement, the actual value of the minerals supplied and delivered was typically higher than the amount paid by WAMT and received by

Malcomines. This differential was the result of the fact that the final price was only established after the quality testing and verification was completed, and establishment of the actual sales price of the tin concentrate based on the London Metal Exchange (LME). This is the common method of payment and adjustment in the industry.

11. From the outset of Malcomines' business with WAMT, it was clearly understood that upon the supply of each volume/container of tin concentrate, the differential in the actual purchase and sale price of the tin concentrate supplied would be reconciled against the amount previously received as provisional payment under the pre-payment arrangement. However, this was never done by WAMT; consequently, as Malcomines' business with WAMT progressed, the differential between the value of the pre-payment amount and the established selling price continued to grow and increase as the volume of the tin supplied/delivered to WAMT increased.

12. By letters dated December 11, 2017, and July 4, 2018, I, as the Managing Director of Malcomines, wrote to the Managing Director of WAMT, Michel Babic, requesting settlement of the shortfall in payments for the supply of tin concentrate owed to Malcomines. (A true and correct copy of the letters from Malcomines to WAMT dated December 11, 2017, and July 4, 2018 are attached hereto as Exhibits 1 and 2, respectively.) Despite receipt of these letters, WAMT took no steps toward resolving the outstanding debt owed to Malcomines as a result of the shortfall payments.

13. By a further letter dated March 20, 2019, I, as the Managing Director of Malcomines, wrote to the Managing Director of WAMT, making a written demand for settlement of the sum of $2,735,000 owed to Malcomines as shortfall payments from 2017 to 2018. (A true and correct copy of the letter from Malcomines to WAMT dated March 20, 2019 is attached hereto as Exhibit 3.)

14. In response, on March 25, 2019, WAMT acknowledged in writing that a shortfall in payments existed and that "no reconciliation has been carried out between your Company [Malcomines] and WAMT since 2016 when the relationship started." (A true and correct copy of the letter from WAMT to Malcomines dated March 25, 2019 is attached hereto as Exhibit 4.) WAMT requested additional time to reconcile the matter, but has failed and refused to do so to date.

15. To exacerbate the situation, WAMT fell behind in its provisional payments on a per-container basis. In other words, as time went on, WAMT began failing to pay even the provisional pre-payments due for all of the containers supplied. For example, there were weeks where Malcomines would deliver nine containers to WAMT, but was paid the provisional pre-payment amount for only three containers. This dramatically compounded the shortfall due to Malcomines. In short, Malcomines was financing WAMT's – and indeed Tiberius's – business because WAMT was not paying Malcomines what WAMT owed.

16. Malcomines has calculated the total volume of the tin concentrates supplied/delivered to WAMT for Tiberius on the account statement for WAMT. (A true and correct copy of the account statement is attached hereto as Exhibit 5.) Tiberius/WAMT owes Malcomines the total sum of $5,362,489.00 as the shortfall in payments owed for tin concentrates already supplied as of this time.

17. Specifically, from January 2, 2019 to October 23, 2019, Malcomines delivered 126 containers of tin concentrate to WAMT for ultimate delivery to Tiberius as the Consignee via Full Bliss. (A true and correct copy of the Full Bliss shipping report is attached hereto as Exhibit 6.) For these shipments, the sum of $5,362,489.00 is owed to Malcomines.

18. Thus, it is not true, as Mr. Meredith asserts, that Malcomines supplied only 97

containers out of the agreed 113 containers for which provisional payment was made in 2019. (Meredith Decl. para. 21). In fact, the total value of the tin concentrates supplied and delivered by Malcomines to WAMT (for Tiberius) is $40,862,989.00 out of which the sum of $35,500,000.00 has been paid leaving an outstanding balance of $5,362,489.00 as owed to Malcomines to date.

<u>Tiberius' Application Is Rife with False Allegations</u>

19.     For the above reasons, and the paragraphs that follow below, the claims in the Meredith Declaration that assert diversion on the part of Malcomines of Tiberius funds are simply and patently false (*see* Meredith Decl. ¶¶ 19, 21, 22, 23, 24, 25, 26, 27 & 28).

20.     I deny the allegations of paragraph 24 of the Meredith Declaration, that on August 2, 2019, or on any other date, "Tiberius and Malcomines Ltd via WAMT agreed that exposure limits had been reached" or indeed reached any agreement to the effect that Malcomines was exposed to Tiberius for non-supply/delivery of any Container of tin concentrates which said exposure should be reduced by any additional supply of Containers of tin concentrates and or the refund of any amount. Indeed, Meredith puts forward no evidence to support these allegations. The fact is that, as explained and demonstrated above, WAMT owes Malcomines for shortfall payments for tin concentrates supplied and delivered.

21.     It is my strong belief that the action in Nigeria in Suit No. LD/ADR 2657/2019, commenced by Tiberius AG and WAMT (the "Nigeria Action"), was intended to coerce Malcomines to continue to supply and deliver tin concentrates to WAMT for Tiberius despite the huge sum of money owed to Malcomines as shortfall payments. Malcomines has filed its response to the bogus claims being made by Tiberius/WAMT against in the proceedings before the High Court of Lagos State, and Malcomines fully expects to prevail.

22.     I deny the allegation in paragraphs 24, 25 and 26 of the Meredith Declaration that Malcomines informed Tiberius through WAMT that Malcomines is under any obligation to supply or deliver any additional containers of tin concentrates to Tiberius or WAMT.

23.     Contrary to the allegation in paragraph 27 of the Meredith Declaration, it is not true that the processing of containers of tin concentrates by the freight forwarding agents (such as Full Bliss) is a unique method designed by Tiberius/WAMT. I am aware that Full Bliss is an independent company carrying on business as freight forwarding and shipping agents.

24.     Based on my experience with WAMT and Tiberius, it is clear to me that the desperate situation in which Tiberius has found itself came about because while Tiberius was collecting advance payments from its customers, these payments were not being remitted to WAMT for payment to Malcomines.

Interference by Tiberius with Other Malcomines Customers

25.     However, in furtherance of their scheme – which includes this effort to seek discovery that they have not sought in the Nigeria Action – Tiberius wrote to several persons and other overseas customers of Malcomines seeking to frustrate our business transactions and compete unfairly with Malcomines.  For example, Tiberius sent a letter to Ben Tang of Haipu Resources Ltd. interfering with in the business relationship between Malcomines and Haipu Resources Ltd.  (A true and correct copy of this letter is attached hereto as Exhibit 7.)

26.     Tiberius also sent a letter dated September 12, 2019, to Arrow Metals AG attempting to interfere in the business relationship between Malcomines and Arrow Metals AG.  (A true and correct copy of this letter is attached hereto as Exhibit 8.)

27.     Based on the conduct of Tiberius with respect to Malcomines' customers Haipu Resources Ltd. and Arrow Metals AG – including trade libel, intentional interference with

6

contract, and unfair competition – Malcomines requests that the Court enter an order protecting and keeping confidential the customer names of Malcomines (which names are completely irrelevant to the Nigeria Action).

28. Malcomines safeguards its confidential and proprietary business information from disclosure by using unique usernames and passwords on its computer system, employing encryption on its electronic records and communications systems, and enforcing a confidentiality policy.

29. Paragraphs 38, 39, 40, 41 and 42 of the Meredith Declaration are false. As previously explained, Tiberius and its group are heavily indebted to Malcomines as a result of the shortfall of payments for the several containers of tin concentrate supplied and delivered to Tiberius through WAMT under the provisional payment arrangement. Tiberius is seeking the present application as a ploy to unjustly obtain commercial information concerning Malcomines' legitimate transactions with third parties – transactions that are totally unrelated to WAMT, Tiberius and the Nigeria Action.

30. While it is true that Michel Babic joined with me in the establishment of Malcomines GmbH, it is not true that the sum of approximately $4million was transferred to any account of Malcomines GmbH and that the alleged sum of approximately $4million was from the "excess funding provided by Tiberius". The registered value/capital of Malcomines GmbH is only by way of the valuation of the assets including licenses owned by Malcomines GmbH. In any event, Malcomines GmbH is wholly unrelated to any business with WAMT or Tiberius.

31. The Subpoenas seek wholly irrelevant financial and banking information. There is no dispute that WAMT paid $35,500,000 – the parties do not need banking information to verify these undisputed payments. Financial and banking information – including wire information – of

7

Malcomines is completely irrelevant to any disputed issue. Certainly, financial and banking information – including wire information – of Malcomines concerning other customers unrelated to WAMT or Tiberius is completely irrelevant to any disputed issue. Furthermore, financial and banking information – including wire information – of nonparties Malcomines GmbH, S&M Pan African Mines & Logistics Ltd., Full Bliss Logistics Ltd., Michel Babic, Malcomines Minor Metals Ltd., and me personally is utterly and completely irrelevant and is plainly sought solely to harass. Finally, even if some information were to be provided to Tiberius, the Objectors respectfully request that their counsel first be given the opportunity to redact the confidential names and financial details of customers unrelated to the Nigeria Action – Tiberius has no legitimate interest in obtaining such confidential information, and Tiberius has already shown it will misuse the confidential business information of Malcomines.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of November, 2019, at Jos, Nigeria.

_____
Murtala Ahmad Laushi