UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE *EX PARTE* APPLICATION OF
TIBERIUS GROUP AG FOR AN ORDER TO
OBTAIN DISCOVERY FOR USE IN A
FOREIGN PROCEEDING

Misc. Action No. 1:19-MC-00467

## MALCOMINES LTD., MALCOMINES GMBH, S&M PAN AFRICAN MINES & LOGISTICS LTD., MICHEL BABIC, MURTALA LAUSHI & MALCOMINES MINOR METALS LTD.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH

Michael S. Cryan, Esq.
ARENT FOX LLP
1301 Avenue of the Americas
42nd Floor
New York, NY  10019
Tel:  212-484-3900
Fax:  212-484-3990
michael.cryan@arentfox.com
*Attorneys for Objectors*
*Malcomines Ltd., Malcomines GmbH,*
*S&M Pan African Mines & Logistics*
*Ltd., Michel Babic, Murtala Laushi,*
*and Malcomines Minor Metals Ltd.*

Of Counsel
Timothy J. Feighery, Esq.
ARENT FOX LLP
1717 K Street, N.W.
Washington, DC 20006

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND .................................................................................................... 2

PROCEDURAL BACKGROUND ............................................................................................. 7

STANDARD ............................................................................................................................ 8

ARGUMENT ........................................................................................................................... 9

I.     THE SUBPOENAS SHOULD BE QUASHED BECAUSE TIBERIUS' REQUEST CONSTITUTES AN END-RUN AROUND APPLICABLE DISCOVERY PROCEDURES IN NIGERIA .................................................... 9

II.    THE SUBPOENAS SHOULD BE QUASHED BECAUSE THE DEMAND FOR HIGHLY SENSITIVE FINANCIAL AND CUSTOMER INFORMATION IS UNDULY INTRUSIVE ..................................................................................... 10

III.   THE SUBPOENAS SHOULD BE QUASHED OR MODIFIED AND A PROTECTIVE ORDER SHOULD ISSUE REMOVING NONPARTIES FROM THE SUBPOENAS .......................................................................................... 13

CONCLUSION ....................................................................................................................... 13

AFDOCS/21247223.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Allstate Ins. Co. v. Etienne, No. 09-CV-3582,
2010 WL 2776078 (E.D.N.Y. July 13, 2010) ..........................................................................12

*Aventis Pharma v. Wyeth*,
No. M-19-70, 2009 WL 3754191 (S.D.N.Y. Nov. 9, 2009) .......................................................9

*In re Edelman*,
295 F.3d 171 (2d Cir. 2002) .......................................................................................................8

*Hynes as Trustee of Calling Card Distribution Trust v. Giambalvo*,
No. 09 CV 2599 (ARR)(LB), 2010 WL 11626954 (E.D.N.Y. May 5, 2010) ..........................12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) ....................................................................................................................8

*In re MT "Baltic Soul" Produktentankschiffahrtsgesellschaft MGH et al.*,
No. 15 MISC 319(LTS), 2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015) ..............................10, 11

*In re Noboa*,
No. M19–111, 1995 WL 581713 (S.D.N.Y. Oct. 4, 1995) .......................................................11

*In re Okean B.V. et al.*,
60 F.Supp.2d 419 (S.D.N.Y. 2014) .........................................................................................8, 9

*Schmitz v. Bernstein Liebhard & Lifshitz*,
LLP, 376 F.3d 79 (2d Cir. 2004) .............................................................................................10

**Statutes**

28 U.S.C. § 1782 .............................................................................................1, 2, 7, 8, 10, 11

AFDOCS/21247223.1

Malcomines Ltd. "("Malcomines"), Malcomines GmbH, S&M Pan African Mines & Logistics Ltd., Michel Babic, Murtala Laushi, and Malcomines Minor Metals Ltd. (collectively, the "Objectors") respectfully submit this memorandum of law in support of their motion to quash or for a protective order with respect to the subpoenas (the "Subpoenas") Tiberius Group AG ("Tiberius") issued to seven banks (Citibank N.A., JPMorgan Chase Bank N.A., HSBC Bank USA N.A., Bank of America, Deutsche Bank Trust Co. Americas, UBS AG, and Bank of New York Mellon, collectively, the "Banks") in this miscellaneous action brought under 28 U.S.C. § 1782. (A true and correct [redacted] copy of the Subpoenas with Notice of Subpoenas is attached as Exhibit 1 to the Declaration of Michael S. Cryan dated November 18, 2019 ("Cryan Decl.").)

## PRELIMINARY STATEMENT

Tiberius improperly invoked the jurisdiction of this Court in its continuing quest to unfairly compete against its former trading partner, Malcomines. In addition to filing a meritless action against Malcomines in Nigeria, which was only initiated by Tiberius in September 2019, Tiberius has carried out numerous deceptive business actions against Malcomines in Africa, Europe and Asia. Now, Tiberius brings its wrongful conduct to the United States and threatens to exacerbate exponentially the harm to Objectors by seeking invasive, irrelevant, palpably improper discovery against Malcomines and numerous other entities and individuals. Evidence of Tiberius's misuse of 28 U.S.C. § 1782 is the fact that Tiberius is seeking evidence of damages (*see* Memorandum of Law in Support of Application for an Order Under 28  U.S.C. § 1782 (ECF No. 5), at 5 ("Tiberius intends to use the evidence relating to the Target Entities in the Nigerian Action to enable it to locate and arrest assets and to recover amounts due to it by Malcomines Ltd.")) in a case that (1) has barely started; (2) an asset freeze is already in place; and (3) as demonstrated in the papers filed herewith, is hotly contested on the merits. This request is premature at best, but more importantly, it seeks to do an end-run around the Nigerian legal

process, including applicable discovery procedures in Nigeria. In any event, in the end, Tiberius

has failed to establish the crucial factors courts consider in evaluating an application pursuant to

28 U.S.C. § 1782 with respect to the intrusive Subpoenas aimed at U.S.-based banks.

## FACTUAL BACKGROUND

Malcomines' Business

Malcomines is engaged in the sale of minerals including tin concentrates. (Declaration of

Murtala Ahmad Laushi dated November 18, 2019 ("Laushi Decl.") ¶ 5.) Tin concentrates is

generally sold on the basis of provisional prepaid orders which are subject to final adjustment of

the price on the London Metal Exchange (LME) following quality tests and verifications that

occur after delivery of the shipment. (*Id.*, ¶ 10.) For all of these reasons, the pre-payment price

for an order is not final until after delivery, when the quality testing and verification procedures

are completed and the final price determined. (*Id.*) Thus, although Malcomines required

prepayment on each shipment, it is typical in the industry that there would be a further payment

(or credit) applied to a given shipment after the necessary adjustments are calculated. (*Id.*, ¶¶ 9-

11.)

Malcomines' proprietary business information is critical to its success as a trader. It

keeps its confidential and proprietary business information secret. Malcomines safeguards its

confidential and proprietary business information from disclosure by using unique usernames

and passwords on its computer system, employing encryption on its electronic records and

communications systems, and enforcing a confidentiality policy. (*Id.*, ¶ 27.)

With respect to customer identities specifically, Malcomines protects its customer names,

nature and amount of business, buyer information and all other relevant customer data. The

identity of customers and the amount and nature of Malcomines' business with those customers

are highly valued trade secrets – valuable to Malcomines and its competitors. It is extremely

harmful to Malcomines if the identity of customers or the amount and nature of Malcomines' business with those customers were disclosed to competitors. (*Id.*, ¶¶ 25-27.)

The Commercial Relationship Between Tiberius and Malcomines

Tiberius offered to purchase tin concentrates from Malcomines through an entity established for the purpose of receiving the shipments, West African Mineral Trading Ltd. ("WAMT"). At the instance and request of Tiberius, Murtala Laushi served as a director of WAMT until January 21, 2019, and Michel Babic served as managing director of WAMT until he resigned on May 20, 2019, effective June 20, 2019. Malcomines conducted business with WAMT in the usual format. With respect to any potential order by WAMT, Malcomines required prepayment. (Declaration of Michael Meredith dated October 18, 2019 (ECF No. 3-9) ("Meredith Decl.") ¶ 17; Affidavit in Support of the Motion on Notice, sworn to on September 10, 2019 in the Nigeria Action (ECF No. 3-9, pp. 14-17, ¶ 6 ("[Malcomines] always needed pre-finance from [WAMT] for every cargo to be sold and shipped to [Tiberius]."); Laushi Decl. ¶¶ 9-11.).)

As noted above, the price of each shipment to WAMT – as with all customers – was subject to adjustment based on quality testing and verification after delivery. (Laushi Decl. ¶ 10.)

WAMT prepaid the amount of $35,500,000, leaving an outstanding balance of $5,362,489. (*Id.*, ¶ 16.)

Malcomines made 126 shipments to WAMT. In accordance with the orders and after delivery of each shipment, Malcomines calculated the quality testing and verification for each shipment to WAMT. After making shipments in 2017 and 2018 to WAMT, Malcomines noted that WAMT no longer had a credit balance and was in arrears in the amount of $2,735,000. (*Id.*, ¶ 13.) In 2019, WAMT fell behind in its provisional payments on a per-container basis. In other

words, as time went on, WAMT began failing to pay even the provisional pre-payments due for all of the containers supplied. For example, there were weeks where Malcomines would deliver nine containers to WAMT, but was paid the provisional pre-payment amount for only three containers. (*Id.*, ¶ 13.)

On August 2, 2019, WAMT unilaterally informed Malcomines that no additional funds would be advanced. (Meredith Decl. ¶ 24; Affidavit in Support of the Motion on Notice, sworn to on September 10, 2019 in the Nigeria Action (ECF No. 3-9), pp. 14-17, ¶ 13.)

On August 5, 2019, Malcomines informed WAMT that Malcomines would not supply any more shipments to WAMT unless and until WAMT paid the sum certain amount due and prepaid for any such future shipments. (Meredith Decl. ¶ 25.)

No funds of Tiberius or WAMT were used to purchase any other shipments other than the shipments that were already delivered to WAMT. (Laushi Decl. ¶¶ 6-20.)

Tiberius Is a Competitor of Malcomines

Tiberius is both a customer and competitor of Malcomines. Tiberius admitted that it "is engaged in the purchase and sale of tin concentrates in Nigeria." (Meredith Decl. ¶ 5.) Thus, while it is undisputed that Tiberius, through WAMT, purchased tin concentrates from Malcomines, it is also the situation that Tiberius and Malcomines compete for other customers who are in the business of trading tin concentrates.

Tiberius Filed a Meritless Action in Nigeria Against Malcomines

On September 10, 2019, Tiberius filed an action entitled *Tiberius Group AG & West African Minerals Trading Ltd. v. Malcomines Ltd.* in the High Court for Lagos State, Nigeria, Suit No. LD/2657/19 (the "Nigeria Action"), and Malcomines responded. (Laushi Decl. ¶ 21.)  It is Malcomines' position that the action initiated in Nigeria was intended to coerce Malcomines to

continue to supply and deliver tin concentrates to WAMT for Tiberius despite the huge sum of money owed to Malcomines as shortfall payments. Malcomines has filed its response to the false claims being made by Tiberius in the proceedings before the High Court of Lagos State, and fully expects to prevail. (*Id.*) The Nigeria Action is proceeding.

Tiberius Committed Trade Libel and Unfair Competition Against Malcomines

Tiberius apparently learned from a shipping vendor, Cosco Shipping, that Malcomines was engaged in business with certain customers other than WAMT. (Affidavit in Support of the Motion on Notice, sworn to on September 10, 2019 in the Nigeria Action (ECF No. 3-9), pp. 14-17, ¶ 14.)

Tiberius contacted Malcomines' customers Haipu Resources Ltd. and Arrow Metals AG, and attempted to and did interfere with Malcomines' relationship with those customers. (Laushi Decl. ¶¶ 25-27.)

Expert Evidence Establishes Relevant Procedures for Subpoenas in Nigeria

Patrick Ikwueto is a highly-educated, well experienced barrister and solicitor in Nigeria holding the rank of Senior Advocate of Nigeria ("SAN"). (Declaration of Patrick Ifeanyi N. Ikwueto dated November 18, 2018 ("Ikwueto Decl.") ¶ 1.) He is a graduate of the University of Nigeria, Enugu Campus, and the Nigerian Law School. (*Id.*, ¶ 2.) He was admitted to the practice of law in Nigeria in 1985. (*Id.*, ¶ 1.) For more than three decades, he has appeared as a barrister and solicitor in numerous civil suits, including the type of commercial dispute at issue in the Nigeria Action, in which he represents Malcomines. He is fully familiar with the substantive and procedural law of Nigeria. (*Id.*)

As a matter of Nigerian law, any third party subpoena must be presented to the court and signed by the judge assigned to the matter. (*Id.*, ¶ 4.) Although subpoenas are issued at the

instance of a party, the Nigerian court determines whether the subpoena should be issued. (*Id.*, ¶ 5 (citing Order 32 Rules 10, 20, 24 and 25, Lagos Rules; section 253(2), Evidence Act).)

Under no or virtually no circumstances would a Nigerian court permit a party to obtain financial or banking information of nonparties under the circumstances presented here. (*Id.*, ¶ 6.)

Under no or virtually no circumstances would a Nigerian court permit a party to obtain financial or banking information of parties where the requesting party already has the relevant information. (*Id.*, ¶ 7.)

Under no or virtually no circumstances would a Nigerian court permit a party to obtain financial or banking information of parties where the requesting party already misused commercial information of the adverse party. (*Id.*, ¶ 8.)

<u>Tiberius Failed to Follow Relevant Procedure for Subpoenas in Nigeria</u>

In the Nigeria Action specifically, as a matter of Nigerian law, any third party subpoena must be presented to the High Court and signed by the judge assigned to the matter. Although subpoenas are issued at the instance of a party, the High Court determines whether the subpoena should be issued to a third party witness (such as a Bank). (*Id.*, ¶ 9.)

In the Nigeria Action specifically, under no or virtually no circumstances would the High Court permit Tiberius to obtain financial or banking information of nonparties Malcomines GmbH, S&M Pan African Mines & Logistics Ltd., Full Bliss Logistics Ltd., Michel Babic, Murtala Laushi, and Malcomines Minor Metals Ltd. (*Id.*, ¶ 10.)

In the Nigeria Action specifically, under no or virtually no circumstances would the High Court permit Tiberius to obtain financial or banking information of Malcomines where Tiberius already has the relevant information. (*Id.*, ¶ 11.)

In the Nigeria Action specifically, under no or virtually no circumstances would the High Court permit Tiberius to obtain financial or banking information of Malcomines where Tiberius already misused commercial information of Malcomines by contacting Malcomines customers in Africa and Asia, committed trade libel and competed in an unfair manner. (*Id.*, ¶ 12.)

Tiberius Improperly Seeks Intrusive and Burdensome Discovery

As noted, Tiberius issued the Subpoenas to seven Banks. The time period covered by each and every request stretches for more than three years – from "August 24, 2016 to the present [November 7, 2019]". (*See* Request Nos. 1-8 in each Subpoena.)

The Subpoenas demand financial information regarding eight entities or individuals: West African Mineral Trading Ltd., Malcomines Ltd., Malcomines GmbH, S&M Pan African Mines & Logistics Ltd., Full Bliss Logistics Ltd., Michel Babic, Murtala Laushi, and Malcomines Minor Metals Ltd. Of these, only two – West African Mineral Trading Ltd., and Malcomines Ltd. – are parties in the Nigeria Action. (*See* Request Nos. 1-8 in each Subpoena.)

The Subpoenas invasively demand each and every wire transfer to or from any of these eight entities and individuals over that entire time period – including transfers without any connection whatsoever to the Nigeria Action. (*See* Request Nos. 1-8 in each Subpoena; Laushi Decl. ¶ 31.)

## PROCEDURAL BACKGROUND

On October 18, 2019, Tiberius commenced this miscellaneous action by filing an ex parte application under 28 U.S.C. § 1782. (ECF No. 1.) On November 6, 2019, this Court entered an Order Granting Letter Motion for Discovery. (ECF No. 12.)

On November 5, 2019, Malcomines filed a letter motion requesting 14 days to submit a motion to quash. (ECF No. 11.) On November 7, 2019, this Court entered an Order granting the

application, providing that the deadline for Malcomines to file a motion to quash shall be 14 days after service of the relevant subpoena. (ECF No. 15.) This timely motion to quash followed.

## STANDARD

Section 1782 authorizes district courts to order discovery from third parties in the United States for use in foreign proceedings. *See* 28 U.S.C. § 1782. "Pursuant to § 1782, a district court is authorized to assist a foreign or international tribunal or a litigant before such a tribunal by ordering discovery where (1) the person from whom discovery is sought resides or is found in the district; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or any interested person." *In re Okean B.V. et al.*, 60 F.Supp.2d 419, 427 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). Once these statutory requirements are satisfied, district courts have "broad discretion over the issuance of discovery orders pursuant to § 1782[.]" *In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004) (satisfaction of the § 1782 factors "authorizes, but does not require, a federal district court to provide judicial assistance to foreign or international tribunals or to 'interested person[s]' in proceedings abroad" (alteration in *Intel*)).

The Supreme Court in *Intel* set forth four factors to guide district courts in exercising this discretion:

(1) Whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid;
(2) The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;
(3) Whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and
(4) Whether the subpoena contains unduly intrusive or burdensome requests.

*Okean B.V.*, 60 F.Supp.2d at 427 (internal quotation marks and citation omitted).

This discretion, however, is not unbounded – it "must be exercised in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* (internal quotation marks and citations omitted).

## ARGUMENT

Tiberius' application lacks merit for two principal reasons. First, Tiberius' request represents an attempt to circumvent the proof-gathering restrictions in Nigeria. Second, the demand for highly sensitive financial and customer information of Malcomines, as well as numerous nonparties, is unduly intrusive.

## I.    THE SUBPOENAS SHOULD BE QUASHED BECAUSE TIBERIUS' REQUEST CONSTITUTES AN END-RUN AROUND APPLICABLE DISCOVERY PROCEDURES IN NIGERIA

Courts reject attempts to circumvent foreign proof-gathering restrictions applicable to the parties' relationship. *See, e.g.*, *Aventis Pharma v. Wyeth*, No. M-19-70, 2009 WL 3754191, at *1 (S.D.N.Y. Nov. 9, 2009) (rejecting "attempt to circumvent foreign proof gathering restrictions that were contractually provided for by the parties[] in the choice of forum (France) clause").

In *Aventis Pharma*, for example, the party seeking discovery had not sought the same or similar discovery in the tribunal in France. *Aventis Pharma*, 2009 WL 3754191, at *1.  The *Aventis Pharma* Court noted that the sophisticated parties at issue there freely chose to arrange their business relationship to be governed by the foreign jurisdiction's laws – specifically including "all its requisite procedural rules." *Id.* As such, applying to a United States court for discovery never even requested in the original jurisdiction amounted to "an attempt to circumvent foreign proof gathering restrictions." *Id.* For this reason, the *Aventis Pharma* Court granted the motion to quash. *Id.* at *2.

Likewise, the Second Circuit affirmed a district court decision rejecting an attempt to do an end run around restrictions on access to certain discovery imposed by the tribunal in Germany in *Schmitz v. Bernstein Liebhard & Lifshitz*, LLP, 376 F.3d 79, 82 (2d Cir. 2004). The Second Circuit expressly noted that the foreign jurisdiction's procedures are "useful tools" to inform a court's discretion in considering an application under § 1782. *Id.* at 84 (quotation marks and alteration omitted). Allowing discovery requests that circumvent the foreign procedures would frustrate, rather than promote, the twin aims of § 1782 to provide efficient means of assistance to participants in international litigation in federal courts and to encourage foreign countries by example to provide similar means of assistance to American courts. *Id.*

Here, expert evidence in the form of a declaration by eminent Nigerian attorney and counselor at law Patrick Ikwueto establish the applicable discovery procedures in Nigeria. Nigeria procedures do not allow for third party discovery absent specific approval by the judge supervising that case. Recognizing that such third party discovery would not be permitted, Tiberius never sought the same or similar discovery in Nigeria. Instead, Tiberius filed an ex parte proceeding in this Court, hoping an American court would be unaware of the significant discovery limitations imposed on parties in Nigeria – limitations that Tiberius necessarily agreed to accept when it conducted business in Nigeria and brought the Nigeria Action. Tiberius must not be permitted to avoid lawful restrictions that govern both Tiberius and Malcomines in the place where these sophisticated parties chose to act.

## II.    THE SUBPOENAS SHOULD BE QUASHED BECAUSE THE DEMAND FOR HIGHLY SENSITIVE FINANCIAL AND CUSTOMER INFORMATION IS UNDULY INTRUSIVE

Courts refuse to facilitate unduly intrusive demands for broad commercial and financial information under § 1782 absent adequate foundation. *See In re MT "Baltic Soul" Produktentankschiffahrtsgesellschaft MGH et al.*, No. 15 MISC 319(LTS), 2015 WL 5824505, at

*3 (S.D.N.Y. Oct. 6, 2015) (denying application under § 1782 in its entirety where requests for "disclosure of every financial transaction these companies have engaged in with 11 different banks, along with considerable additional financial information, sweeps far too broadly to be proper"); *In re Noboa*, No. M19–111, 1995 WL 581713, at *4 (S.D.N.Y. Oct. 4, 1995) (requiring modifications to discovery requests for *inter alia* wire transfers in all accounts maintained by or on behalf of each Noboa Group entity).

The *"Baltic Soul"* Court explained that allowing overbroad demands for banking and financial information would undermine the purpose of § 1782. *See In re MT "Baltic Soul" Produktentankschiffahrtsgesellschaft MGH et al.*, 2015 WL 5824505, at *3. In the case at bar, Tiberius demands a broad array of financial transactions over more than three years and including not only Malcomines but also six nonparty persons or entities from seven different banks. The demand is unmoored to any dispute at issue in the Nigeria Action and constitutes nothing more than a financial fishing expedition.

The Subpoenas cover each and every financial transaction over a more than three year period – including every irrelevant transaction during that overbroad time period.

The Subpoenas demand this sensitive commercial information about not only the two parties in the Nigeria Action (West African Mineral Trading Ltd., and Malcomines Ltd.), but also about six other entities and individuals (Malcomines GmbH, S&M Pan African Mines & Logistics Ltd., Full Bliss Logistics Ltd., Michel Babic, Murtala Laushi, and Malcomines Minor Metals Ltd.) that are not even parties in the Nigeria Action.

The Subpoenas invasively demand each and every wire transfer to or from any of these eight entities and individuals over that entire time period. The Subpoenas therefore threaten to expose the name of each and every customer of Malcomines and the other persons – customers

having nothing to do with Tiberius or the Nigeria Action – and the amount of business Malcomines and the other persons do with those customers. The identity of customers and the amount and nature of Malcomines' business with those customers are highly valued trade secrets – trade secrets that Malcomines protects by using unique usernames and passwords on its computer system, employing encryption on its electronic records and communications systems, and enforcing a confidentiality policy. Tiberius must not gain access to this information, which is irrelevant to any issue in the Nigeria Action.

The threat posed by these invasive demands for sensitive financial information is immeasurably intensified by the record in this action, which shows that Tiberius will waste no time in using private financial information to compete unfairly against Malcomines. Tiberius committed trade libel and unfair competition against Malcomines by contacting customers in Africa and Asia, wholly unrelated to any dispute at issue, and trying to harm Malcomines' business. While some courts have required that overbroad requests be tailored, the Subpoenas at issue here should be quashed.

Even if the Court does not grant the motion in full, Malcomines respectfully requests that the Court direct that the information first be produced to Malcomines' counsel so that counsel can redact information not related to the Nigeria Action. *See Hynes as Trustee of Calling Card Distribution Trust v. Giambalvo*, No. 09 CV 2599 (ARR)(LB), 2010 WL 11626954, at *3 (E.D.N.Y. May 5, 2010) ("The Court denies [defendant and moving party] Giambalvo's request for a protective order regarding his personal bank records, however, grants defendant's counsel's request to redact information not related to defendant's calling card activities."); *Allstate Ins. Co. v. Etienne*, No. 09-CV-3582, 2010 WL 2776078, at *1 (E.D.N.Y. July 13, 2010) (denying motion to quash "on condition that the subpoenaed bank records be produced to the Berardi

defendants, who, before disclosing the records to plaintiff, may redact them to exclude

transactions not involving named parties to this litigation").

## III.    THE SUBPOENAS SHOULD BE QUASHED OR MODIFIED AND A PROTECTIVE ORDER SHOULD ISSUE REMOVING NONPARTIES FROM THE SUBPOENAS

All of the Objectors join in the arguments set forth above. Furthermore, to the extent that

the Subpoenas demand information about nonparties Malcomines GmbH, S&M Pan African

Mines & Logistics Ltd., Full Bliss Logistics Ltd., Michel Babic, Murtala Laushi, and

Malcomines Minor Metals Ltd., the Subpoenas represent nothing more than sheer harassment.

The Subpoenas should therefore be quashed or modified accordingly.

## <u>CONCLUSION</u>

For the reasons set forth above, the Objectors respectfully request that the Court enter an

order granting the motion to quash the Subpoenas.

Dated: New York, New York
      November 18, 2019

ARENT FOX LLP

By:_____

     Michael S. Cryan
     1301 Avenue of the Americas
     42nd Floor
     New York, NY 10019
     Tel: (212) 484-3900
     Fax: (212) 484-3990
     E-mail: michael.cryan@arentfox.com
     *Attorneys for Objectors*
     *Malcomines Ltd., Malcomines GmbH,*
     *S&M Pan African Mines & Logistics*
     *Ltd., Michel Babic, Murtala Laushi,*
     *and Malcomines Minor Metals Ltd.*

<u>Of Counsel</u>
Timothy J. Feighery, Esq.
ARENT FOX LLP
1717 K Street, N.W.
Washington, DC 20006

14