UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\-------------------------------------------------------- X
                                   :

IN RE *EX PARTE* APPLICATION OF   :
TIBERIUS GROUP AG FOR AN ORDER TO   :
OBTAIN DISCOVERY FOR USE IN A   :    Misc. Action No. 19-00467-VSB
FOREIGN PROCEEDING   :
                                   :
\-------------------------------------------------------- X

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO QUASH

TRESSLER LLP

Courtney E. Scott (CS9744)
Charles B. Bergin (CB0503)
One Penn Plaza
Suite 4701
New York, NY 10119
Telephone:  (646) 833-0900
Facsimile:  (646) 833-0877

*Attorneys for Tiberius Group AG*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 2

    The Nigerian Action ................................................................................................ 2

    Tiberius' Application ............................................................................................... 3

    Objectors' Motion to Quash................................................................................... 4

ARGUMENT ....................................................................................................................... 5

I.      TIBERIUS HAS SATISFIED THE STATUTORY REQUIREMENTS OF  28
       U.S.C. § 1782 ........................................................................................................... 5

II.    THE DISCRETIONARY *INTEL* FACTORS WEIGH DEFINITIVELY IN
       FAVOR OF THIS COURT'S ORDER GRANTING TIBERIUS' APPLICATION ........ 5

III.   THE COURT SHOULD NOT CONSIDER OBJECTORS' ARGUMENTS AS
       TO THE MERITS OF THE NIGERIAN ACTION IN EXERCISING ITS
       DISCRETION UNDER *INTEL* ............................................................................... 7

IV.   TIBERIUS' APPLICATION IS NOT AN ATTEMPT TO CIRCUMVENT
       FOREIGN PROOF-GATHERING RESTRICTIONS ...................................... 8

       A.     Objectors Erroneously Conflate the Third *Intel* Factor with Irrelevant
             Issues of Foreign Procedure and Admissibility ...................................... 8

       B.     Objectors Have Not and Cannot Establish a Bad Faith Attempt to
             Circumvent Foreign Proof-Gathering Restrictions Contemplated by the
             Third *Intel* Factor ...................................................................................... 9

V.    THE SUBPOENAS ARE NOT UNDULY INVASIVE OR BURDENSOME .............. 13

       A.     The Subpoenas Authorized by This Court Are Not Impermissibly Broad .......... 13

       B.     Objectors Have No Basis to Object to Subpoenas Directed to the New
             York Banks as "Burdensome" .............................................................................. 16

CONCLUSION.................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
    785 F. Supp. 2d 434 (S.D.N.Y., 2011)...................................................................... 5, 12, 15

*Aventis Pharma v. Wyeth*,
    2009 WL 3754191 (S.D.N.Y., Nov. 9, 2009) ................................................... 10

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012)................................................................................ 9

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995)................................................................... 7, 11, 12

*Gorsoan Ltd. v. Bullock*,
    652 Fed.Appx. 7 (2d Cir. 2016) ......................................................................... 9

*In re Accent Delight International Ltd.*,
    2019 WL 5960348 (S.D.N.Y., Nov 13, 2019) ................................................. 10

*In re Accent Delight International Ltd.*,
    869 F.3d 121 (2d Cir. 2017)............................................................................ 15

*In re Application of Chevron Corp.*,
    709 F. Supp.2d 283 (S.D.N.Y., 2010) ............................................................ 10

*In re Application of Hydrodrive Nigeria Ltd.*,
    2013 WL 12155021 (S.D.Texas, May 29, 2013)............................................. 12

*In re Application of Malev Hungarian Airlines*,
    964 F.2d 97 (2d Cir. 1992).............................................................................. 11

*In re Application of Setraco Nigeria Ltd.*,
    2013 WL 3153902 (M.D. Fla. June 19, 2013) ................................................. 6

*In re Catalyst Managerial Services, DMCC*,
    680 F. Appx. 37 (2d Cir. 2017)....................................................................... 12

*In re Furstenberg Fin. SAS*, No. 18-mc-44 (JGK),
    2018 WL 3392882 (S.D.N.Y., July 12, 2018) .................................................. 7

*In re Godfrey*,
    526 F. Supp. 2d 417 (S.D.N.Y., 2007)............................................................. 5

*In re Grupo Quma, S.A. de C.V.*,
    No. M. 8-85, 2005 WL 937486 (S.D.N.Y., Apr. 22, 2005).............................. 14

*In re MT "Baltic Soul" Produktentankschiuffahrtsgesellschaft MGH,*
    2015 WL 5824505 (S.D.N.Y., Oct 6, 2015) .................................................................. 13

*In re O'Keeffe,*
    650 Fed. Appx. 83 (2d Cir. 2016) .............................................................................. 9, 17

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP,*
    376 F.2d 79 (2d Cir. 2004)............................................................................................ 10

**Statutes**

28 U.S.C. § 1782 ................................................................................................................ 1, 8

Tiberius Group AG ("Tiberius"), by its undersigned counsel, respectfully submits this Memorandum of Law in opposition to the Motion to Quash of Malcomines Ltd., Malcomines GmbH, S&M Pan African Mines & Logistics Ltd., Michel Babic, Murtala Laushi and Malcomines Minor Metals Ltd. (collectively "Objectors") directed to subpoenas to Citibank N.A., Deutsche Bank Trust Company, HSBC Bank USA N.A., JPMorgan Chase Bank N.A., Bank of NY Mellon, UBS AG and Bank of America (the "New York Banks") by Tiberius (the "Subpoenas").

## PRELIMINARY STATEMENT

Tiberius sought and received authorization from this Court to take discovery from the New York Banks in connection with a pending action in the High Court of Lagos State, Nigeria that is part of its effort to recoup millions of dollars it advanced to Objector Malcomines Ltd. ("Malcomines") and to recover millions of dollars' worth of minerals purchased by it and not delivered by Malcomines.  Tiberius set forth in detail facts establishing the legitimate bases for its Application  (including the role of the Objectors in the transactions at issue),  and  its belief that the New York Banks are likely to possess crucial evidence that Tiberius intends to use in the Nigerian Action and/or contemplated further legal proceedings involving the Objectors in Nigeria or elsewhere.

Objectors' motion to quash the Court-ordered discovery does not dispute that Tiberius' Application complied with the three threshold statutory requirements set forth in Section 1782, or with the majority of the discretionary factors courts are to consider under Supreme Court precedent.  Objectors' motion to quash is based primarily upon an inappropriate and improper attempt to embroil the Court in factual disputes appropriate only for the Nigerian courts, coupled with irrelevant arguments about the discoverability in Nigeria of the information sought from parties beyond the jurisdiction of the Nigerian courts.  With respect to the only discretionary factor invoked in support of their motion to quash, Objectors misconstrue the relevant inquiry by

conflating procedural issues with foreign proof gathering restrictions that do not exist.  Objectors' remaining arguments regarding alleged "trade secrets" and commercially sensitive information are easily addressed through the entry of an appropriate protective order, to which Tiberius is amenable.

As set forth detail below, when stripped of arguments deemed irrelevant or inappropriate for this Court's consideration in connection with Tiberius' Section 1782 Application, no basis remains to quash or otherwise modify the subpoenas authorized by this Court's prior Order granting Tiberius' Application.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Nigerian Action

As set forth in the October 18 Declaration of Michael Meredith (ECF Doc. # 7-8), Tiberius and its Nigerian subsidiary West African Minerals Trading Ltd. ("WAMT") commenced legal proceedings in the High Court of Lagos State Nigeria to enforce its rights and collect amounts owed to it by Malcomines Ltd. (the "Nigerian Action").  In the interest if brevity, Tiberius will not herein repeat the detailed factual discussion of the background of the Nigerian Action, the relationship between Tiberius and Malcomines Ltd., Malcomines' diversion of Tiberius' funds and the involvement of Micel Babic and Murtala Laushi.  Tiberius incorporates herein the factual background set forth in its Memorandum of Law in Support of its Section 1782 Application (ECF Doc. # 8) at pp. 1-4.

Objectors do not dispute the pendency of the Nigerian Action or the fact that the High Court of Lagos entered a Mareva Injunction restraining Malcomines Ltd., and others acting in concert with it, from moving or removing from Nigeria any assets within the jurisdiction of the Court.  October 18 Declaration of Michael Meredith (ECF Doc. # 7-8) at ¶¶ 30-31, Exh. 2.  A hearing was held on December 12, 2019 in the High Court of Lagos in connection with, inter alia,

Malcomines Ltd.'s application to discharge the Mareva Injunction.  Before the High Court were hundreds of pages of sworn affidavits and documentary evidence submitted by Malcomines Ltd., as well as Tiberius and WAMT, relating to the merits of the parties' dispute and the grounds for the Mareva Injunction.  The High Court dismissed Malcomines Ltd.'s application to discharge the Mareva Injunction, finding that the grounds upon which Malcomines wishes to have the orders discharged, *i.e.*, allegations of misconduct by Tiberius similar to those advanced here were premature and could only be verified or substantiated during trial.  The High Court further granted the request of Malcomines and WAMT to extend the Mareva injunction, exercising its discretion to do so given the circumstances of the case and the reasons why the *ex parte* orders were granted in the first place.  The High Court conditioned its extension on an undertaking by Malcomines and WAMT for any losses incurred in the event that it is found that the Mareva Injunction should not have been granted by the Court and on Malcomines Ltd.'s providing a bank guarantee or bond to the value of the Tiberius and WAMT's claims.  Declaration of Courtney E. Scott in Opposition to Motion to Quash dated December 13, 2019 at ¶ 3.  The next hearing in the High Court is scheduled for March 4, 2020.  *Id.*

**<u>Tiberius' Application</u>**

On October 21, 2019 Tiberius filed the Application to subpoena wire transfer data in the custody and control of the New York Banks in connection with the subject matter of the Nigerian Action. Specifically, the discovery in question pertains to the Objectors, entities and persons that Tiberius believes may have been complicit in the diversion of Tiberius' funds.  The factual background for the Nigerian Action, as well as the interrelationships of the parties whose transactions are covered by the subpoenas, is set forth in the October 18 Declaration of Michael Meredith, and supplemented by the December 13, 2019 Meredith Declaration submitted herewith.

In brief, Objectors Babic and Laushi were previously directors of WAMT, and are currently joint owners of Objector Malcomines GmbH, which in turn owns Objector Malcomines Ltd. October 18 Declaration of Michael Meredith (ECF Doc. # 7-8) at ¶¶ 7, 8, 10, 36-38. Tiberius reasonably believes that Babic used his position as a director WAMT to funnel funds from WAMT to or for the benefit of himself and/or the other Objectors, including Laushi, Malcomines Ltd., Malcomines GmbH, possibly Malcomines Minor Metals Ltd. and an entity owned by Babic, Objector S&M, *Id.* ¶¶ 40-41; December 13, 2018 Declaration of Michael Meredith at ¶¶ 10-16. The Subpoenas issued to the New York Banks pursuant to this Court's November 6, 2019 Order granting Tiberius Section 1782 Application are limited in temporal scope to transfers made after the creation of WAMT, also the beginning of Babic's time as a director of WAMT, on August 24, 2016.  October 18 Declaration of Michael Meredith (ECF Doc. # 7-8) ¶ 5.

Tiberius' Application addressed and established that the statutory requirements of 28 U.S.C. § 1782 have been met, and that each of the discretionary factors for the Court's consideration weighed heavily in favor of granting the Application.

**Objectors' Motion to Quash**

On November 18, 2019, after Tiberius properly served the Subpoenas authorized by this Court upon the New York Banks, the Objectors filed the instant motion to quash (Doc. No. 17). In support of the motion to quash, the Objectors filed a Declaration of Objector Murtala Laushi (Doc. No. 18) and numerous exhibits which almost exclusively relate to the merits of the Nigerian Action and/or disputed factual issues.  Submitted herewith, the December 19, 2019 Declaration of Michael Meredith declines to engage in factual disputes, but expands upon his October 18, 2019 Declaration (ECF Doc. # 7-8), in providing factual support for the scope of the subpoenas, clarifying the overlapping relationships between and among Objectors Babic, Laushi, Malcomines

4

Ltd., Malcomines GmbH, Malcomines Minor Metals Ltd. and S&M with WAMT, as well as Tiberius' good faith belief in the necessity of the subpoenas.  December 19, 2019 Declaration of Michael Meredith, at ¶¶ 10-16.

The Objectors also filed a Declaration of Patrick Ikwueto (Doc. No. 19), Nigerian counsel for Malcomines Ltd., which purports to discuss the procedures for obtaining discovery in actions brought in Nigeria. Submitted herewith, the Declaration of Oluseye Opasanya establishes that Nigerian Civil Procedure Rules expressly contemplate the taking of evidence of third parties by proper process outside Nigeria, and that Nigerian courts have no prohibition to the discovery sought by Tiberius.  Declaration of Oluseye Opasanya at ¶¶ 4-11.

## ARGUMENT

### I.  TIBERIUS HAS SATISFIED THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782

As set forth in Tiberius' Application, all statutory requirements of 28 U.S.C. § 1782. Specifically, Tiberius demonstrated: (i) that the U.S. Banks from whom discovery was sought are found within this Judicial District (*In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y., 2007); (ii) that the discovery is for use in a proceeding or foreign tribunal, namely the Nigerian Action (*Intel Corp*., 542 U.S. at 258); and (iii) that Tiberius is an "interested person" in the Nigerian Action (*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd*., 785 F. Supp. 2d 434, 438 (S.D.N.Y., 2011).  *See*, Tiberius' Memorandum of Law in Support of its Application (ECF Doc. # 8) at pp. 5-6.

### II.  THE DISCRETIONARY *INTEL* FACTORS WEIGH DEFINITIVELY IN FAVOR OF THIS COURT'S ORDER GRANTING TIBERIUS' APPLICATION

The four discretionary *Intel* factors weigh in favor of granting the requested discovery. Tiberius' Application demonstrates that: (i) the New York banks are not participants in the

Nigerian Action; (ii) the courts of Nigeria are receptive to U.S. judicial assistance; (iii) the subpoenas are not an improper attempt to circumvent foreign proof-gathering restrictions; and (iv) the discovery is not unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264-66; Tiberius' Memorandum of Law in Support of its Application (ECF Doc. # 8) at pp. 7-10 . Objectors have not disputed either of the first two *Intel* factors.

As to the second factor, the receptivity of Nigerian courts to judicial assistance, Tiberius submits herewith the Declaration of Oluseye Opasanya, lead counsel for Tiberius and WAMT in the Nigerian Action, sworn to on December 12, 2019 (the "Opasanya Declaration"). The Opasanya Declaration establishes that there is no prohibition on the discovery in the United States of documents and information from the New York Banks for use in civil proceedings in Nigeria. Opasanya Declaration ¶ 5. The procedural and evidentiary rules applicable to proceedings in the High Court of Lagos State expressly contemplate the gathering of proof in foreign countries from parties not within the jurisdiction of the Nigerian courts pursuant to valid procedures in those countries. Opasanya Declaration ¶¶ 4-9, 11; Declaration of Courtney E. Scott dated December 13, 2019, Exh. A. There is no applicable probation in Nigeria of a party's use of available legal methods in foreign countries, such as the subpoenas issued here to the New York Banks, to gather evidence for use in civil proceedings in Nigeria. Opasanya Declaration ¶ 11. For example, in *In re Application of Setraco Nigeria Ltd.,* 2013 WL 3153902 (M.D. Fla. June 19, 2013), the court ruled that petitioner was entitled to discovery based upon petitioner's assertion that it intended to pursue civil and/or criminal actions in Nigeria against entities accused of fraudulently transferring money in petitioner's name. Reviewing the *Intel* factors, the court noted that "***the Court can find no Nigerian law, rule of evidence, or rule of civil or criminal procedure prohibiting the filing***" of a Section 1782 petition. *Id,* at *3. (emphasis added).

### III. THE COURT SHOULD NOT CONSIDER OBJECTORS' ARGUMENTS AS TO THE MERITS OF THE NIGERIAN ACTION IN EXERCISING ITS DISCRETION UNDER *INTEL*

A substantial portion of Objectors' motion is devoted to disputed factual issues properly within the purview of the Nigerian courts. Objectors submit the Declaration of Murtala Ahmad Laushi disputing the allegations set forth by Tiberius in the Nigerian Action, and making accusations of "trade libel" and other "wrongful conduct" against Tiberius. Even the Declaration of Malcomines' counsel in the Nigerian Action, Patrick Ikwueto, incorporates and is based upon conclusory and inappropriate allegations as to the merits of Malcomine's allegations of improper conduct by Tiberius. Ikwueto Decl. (ECF Doc. # 19) at ¶¶ 8, 12. Objectors' focus in the Preliminary Statement of Objectors' Memorandum of Law tellingly, and inappropriately, highlights these accusations.

The Court should decline Objectors' invitation to engage in speculation as to the merits of the parties' position on disputed factual issues properly decided only by the Nigerian courts. In *In re Children's Investment Fund Foundation (UK),* 363 F. Supp.3d 361 (S.D.N.Y. Jan 30, 2019), this Court reviewed – and denied – a motion to quash or stay based on arguments as to the merits of a foreign proceeding. As it should here, this Court:

> decline[d] to engage in speculation about how any of the Foreign Proceedings may be resolved. *See Euromepa* [*v. R. Esmerian, Inc*], 51 F.3d [1095], at 1099–1100 [(2d Cir. 1995)] (stating that it is "unwise—as well as in tension with the aims of section 1782—for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law" because § 1782 does not "condone speculative forays in legal territories unfamiliar to federal judges" and "[s]uch a costly time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the 'twin aims' of the statute"); *In re Furstenberg Fin. SAS*, No. 18-mc-44 (JGK), 2018 WL 3392882, at *5 (S.D.N.Y., July 12, 2018) (noting that "[t]his Court should not address" arguments that ask the "Court to consider the merits of the foreign proceeding and determine whether the petitioners are likely to prove their damages in that case"); *In re Application of 000 Promnefstroy for an Order to Conduct Discovery for use in a Foreign Proceeding*, 134 F.Supp.3d 789, 793 (S.D.N.Y. 2015).

*Id.* at 377.

The Court should decline to consider the Laushi Declaration and the exhibits thereto to the extent they relate to disputed factual issues in the Nigerian Action or the merits of the dispute between Tiberius and Malcomines.  The Declaration of Michael Meredith dated December 13, 2019 submitted herewith addresses certain assertions in the Laushi Declaration that are relevant to the parties whose transaction records covered by the Subpoenas and certain of Objectors' arguments that are arguably relevant to its Application.  As stated therein, Tiberius intends to dispute Laushi's allegations in the appropriate forum, the High Court of Lagos.  Tiberius has submitted to the Court the October and December Declarations of Michael Meredith solely to provide the Court with relevant information as to the Nigerian Action and has included factual material to establish the reasonableness of the scope of the Subpoenas in connection with pending and contemplated foreign proceedings.

## IV.   TIBERIUS' APPLICATION IS NOT AN ATTEMPT TO CIRCUMVENT FOREIGN PROOF-GATHERING RESTRICTIONS

### A.   Objectors Erroneously Conflate the Third *Intel* Factor with Irrelevant Issues of Foreign Procedure and Admissibility

The third *Intel* factor permits a court to consider whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions." *Intel,* 542 U.S. at 264-66. Objectors argue that the discovery sought by Tiberius is such an attempt based upon: (i) the "expert evidence" from their own counsel in Nigeria, Patrick Ikwueto, which allegedly establishes that "Nigerian procedures do not allow for third-party discovery absent specific approval by the judge supervising [the] case"; and (ii) because "Tiberius never sought the same or similar discovery in Nigeria". Mem. of Law in Support at 9-10.

Both arguments fail. As an initial matter, as set forth above, this Court has explicitly rejected potentially biased declarations of foreign law that ask this Court to speculate as to the

evidentiary rulings of foreign tribunals. *In re Children's Investment Fund Foundation (UK),* at 377. Accordingly, Mr. Ikwueto's declaration should not be considered. Moreover, the admissibility and/or discoverability of the discovery sought is irrelevant to a court's analysis of a Section 1782 application. Specifically, courts within the Second Circuit, in keeping with the precepts laid out in *Intel,* are not only not required to evaluate whether the sought discovery is admissible in the foreign proceeding, but are explicitly prohibited from doing so. *See, Intel,* at 264 (a court "should not base its 1782 decision on whether this discovery would be allowed" in the foreign tribunal); *see, e.g., Gorsoan Ltd. v. Bullock,* 652 Fed.Appx. 7, 9 (2d Cir. 2016)( "there is no requirement that evidence sought in the United States pursuant to 1782 be discoverable under the laws of the foreign country that is the locus of the underlying proceeding"); *Brandi-Dohrn v. IKB Deutsche Industriebank AG,* 673 F.3d 76, 82 (2d Cir. 2012) ("a district court should not consider the *discoverability* of the evidence in the foreign proceeding, [and] it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application"). Indeed, the Second Circuit has held plainly that "our precedents expressly forbid district courts from considering the discoverability of evidence in a foreign proceeding when reviewing a 1782 application." *In re O'Keeffe,* 650 Fed. Appx. 83, 85 (2d Cir. 2016).

**B.      Objectors Have Not and Cannot Establish a Bad Faith Attempt to Circumvent Foreign Proof-Gathering Restrictions Contemplated by the Third *Intel* Factor**

In weighing the third Intel factor, whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions," courts look only to whether the application conceals a bad faith attempt to circumvent the law or policies of the foreign country, not whether other procedures for obtaining information might be available a foreign proceeding. The Second Circuit distinguishes between "a request for documents that cannot be obtained because the foreign proceeding does not provide a *mechanism* for such discovery, and one that seeks documents that

9

cannot be obtained because the foreign jurisdiction prohibits the discovery of those documents." Only the latter createa a bar to the application. *In re Accent Delight International Ltd.,* 2019 WL 5960348 (S.D.N.Y., Nov 13, 2019).

An example of such a bad faith effort is ironically best exemplified in the easily distinguishable cases upon which Objectors rely. In *Schmitz v. Bernstein Liebhard & Lifshitz, LLP,* 376 F.2d 79 (2d Cir. 2004), petitioners sought discovery for use in a civil proceeding in Germany. However, there was also a related criminal proceeding in Germany brought the Public Prosecutor for Bonn. The discovery sought in the United States by the petitioner in *Schmitz* had been explicitly barred in German civil proceedings by the Bonn Prosecutor and the German Ministry of Justice on the grounds that "production to petitioners at this time would compromise the ongoing criminal investigation in Germany and violate the rights of potential criminal defendants there." *Id.,* at 82. The Secretary of State of the German Federal Ministry of Justice wrote to the Southern District to inform the Court that the Federal Government of Germany opposed the requested production. *Id.* No such facts exist here.

*Schmitz* is further distinguishable because the Section 1782 Application was denied, not because of the circumvention of foreign proof-gathering restrictions, but because the foreign government advised court that it was decidedly ***not*** receptive to the federal court judicial assistance. *Id.,* at 85.[1]  This is not here the case.  As set forth in the Opasanya Declaration, Nigerian

---

[1] The other case that Respondents rely upon, *Aventis Pharma v. Wyeth*, 2009 WL 3754191 (S.D.N.Y., Nov. 9, 2009) is similarly distinguishable. Respondents mischaracterize the ruling of the *Aventis* court as that "applying to a United States court for discovery never even requested in the original jurisdiction amounted to 'an attempt to circumvent foreign proof gathering restrictions'". (¶ 9). The *Aventis* court made no such ruling. Rather, the petitioner in *Aventis* was denied because the court in *Aventis* found that the petitioner was attempting to circumvent the French court's proof-gathering restrictions as the parties had specifically contracted to be governed by French proof-gathering restrictions, and the court quashed the requested discovery because the petitioner waited until the "eve of an appeal" in the French court to request discovery it had not sought in the previous five years of French litigation. The court ruled that such an approach would "frustrate, rather than promote" the aims of 1782. *Citing to In re Application of Chevron Corp.,* 709 F. Supp.2d 283, 299 (S.D.N.Y., 2010) No such contract, and no such delay, is present in this case.

courts are receptive to foreign judicial assistance in gathering proof beyond their jurisdiction for use in civil proceedings there.  The Opasanya Declaration establishes that the applicable procedural and evidentiary rules in Nigeria contain no prohibition on the discovery authorized by this Court on Tiberius' Application, and no requirement that the requested evidence be sought in Nigeria.  The generalized statements and merits-based assertions[2] of Malcomines' Nigerian counsel regarding the procedure for party discovery in Nigeria and third-party discovery from entities within the Nigerian courts' jurisdiction is wholly irrelevant to this Court's analysis under *Intel.*  As noted above, Second Circuit "precedents expressly forbid district courts from considering the discoverability of evidence in a foreign proceeding when ruling on a § 1782 application."  *In re O'Keeffe,* 650 Fed.Appx.at 85.

Objectors' argument that Tiberius is attempting to circumvent the Nigerian Court's proof-gathering requirements as it did not previously seek the discovery in Nigeria is similarly baseless. There is no requirement that the applicant first seek the discovery in the foreign proceeding. Opasanya Decl at ¶ 9.  In *In re Application of Malev Hungarian Airlines,* 964 F.2d 97, 100 (2d Cir. 1992), the Second Circuit overturned the lower court's denial of a 1782 discovery request on this exact basis, holding that "we find nothing in the text of 28 U.S.C. § 1782 which would support a quasi-exhaustion requirement of the sort imposed by the district court [*i.e.* requiring that the petitioner first seek the discovery in the foreign tribunal]", that "furthermore, requiring an interested person first to seek discovery from the foreign or international tribunal is at odds with the twin purposes of 28 U.S.C. § 1782 as articulated in the legislative history", that to do so "would

---

[2]  Ikwueto's assertions that the High Court would not approve discovery of the type sought in Tiberius' Application, whether on the grounds that the discovery comes from "third party witnesses" (Ikwueto Dec. ¶ 5), or on the unsupported allegations that the discovery is "undisputed" and "irrelevant" (Ikwueto Dec. ¶ 6), already available to Tiberius (Ikwueto Dec. ¶ 7) or has been "misused" by Tiberius (Ikwueto Dec. ¶ 8) have no relevance to this Court's analysis, and render his statements the type of "biased interpretations of foreign law" the Second Circuit has rejected in considering Section 1782 applications.  *Euromepa*, 51 F.3d at 1099–1100.

undermine the policy of prompting foreign courts to act similarly based on our generous example"
and that "no other federal court has denied a direct request by a private foreign litigant for
discovery pursuant to 28 U.S.C. § 1782 because the party seeking discovery has not first sought
the information through the foreign or international tribunal." *See, also, Euromepa S.A. v. R.
Esmerian, Inc.,* 51 F.3d at 1098; *In re Catalyst Managerial Services, DMCC,* 680 F. Appx. 37, 40
(2d Cir. 2017).

Moreover, as noted above, the Nigerian courts would not have the jurisdiction to issue the
subpoenas at issue in this case to the New York banks, which are not within their jurisdiction.
Opasanya Declaration at ¶ 9. Indeed, a specific statutory requirement of 28 U.S.C. § 1782 is that
the Nigerian Action does not have jurisdiction over the New York banks to appear or produce the
evidence. *See Intel*, 542 U.S. at 264 (noting that "when the person from whom discovery is sought
is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent
as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.  A
foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce
evidence"); *Ahmad Hamad Algosaibi Bros*., 785 F. Supp. 2d at 437 ("[T]here is a greater need for
§ 1782 aid when the respondent is a non-participant 'because a foreign tribunal has jurisdiction
over those appearing before it and can itself order them to produce evidence.'").

The argument advanced by Objectors here was raised and rejected by the District Court for
the Southern District of Texas in *In re Application of Hydrodrive Nigeria Ltd.,* 2013 WL 12155021
(S.D.Texas, May 29, 2013). In *Hydrodrive,* objector Cal Dive International moved to quash a
subpoena for discovery for use in proceedings in Nigeria pursuant to a court order granting
petitioner Hydrodrive's Section 1782 application. Cal Dive International made the same argument
as the Objectors: that the court had abused its discretion in granting the order and that the request

was an attempt to circumvent Nigerian proof-gathering restrictions because Hydrodrive had not first sought the discovery in Nigeria. The court denied the motion to quash, holding that:

> There is no reason to believe that [the tribunal] or the Nigerian court is hostile to U.S. courts in discovery. Nor does the court have any basis to believe that HydroDrive's use of § 1782 conceals an attempt to circumvent Nigerian law or policy…Section 1782 does not require HydroDrive to seek discovery in the foreign jurisdiction before seeking the assistance of a district court.

As Tiberius' application is not a bad faith effort to circumvent the Nigerian court's proof-gathering restrictions or any Nigerian law or policy prohibiting the discovery sought in Tiberius' Application, the third Intel factor does not factor into the proper analysis for this Court.  Objectors motion to quash should be denied.

## V.   THE SUBPOENAS ARE NOT UNDULY INVASIVE OR BURDENSOME

### A.    The Subpoenas Authorized by This Court Are Not Impermissibly Broad

Lastly, Objectors argue that the subpoenas should be quashed on the grounds that they are unduly intrusive.   Objectors rely upon *In re MT "Baltic Soul" Produktentankschiuffahrts-gesellschaft MGH,* 2015 WL 5824505 (S.D.N.Y., Oct 6, 2015), and claim that in that case the court denied the subject Section 1782 application on the grounds that the scope of the financial information requested was unreasonable. Objectors Mem. of Law (ECF. Doc. 21), at pp. 10-13. Objectors misstate the court's ruling in *Baltic Soul*.  The court denied the application there because the related foreign proceeding had already concluded, and therefore the discovery was not "actually being sought in aid of a contemplated" foreign proceeding, one of the threshold statutory factors. *Id,* at *2. While the court noted that the "breadth of the requested discovery" weighed against the petitioners, this was not the basis for the denial. There, the petitioner sought far greater financial information than is requested in the instant application, demanding all documents relating to transactions, all assets, all identifying information, ownership information, signature cards,

contracts, loans and financing agreements, none of which were sought here. The court did not rule that such discovery was overly broad under every Section 1782 application, but rather only in that specific case because it was unnecessarily sought in support of a simple "judgment enforcement proceeding", which is not the case here. *Id,* at *3.

Lacking supportive case law, Objectors claim without citing to any authority that the subpoenas are impermissibly "invasive" as the information concerned involves entities that are not parties to the Nigerian Action. Again, this fundamentally misunderstands the scope and purpose of Section 1782.  As an initial matter, a request for discovery pursuant to Section 1782 "does not limit the provision of judicial assistance to 'pending adjudicative proceedings'; proceedings must merely "be within reasonable contemplation" *Intel*, 542 U.S. at 258-59; *In re Grupo Quma, S.A. de C.V.*, No. M. 8-85 2005, WL 937486, at *1 (S.D.N.Y., Apr. 22, 2005) ("holding that the foreign proceeding "need not be pending or imminent" but only "within reasonable contemplation"). Here, as set forth in Tiberius' Application, proceedings against all the entities and persons referenced in the subpoenas are within reasonable contemplation.

During the relevant time period, Objectors Babic and Laushi were directors of WAMT. Meredith October Declaration (ECF Doc. #7-8), ¶¶ 4-11, 36-14; December 19, 2019 Declaration of Michael Meredith, at ¶ 10-14. Babic and Laushi are co-owners and directors of Objector Malcomines GmbH, which in turn is the owner of Objector Malcomines Ltd. *Id.* During the relevant time period, while Babic was in control of the movement of funds from WAMT, millions of dollars were transferred to Objector S&M, an entity owned by Laushi, without any explanation to WAMT or Tiberius. December 19, 2019 Declaration of Michael Meredith, at ¶ 12. Tiberius reasonably believes that Babic used his position as a director of WAMT to wrongfully transfer funds from WAMT to one or more of the Objectors, including himself, Laushi, Malcomines Ltd.,

Malcomines GmbH, Malcomines Minor Metals Ltd. and/or S&M. October 18 Declaration of Michael Meredith (ECF Doc. #7-8) at ¶¶ 40-41, December 13 Declaration of Michael Meredith at ¶¶10-14. Tiberius has established the multiple overlapping relationships between the Objectors in the time period relevant to the Nigerian Action, is actively pressing its case in the Nigerian Action and contemplating further proceedings in Nigeria and elsewhere to vindicate its rights and recover its assets. Meredith October Declaration (ECF Doc. #7-8), ¶¶ 4-11, 36-14); December 19, 2019 Declaration of Michael Meredith, at ¶¶ 8, 13.

There is no requirement that the information contained within the discovery requests relate exclusively to parties already named the foreign action. So broad is the scope of discovery permitted under Section 1782 that petitioner itself need not be a party to the foreign action, does not need to press a claim on its own behalf, and does not even need to stand a chance of obtaining a damages award in the foreign proceeding. *In re Accent Delight International Ltd.,* 869 F.3d 121, 129-30 (2d Cir. 2017). The fact that the entities are not participants in the Nigerian Action creates a "greater need" for the use of Section 1782, not lesser. *Ahmad Hamad Algosaibi Bros*., 785 F. Supp 2d. at 437; *see, also, Intel*, at 264.  Tiberius remains willing to enter into an appropriate confidentiality agreement or protective order with respect to personal information of Babic and Laushi that may be contained in documents produced by the New York Banks.

Next, Respondents argue, again without citing to any authority, that "the record in this action […] shows that Tiberius will waste no time in using private financial information to compete unfairly against Malcomines" and accusing Tiberius of "trade libel" and "unfair competition". While out of necessity Tiberius is forced to refute such allegations, as set forth extensively herein, such unfounded accusations are not germane to consideration of a Section 1782 application. Tiberius specifically disputes that it is a "competitor" of Malcomines, or thais known to Tiberius

by virtue of its having introduced to Malcomines a number of Malcomines' customers.  December 19, 2019 Declaration of Michael Meredith, at ¶17.   To the extent that there is any validity to Malcomines' argument that the straightforward wire transaction data sought by the Subpoenas would reveal legitimate "trade secrets," such concerns can easily be addressed by an appropriate protective order.

Objectors ask that the court direct the information provided in the subpoenas be first produced to their counsel so that they (rather than the Nigerian court) can unilaterally redact information that they do not deem relevant. The cases that Respondents rely on in support of this contention are not Section 1782 cases and are therefore irrelevant. As set forth herein, evidentiary questions, such as relevancy of the evidence, are solely within the purview of the Nigerian Court. *In re Children's Investment Fund Foundation (UK),* 363 F. Supp at 377.  Permitting Objectors unilaterally to redact responsive information has the potential to defeat the very purpose of the Application . The simple fact is that Tiberius' subpoenas were narrowly, and specifically tailored. Indeed, had they not been so, this Court would undoubtedly have ordered, as it did *sua sponte* in *In re Children's Investment Fund Foundation (UK)* that the petitioner more narrowly tailor the scope of the subpoenas and the financial records requests.

**B.      Objectors Have No Basis to Object to Subpoenas Directed to the New York Banks as "Burdensome"**

Little need be said in response to Objectors' arguments that the subpoenas are "burdensome."  The fact that not one of the New York Banks has sought to quash the subpoenas or otherwise intervene in this matter. As the Southern District Court noted in *In re Aso,* "it appears disingenuous for [a respondent] to protest the burden of the requests *addressed to the subpoena targets* when none of them have intervened (though they have all been served with the application.)."  2019 WL 2345543, at *8 (denying a motion to quash on the basis that subpoenas

seeking financial records could not be unduly invasive or burdensome if the actual subjects of the subpoenas – *i.e.* the banks – had not submitted such an opposition).  *See, also, In re O'Keeffe,* at 85 (denying motion to quash in part on the grounds that the discovery request could not be intrusive or burdensome as the subject had "not objected to it").

The subpoenas at issue are narrowly tailored to seek only wire transfer information maintained in the ordinary course by the New York Banks that is readily searchable and obtained based on the parameters in the Subpoenas.  Tiberius has not at this time requested any communications, account documents or similar information, nor any information that would reveal the terms of any contractual relationships between or among the entities listed in the subpoena or with any customers or third parties.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in its submissions in connection with the Application, Tiberius respectfully requests that this Court deny Respondents' motion to quash or otherwise modify the Subpoenas or its November 6, 2019 Order.

Dated: New York, New York                 Respectfully submitted,
       December 13, 2019

                                       TRESSLER LLP

                                       By: _____/s/_____
                                          Courtney E. Scott (CS9744)

                                       Charles B. Bergin (CB0503)
                                       One Penn Plaza, Suite 4701
                                       New York, NY 10119
                                       Telephone:  (646) 833-0900
                                       Facsimile:  (646) 833-0877
                                       *Attorneys for Tiberius Group AG*

17