```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
IN RE:                                                      :
                                                            :
EX PARTE APPLICATION OF TIBERIUS                            :         19-mc-467 (VSB)
GROUP AG,                                                   :
                                                            :         **OPINION & ORDER**
                                   Applicant.               :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/6/2020

Appearances:

Courtney Elizabeth Scott
Tressler, LLP
New York, NY
*Counsel for Applicant*

Michael S. Cryan
Arent Fox LLP
New York, NY
*Counsel for Objectors Malcomines Ltd., Malcomines GmbH, S&M Pan African Mines & Logistics Ltd., Michel Babic, Murtala Laushi, and Malcomines Minor Metals Ltd.*

VERNON S. BRODERICK, United States District Judge:

  On October 21, 2019, Applicant Tiberius Group AG ("Applicant" or "Tiberius") filed an ex parte application for an order pursuant to 28 U.S.C. § 1782 authorizing it to issue subpoenas to Citibank N.A., Deutsche Bank Trust Company Americas, HSBC Bank USA N.A., Bank of New York Mellon, UBS AG, JP Morgan Chase Bank, N.A., and Bank of America (together, the "New York Banks"). The proposed subpoenas seek documents related to Malcomines Ltd., West African Mineral Trading Ltd. ("WAMT"), Malcomines GmbH ("Malcomines GmbH"), S&M Pan African Mines & Logistics Ltd. ("S&M Pan African"), Full Bliss Logistics Ltd. ("Full Bliss"), Michel Babic ("Babic"), Murtala Laushi ("Laushi"), and Malcomines Minor Metals Ltd. ("Minor Metals," and together with Malcomines Ltd., WAMT, Malcomines GmbH, S&M Pan

African, Full Bliss, Babic, and Laushi, the "Target Entities") in connection with Applicant's pending and contemplated legal proceedings in Nigeria against Malcomines Ltd. (Docs. 6–8.) I granted the application on November 7, 2019, (Doc. 12), and on November 18, 2019, certain but not all of the Target Entities—Malcomines Ltd., Malcomines GmbH, S&M Pan African, Babic, Laushi, and Minor Metals (together, the "Objectors")—filed a motion to quash the subpoenas. (Doc. 17.) For the reasons stated below, the Objectors' motion to quash the subpoenas is GRANTED IN PART and DENIED IN PART. Objectors' request for oral argument is DENIED as moot.

## I. Factual Background[1]

### A. *The Parties and Their Business Relationships*

Applicant Tiberius is a Switzerland-based asset management and metal trading company that engages in the purchase and sale of tin concentrates in Nigeria. (Meredith Decl. ¶ 4.)[2] West African Mineral Trading Ltd was created on August 24, 2016, and is a subsidiary of Tiberius. (*Id.* ¶¶ 4–5.) Objector Malcomines Ltd. is a Nigerian company engaged in the business of trading in minerals, including tin concentrates. (Meredith Decl. ¶ 9; Laushi Decl. ¶ 5.)[3] Malcomines GmbH is alleged by Applicant to be the Swiss affiliate of Malcomines Ltd., and owner of all shares of Malcomines Ltd. (Meredith Decl. ¶ 38.)

Tiberius, through WAMT, entered into a business relationship with Malcomines Ltd. in 2018, and had previously been transacting business through a former subsidiary prior to the

---

[1] The facts set forth in this section are drawn from the declarations and exhibits submitted by Applicant and by Objectors. They are provided for background and context and are not findings of fact and should not be construed as such. Facts that are specifically disputed by the parties are so indicated.

[2] "Meredith Decl." refers to the Declaration of Michael Meredith in Support of an *Ex Parte* Application for an Order Under 28 U.S.C. § 1782, filed on October 21, 2019. (Doc. 7-8.)

[3] "Laushi Decl." refers to the Declaration of Murtala Ahmad Laushi in Support of Motion to Quash, filed on November 18, 2019. (Doc. 18.)

creation of WAMT in 2016.  (Meredith Decl. ¶¶ 12, 14; Laushi Decl. ¶¶ 6–7.)  Malcomines Ltd. agreed to source, procure, and pack tin concentrates, sell them to Tiberius, and transport them to Lagos, Nigeria, for export by WAMT on behalf of Tiberius.  (Meredith Decl. ¶ 14; Laushi Decl. ¶ 10.)  Malcomines Ltd. required pre-financing for each shipment of tin concentrates, which WAMT was to provide; WAMT was then to issue corresponding invoices to Tiberius.  (Meredith Decl. ¶¶ 17–18; Laushi Decl. ¶ 10.)  Objectors contend that in addition, after delivery and quality testing of the shipment, a final price of the tin concentrates was established based on the London Metal Exchange and WAMT was to reconcile any price differential.  (Laushi Decl. ¶¶ 10–11.)

Full Bliss Integrated Logistics Limited ("Full Bliss") managed the logistics of shipping the purchased tin concentrates from Malcomines Ltd. to WAMT.  (Meredith Decl. ¶ 27; Laushi Decl. ¶ 9.)  Applicant represents that it is "not currently aware" of the role of Malcomines Minor Metals ("Minor Metals"), but believes it may be interrelated with the other Target Entities.  (*See, e.g.*, Meredith Opp. Decl. ¶ 14.)  Objectors mention Minor Metals only once in their submission, in the context of their general assertion that their banking and financial information, including the information of Minor Metals, is irrelevant in the Nigeria Action.  (Laushi Decl. ¶ 31.)

Michel Babic was a director of WAMT from August 24, 2016 to May 20, 2019. (Meredith Decl. ¶ 7; Laushi Decl. ¶ 2.)  Murtala Laushi was also a director of WAMT and is the current managing director of Malcomines Ltd.  (Meredith Decl. ¶ 8; Laushi Decl. ¶¶ 1–2.)  Babic and Laushi each own 50 percent of the shares of shares Malcomines GmbH, the Swiss affiliate of Malcomines Ltd. (Laushi Decl. ¶ 2.)

The parties disagree about the role of S&M Pan African Mines & Logistics Ltd. Applicant contends that Babic and possibly Laushi own S&M and that S&M was "involved in Malcomines' activities on behalf of Tiberius."  (Meredith Decl. ¶ 11; Meredith Opp. Decl. ¶

10.)[4]  Objectors maintain that Laushi does not control or manage S&M.  (Laushi Decl. ¶ 4.)

### B. *The Dispute*

Applicant contends that during 2019, through WAMT, it advanced over $34 million to Malcomines Ltd. for the purchase of tin concentrates from Nigeria, including prepayment for 113 shipments plus "excess funding."  (Meredith Decl. ¶¶ 12, 19.)  This excess funding, Applicant contends, was to be used for future purchases of tin concentrates or to be returned.  (*Id.* ¶ 23.)  However, Applicant claims, Malcomines Ltd. informed Applicant that it was not in possession of additional containers of tin or the excess funding, and failed to deliver all the shipments or to return the excess funding.  (*Id.* ¶ 12.)  Applicant states that it "has reason to believe" that Malcomines Ltd. sold or is selling the undelivered tin concentrates purchased with Applicant's funds to another customer, and has used or intends to use funds belonging to Applicant to capitalize Malcomines GmbH.  (*Id.*)  Applicant also contends that Babic has blocked Applicant from taking control of WAMT and its bank accounts after his appointment as director if WAMT was terminated.  (*Id.* ¶ 37.)  Objectors dispute these facts, and contend that in fact, Applicant fell behind on its reconciliation payments and, eventually, its provisional pre-payments.  (Laushi Decl. ¶¶ 11–15.)  Now, Objectors assert, WAMT owes Malcomines money.  (*Id.* ¶¶ 16–17.)

### C. *The Nigerian Action*

Applicant has initiated a legal proceeding ("Nigeria Action") against Malcomines Ltd. in the High Court of Lagos State, Nigeria ("Lagos High Court").  (Meredith Decl. ¶ 13.)  Applicant does not state what claims it has brought in the Nigeria Action.  (*See generally id.*)  On

---

[4] "Meredith Opp. Decl." refers to the Declaration of Michael Meredith in Opposition to Motion to Quash, filed on December 13, 2019.  (Doc. 26.)

4

September 10, 2019, Applicant filed a motion with the Lagos Court for an ex parte injunction. (*Id.* ¶ 30.) After a hearing, the Lagos High Court issued the injunction, which among other things (1) restrained Malcomines Ltd., its agents, and certain others from dissipating or moving any assets within the court's jurisdiction; (2) froze and/or attached certain of Malcomines Ltd.'s Nigerian bank accounts; and (3) restrained the banks holding those accounts from releasing or transferring any of the money contained therein. (*Id.* ¶ 31; *id.* Ex. 2.) Applicant sought to extend the injunction and Malcomines Ltd. made an application to discharge it. (*Id.* ¶ 32; Scott Opp. Decl. ¶ 3.)[5] After a hearing held on December 12, 2019, the Lagos High Court denied Malcomines Ltd.'s application to discharge the injunction and granted Applicant's request to extend it. (Scott Opp. Decl. ¶ 3.) Neither party has provided a date on which the injunction issued by the Lagos High Court is scheduled to terminate or provided additional details on the underlying Nigerian Action.

Applicant contends Malcomines Ltd. has been evading the injunction by continuing to operate and transfer its funds through the Target Entities and New York bank accounts. (Meredith Decl. ¶¶ 33–35.) Based on this belief, Applicant seeks to issue subpoenas to seven New York banks, seeking copies of all wire transfer records processed by the banks from August 24, 2016 to the present, in which a Target Entity—namely WAMT, Malcomines, GmbH, S&M, Full Bliss, Babic, Laushi, or Minor Metals—was an originator, beneficiary, or otherwise referenced in the transfer. (*See* Docs. 7-1–7-7.) Applicant represents that it intends to use this information in the Nigerian action and potentially in further contemplated proceedings in Nigeria or in other jurisdictions. (*See* Appl. Mem. 6.)[6]

---

[5] "Scott Opp. Decl." refers to the Declaration of Courtney E. Scott in Opposition to Objectors' Motion to Quash, filed on December 13, 2019. (Doc. 25.)

[6] "Appl. Mem." refers to the Memorandum of Law in Support of Application for an Order Under 28 U.S.C. § 1782,

## II. Procedural History

Applicant commenced this action on October 18, 2019 by filing an ex parte motion for discovery pursuant to 28 U.S.C. § 1782, seeking leave to serve certain proposed subpoenas on eight New York-based banks. This filing was rejected as deficient by the Clerk's Office, as was Applicant's second attempt. (*See* Docs. 2–5.) On October 21, 2019, Applicant properly filed its motion, (Doc. 6), along with supporting declarations and exhibits, (Doc. 8), and a memorandum of law, (Doc. 8), in support. On November 5, 2019, Malcomines Ltd. filed a letter motion requesting fourteen days to file a motion to quash. (Doc. 11.) On November 6, 2019, I issued an order granting Applicant's letter motion for discovery, (Doc. 12), and on November 7, 2019, issued an order clarifying to Malcomines Ltd. that pursuant to Fed. R. Civ. P. 45, it would as a matter of course have fourteen days after service of the relevant subpoenas to file a motion to quash them, (Doc. 15.)

On November 18, 2019, the Objectors filed a motion to quash the subpoenas, (Doc. 16), along with supporting declarations and exhibits, (Docs. 18–20) and a memorandum of law, (Doc. 21). The motion to quash also included a request for oral argument. (*See* Doc. 17).

On November 19, 2019, I issued an order establishing a briefing schedule for the motion to quash. (Doc. 22.) On December 13, 2019, Applicant timely filed a memorandum of law and declarations in opposition to the Objectors' motion. (Docs. 24–27.) On December 27, 2019, Objectors filed a memorandum of law and affidavit in reply. (Docs. 28–29.)

## III. Legal Standard

Section 1782 provides that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing

---

filed on October 21, 2019. (Doc. 8.)

> for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . . A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a). Pursuant to the statute, "a district court is authorized to grant a § 1782 request where: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

Once the statutory requirements are met, "a district court is free to grant discovery in its discretion." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83–84 (2d Cir. 2004) (quoting *In re Metallgesellschaft AG*, 121 F.3d 77, 78 (2d Cir. 1997)). However, a court's discretion is "not boundless," and must be exercised "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* at 84 (quoting *In re Metallgesellschaft*, 121 F.3d at 79). The Supreme Court has identified the following four discretionary factors to aid district courts in determining whether to grant § 1782 applications: "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the

United States'; and (4) whether the request is 'unduly intrusive or burdensome.'" *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004)).

## IV. Discussion

Objectors do not dispute that Applicant has satisfied the three statutory factors and the first two *Intel* factors, but argue that the application should be denied on the basis of the third and fourth *Intel* factors. (*See* Obj. Mem. 1–2.)[7]

### A. *The Third* Intel *Factor: Whether the Request Conceals an Attempt to Circumvent Foreign Proof-Gathering Restrictions*

First, Objectors argue that Applicant's request should be denied on the ground that it is "an end-run around applicable discovery procedures in Nigeria," because (1) Nigerian procedure does not allow for third party discovery absent specific approval by the judge supervising that case, and (2) Applicant has not sought the discovery in Nigeria. (Obj. Mem. 9–10.) Applicant argues in opposition that Objectors' representations about Nigerian law are irrelevant because courts in this Circuit are not permitted to base denials of § 1782(a) applications solely on the discoverability of the materials or information sought, nor on the failure of an applicant to first seek the requested discovery from the foreign tribunal. (Appl. Mem. 9–13.)

Applicant correctly states the law with regard to this factor. District courts assessing a § 1782(a) application may not require an applicant to try and fail to obtain the discovery in the foreign court, nor can they deny the application "solely because such discovery is unavailable in the foreign court," although they may "consider[] . . . foreign discoverability (along with many other factors) when it might otherwise be relevant to the § 1782 application." *Mees*, 793 F.3d at

---

[7] "Obj. Mem." refers to Malcomines Ltd., Malcomines Gmbh, S&M Pan African Mines & Logistics Ltd., Michel Babic, Murtala Laushi & Malcomines Minor Metals Ltd.'s Memorandum of Law in Support of Motion to Quash, filed on November 18, 2019. (Doc. 21.)

303–04 n.20; *see also Intel*, 542 U.S. at 253 (holding that § 1782(a) does not impose" a "foreign-discoverability requirement"); *Brandi-Dohrn*, 673 F.3d at 81–82 ("[A] district court should not consider the discoverability of the evidence in the foreign proceeding, [and] it should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application" but "the nature, attitude and procedures" of the jurisdiction may be "useful tools" to inform the court's discretion).

Instead, "[p]roof-gathering restrictions are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *Mees*, 793 F.3d at 303 n.20 (emphasis in original). Only where the materials being sought are privileged or otherwise prohibited from being discovered or used is the third *Intel* factor implicated. *See In re Accent Delight Int'l Ltd.*, No. 18-1755-CV, 2019 WL 5960348, at *3 (2d Cir. Nov. 13, 2019) (summary order) (affirming district court's grant of §1782(a) application where petitioners admitted they could not obtain the evidence sought in the foreign proceedings, but objector had not made "a showing that the policy or restrictions of any relevant foreign jurisdiction prohibit[ed] the discovery sought").

In determining whether the acquisition of certain materials would be prohibited in the foreign proceeding, the district court should avoid attempts to "glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law" and "consider only *authoritative proof* that a foreign tribunal would reject evidence obtained with the aid of section 1782 . . . as embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095,

9

1099 (2d Cir. 1995) (emphasis in original); *see also Mees*, 793 F.3d at 303 n.20.

Mindful of this guidance, courts routinely grant § 1782 applications where the discovery sought might not be available in the foreign legal system, but is not explicitly prohibited from being acquired by way of a § 1782 application. *See Gorsoan Ltd. v. Bullock*, 652 Fed. App'x. 7, 9 (2d Cir. 2016) (summary order) (affirming district court's grant of § 1782(a) application despite objectors' argument that the discovery sought was "beyond the scope of discovery authorized under Cyprus law"); *In re O'Keeffe*, 650 F. App'x 83, 85 (2d Cir. 2016) (summary order) (affirming district court's grant of §1782(a) application where "[t]he mere fact that the discovery sought here might not be obtainable under Hong Kong law does not, by itself, suggest that [the] application is an attempt to circumvent foreign proof-gathering restrictions." (internal quotation marks omitted)). Courts may, however, deny applications where it determines that the discovery is being sought in bad faith or for the purpose of harassment. *Brandi-Dohrn*, 673 F.3d at 81.

Objectors' declarant, Nigerian barrister and solicitor Patrick Ikwueto, who also represents Malcomines Ltd. in the Nigerian Action, represents that as a matter of procedure in the Lagos High Court, parties must apply to the court for discovery and obtain a judge's signature for any third party subpoena. (Ikwueto Decl. ¶ 5.)[8] Even upon such an application, Ikwueto represents, no Nigerian court would "permit a party to obtain financial or banking information of non-parties in an action in which the amount wired from one party to the other is undisputed and wires of the non-parties [are] irrelevant." (Ikwueto Decl. ¶¶ 5–12.)[9] Applicant's Declarant, Oluseye

---

[8] "Ikwueto Decl." refers to the Declaration of Patrick Ikwueto in Support of Motion to Quash or for a Protective Order, filed on November 18, 2019. (Doc. 19.)

[9] "Opasanya Decl." refers to the Declaration of Oluseye Opasanya in Opposition to Motion to Quash, filed on December 13, 2019. (Doc. 27.)

10

Opasanya, a Nigerian barrister and solicitor who is lead counsel for Applicant in the Nigeria Action, contends that Ikwueto's declaration references procedures that relate specifically to "subpoenas issued to third parties within the jurisdiction" of the Lagos High Court. (Opasanya Decl. ¶¶ 1, 2, 8.) Opasanya asserts that contrary to Ikwueto's statements, the Civil Procedure Rules and the Evidence Act provide for the "taking of evidence of third parties or the examination of third party witnesses by proper process outside Nigeria" and for "the admissibility of documents obtained for the same purposes for which it would have been admissible in the country where the document is produced." (*Id.* ¶¶ 6–7.)

As an initial matter, the conditions on which Ikwueto represents the Nigerian court would decline to authorize subpoenas are highly specific and depend on accepting Objectors' versions of disputed facts (for example, that "the wires of the non-parties [are] irrelevant"). In addition, none of these representations, even if true, suggest that obtaining the documents at issue in this court by § 1782 application is prohibited by the Lagos High Court. Rather, they merely suggest that Nigerian law, like many other jurisdictions and unlike the United States, does not empower parties to investigate their claims through non-party subpoenas without judicial oversight and assistance. *Cf. Mees*, 793 F.3d at 302 ("Few if any foreign jurisdictions permit the scope of discovery available in our courts.") Indeed, Objectors explicitly concede that they "never argued that Nigerian law prohibited the filing of a § 1782 application," (Obj. Reply 2),[10] and do not point to any specific evidence that the subpoenas are being sought in bad faith or for the purposes of harassment. Therefore, the mere fact that Applicant did not seek the discovery in Nigeria and that it would not have been granted if Applicant had done so, if true, would not be

---

[10] "Obj. Reply" refers to Malcomines Ltd., Malcomines Gmbh, S&M Pan African Mines & Logistics Ltd., Michel Babic, Murtala Laushi & Malcomines Minor Metals Ltd.'s Reply Memorandum of Law in Further Support of Motion to Quash, filed on December 27, 2019. (Doc. 28.)

11

sufficient on their own to warrant denial of the application. *Euromepa*, 51 F.3d at 1099; *see also Mees*, 793 F.3d at 303 n.20.

Moreover, even if I accept Attorney Ikwueto's credentials to opine on matters of Nigerian law—and set aside the probability that he is not a neutral expert given that he represents Malcomines Ltd. in the Nigeria Action—his declaration simply paraphrases the purported discovery rules, states in a conclusory fashion that Applicant's proposed subpoenas would not be authorized by the Lagos High Court, and does not include a copy of the relevant rules, statutes, or case law, nor does it quote from any such sources. This is far from a "judicial, executive or legislative declaration[]" that would constitute "authoritative proof that [the Lagos High Court] would reject evidence obtained with the aid of section 1782," *Euromepa*, 51 F.3d at 1100; *see also Mees*, 793 F.3d at 303 n.20. Weighing Attorney Ikwueto's affidavit against Attorney Opasanya's affidavit would require me to adjudicate the precise kind of "battle-by-affidavit of international legal experts" that the Second Circuit has repeatedly warned against. *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 122 n.11 (2d Cir. 2015) (quoting *Euromepa*, 51 F.3d at 1099). I decline to do so.

Tellingly, Objectors do not address any of the precedents set forth above, even though Applicant cites and discusses several of the cases in its opposing brief. (*Compare* Appl. Opp. 6–9, *with* Obj. Reply 2–5.)[11] The cases on which Objectors instead rely are readily distinguishable. *(See* Obj. Reply 2–5 (citing *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 84 (2d Cir. 2004) and *Aventis Pharma v. Wyeth*, No. M-19-70, 2009 WL 3754191, at *1 (S.D.N.Y. Nov. 9, 2009)).)

---

[11] "Appl. Opp." refers to Applicant's Memorandum of Law in Opposition to Motion to Quash, filed on December 13, 2019. (Doc. 24.)

In *Schmitz*, the Second Circuit affirmed the district court's denial of a § 1782 application seeking discovery in connection with a German civil proceeding. 376 F.3d at 84. As Objectors correctly point out, the Second Circuit did acknowledge, as a general matter, that the "nature, attitude and procedures" of the foreign jurisdiction are "useful tools" to inform the district court's discretion. (Obj. Mem. 10 (quoting *id.*).) However, the district court had not denied the application on the basis of "restrictions on access to certain discovery imposed by the tribunal," as Objectors represent. (*See id.*). Rather, the German Ministry of Justice and a German city prosecutor asked the court to deny the application because the documents requested related to a criminal proceeding and were in the official custody of the German prosecutor, who had restricted access to them and previously denied the petitioner's request to access the files in Germany. *Schmitz*, 376 F.3d at 84. The ministry and the prosecutor were concerned that granting the discovery would jeopardize the criminal investigation and German sovereign rights. *Id.* In other words, the application in question in *Schmitz* was a classic attempt to do an end run around proof-gathering restrictions imposed by German government entities. Therefore, the district court held—and the Second Circuit affirmed—that granting the § 1782 request would not promote the "twin aims of the statute" of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* (internal quotation marks omitted). In the case at bar, Objectors point to no such explicit prohibition, relying instead on general procedures governing the conduct of discovery that simply "fail to facilitate" ready disclosure of the materials at issue. *See Mees*, 793 F.3d at 303 n.20. There is therefore no evidence that granting leave to obtain the relevant discovery in New York would undermine the "twin aims of the statute." *Schmitz*, 376 F.3d at 84.

In *Aventis*, Judge Deborah Batts denied a § 1782 application for "circumvent[ing] foreign proof-gathering restrictions" in part because—although the French court had jurisdictional reach over the documents sought—the applicant never requested them there. 2009 WL 3754191, at *1. Whether evidence can be obtained absent § 1782(a) aid is the question that motivates the first *Intel* factor. *See Intel*, 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid"); *cf. Gorsoan*, 652 F. App'x at 8 (paraphrasing the first *Intel* factor as "whether the information sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid"). Here, in contrast, there is no evidence or testimony that information possessed by the New York Banks would be within the jurisdictional reach of the Lagos High Court. *See In re Chevron Corp.*, 709 F. Supp. 2d 283, 293 (S.D.N.Y. 2010), *as corrected* (May 10, 2010), *aff'd sub nom. Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011) (distinguishing *Aventis* on the same grounds and granting a § 1782 application where the foreign court had no jurisdiction or authority to compel production of the relevant documents); *In re Aso*, No. 19 MC 190 (JGK) (JLC), 2019 WL 2345443, at *7 (S.D.N.Y. June 3, 2019) (same).

Accordingly, I find that the third *Intel* factor favors the Applicant.

### B. *Fourth* Intel *Factor: Whether the Request is Unduly Intrusive or Burdensome*

In applying the fourth *Intel* factor to determine "whether the discovery sought is overbroad or unduly burdensome," the district court should "apply[] the familiar standards of Rule 26 of the Federal Rules of Civil Procedure," *Mees,* 793 F.3d at 302, including by weighing the probative value of the materials sought, *In re Okean B.V. & Logistic Solution Int'l,* 60 F. Supp. 3d 419, 432, 2014 WL 5090028, at *9, *13 (S.D.N.Y. 2014) (denying § 1782 application

where production of the materials would be intrusive and burdensome and the "probative value . . . [was] conjectural at best"). However, because the substantive issues presented in the foreign litigation are to be decided by a foreign court applying unfamiliar foreign law, the district court should "be permissive" when assessing relevance. *In re Christen Sveaas*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008); *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 301 (S.D.N.Y. 2003) (stating that a court "whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder'"); *cf. Euromepa*, 51 F.3d at 1099–1100 (stating that it is "unwise—as well as in tension with the aims of section 1782—for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law" because § 1782 does not "condone speculative forays in legal territories unfamiliar to federal judges" and "[s]uch a costly time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the 'twin aims' of the statute"); *In re Furstenberg Fin. SAS*, No. 18-mc-44 (JGK), 2018 WL 3392882, at *5 (S.D.N.Y July 12, 2018) (noting that "[t]his Court should not address" arguments that ask the "Court to consider the merits of the foreign proceeding and determine whether the petitioners are likely to prove their damages in that case"). If a district court finds a § 1782 discovery request to be overbroad, it should first "consider whether that defect could be cured through a limited grant of discovery" before denying the application outright. *Mees,* 793 F.3d at 302.

Objectors argue that the application should be denied in full as "unduly intrusive," on the grounds that Applicant's requests are overbroad; seek information irrelevant to the Nigeria Action; and threaten to expose Malcomines' trade secrets, including its customers' identities and

the amount of business it does with those customers. (Obj. Mem. 10–13.) In the alternative, Objectors ask that all discovery first be produced to their counsel to redact information not related to the Nigeria Action. (*Id.* at 13.) Objectors also contend that any subpoenas issued should be quashed or modified with a protective order as to all nonparties, *i.e.* GmbH, S&M Pan African, Full Bliss, Babic, Laushi, and Malcomines. (*Id.*)

Applicant responds that the information sought is relevant, because (1) Babic and Laushi were directors of WAMT during the relevant time period; (2) Babic and Laushi are co-owners of Objector Malcomines GmbH; (2) while Babic was in control of WAMT, millions of dollars were transferred to S&M Pan African, in which Babic and Laushi have ownership stakes. (Appl. Opp. 14–15.) Applicant represents that it is pressing its case in the Nigerian Action and contemplating further proceedings. (*Id.*) Applicant opposes Objectors' request that their counsel be allowed to redact irrelevant information, but consents to entry of an appropriate protective order. (*Id.* at 16.)

The fact that the targets of the discovery requests are not parties to the Nigeria Action is neither dispositive or relevant, and Objectors cite no case law suggesting that this should be a factor in assessing a § 1782 application. (*See* Obj. Mem. 13.) Indeed, where an intended respondent is a non-participant, there is a "greater need for § 1782 aid . . . 'because a foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence.'" *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 437 (S.D.N.Y. 2011) (quoting *Intel*, 542 U.S. at 264). While here, the participation status of the subjects of the requests is at issue—not the participation status of the respondents—the same logic applies. *Cf. id.*

Turning to the substance of the requests, however, I agree that Applicant has not sufficiently justified the breadth and scope of their discovery requests in the face of Objectors'

16

concerns about intrusiveness and relevance.  Applicant seeks wire transfer information dating back to 2016 for each of the Target Entities, but the bulk of the allegations it describes concern events that date back no further than 2018, such as (1) the allegation that from 2018 to 2019, Babic transferred $2 million from WAMT to S&M Pan African without explanation, (Meredith Opp. Decl. ¶ 12), (2) the allegation that in 2019, Babic closed the WAMT accounts and has refused to provide Applicant with information about those accounts or to allow Applicant to retake control of WAMT, (Meredith Decl. ¶ 37), and (3) the allegation that Malcomines Ltd. and Malcomines GmbH, along with their principals Babic and Laushi, diverted Applicant's funds in 2019, (*id.* ¶¶ 25–28).  The only allegation that dates back to 2016 is the allegation that Babic controlled WAMT while he was director.  (*Id.* ¶ 7).  Applicant has also made no allegations about Minor Metals or its ownership, beyond the name, that would suggest it is interrelated with the other Target Entities.  It is also not clear, from Applicant's submissions, what allegations are at issue in the Nigerian Action, or what kinds of additional proceedings they contemplate initiating.  Therefore, while the probative value of certain wire transfers is clear—for example, transfers to and from S&M Pan African in 2018—the same cannot be said for all the wire transfers Applicant seeks to discover.

Although I do not intend to make too deep a "speculative foray[] into legal territor[y]" unfamiliar to me, *Euromepa*, 51 F.3d at 1100, I am not satisfied that the record before me establishes the required nexus between the discovery sought and the underlying dispute in Nigeria or any contemplated proceedings, particularly in light of Objectors' concerns that discovery will unnecessarily expose the details of all of their commercial transactions over a three-year time period.  *See In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, No. 15 MISC. 319(LTS), 2015 WL 5824505, at *3 (S.D.N.Y. Oct. 6, 2015) (denying

17

a § 1782 application where petitioner sought to use the information sought in judgment enforcement proceedings, which were not within the proper scope of § 1782 assistance and could not be considered; the only permissible purpose was "adjudication of the . . . affiliates' alter ego status," and petitioner's request for disclosure of every financial transaction seven companies had engaged in with 11 different banks, along with considerable additional financial information, "sw[e]p[t] far too broadly to be proper for that limited purpose"). Therefore, the fourth *Intel* factor does not decidedly tip in either party's favor.

Rather than quashing the subpoenas in full, however, I will instead follow the Second Circuit's advice to issue "a limited grant of discovery," *Mees,* 793 F.3d at 302, by modifying the subpoenas as follows: (1) Applicant is granted leave to issue subpoenas seeking information about wire transfers completed from 2016 through the present involving non-objectors WAMT and Full Bliss; (2) Applicant is granted leave to issue subpoenas seeking information about wire transfers completed from 2018 through the present involving Objector S&M Pan African; and (3) Applicant is granted leave to issue subpoenas seeking information about wire transfers completed from 2019 through the present involving Objectors Malcomines Ltd., Malcomines GmbH, Babic, and Laushi. Applicant and Objectors shall meet and confer concerning the remaining information sought by Applicants. To the extent that Objectors are concerned about the disclosure of trade secrets or other sensitive information about their customers or business, these issues can be resolved by an appropriate protective order; for example, one that provides for an "Attorney's Eyes Only" designation with regard to highly sensitive documents and information. *See In re The City of New York*, 607 F.3d 923, 935 (2d Cir. 2010) (observing that "[t]he disclosure of confidential information on an attorney's eyes only basis is a routine feature of civil litigation involving trade secrets" and describing ways in which such designations

provide sufficient protection in commercial suits). If the parties cannot come to an agreement on these issues, they may seek additional guidance from me by submitting a joint letter in accordance with Rule 3 of my Individual Rules and Practices in Civil Cases. Any renewed request by Applicant to seek additional wire transfer information from Objectors should include additional factual support and context about the Nigeria Action sufficient to remedy the deficiencies detailed above.

## V. Conclusion

Objectors' motion to quash the subpoenas in full is DENIED. Objectors' request for modification of the subpoenas and a protective order is GRANTED and therefore the subpoenas in their current form are QUASHED. Objectors' request for oral argument is DENIED as moot.

The parties are directed to meet and confer about narrowing Applicant's proposed subpoenas and entering an agreed protective order, and shall submit an update to the Court within 30 days of this Opinion & Order. If they cannot come to an agreement, they shall submit a joint letter setting forth their respective positions with specificity and supplying any supporting facts or authority, in accordance with Rule 3 of my Individual Rules and Practices in Civil Cases.

The Clerk of Court is respectfully directed to terminate the motion at Document 17.

SO ORDERED.

Dated: March 6, 2020
      New York, New York

Vernon S. Broderick
United States District Judge