

Attorneys at Law
One Penn Plaza
Suite 4701
New York, New York 10119

**Courtney E. Scott**
Partner
Direct:  646-833-0890
Fax:  646-833-0877
cscott@tresslerllp.com

# Arent Fox

**Arent Fox LLP** / Attorneys at Law
Boston / Los Angeles / New York / San Francisco / Washington, DC

1301 Avenue of the Americas,
42nd Floor / New York, NY
10019-6040 / arentfox.com

**Michael S. Cryan**
Partner
212.484.3929 DIRECT
212.484.3990 FAX
michael.cryan@arentfox.com

March 30, 2020

VIA ECF

Hon. Vernon S. Broderick
United States District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Objectors' request for approval of their proposed protective order is GRANTED.  Applicants' request for approval of their proposed protective order is DENIED.

SO ORDERED:

[signature] 4/2/2020
HON. VERNON S. BRODERICK
UNITED STATES DISTRICT JUDGE

Re:   In Re Ex Parte Application of Tiberius Group AG, Misc. Action No. 1:19-mc-00467-VSB

Dear Judge Broderick:

The parties respectfully submit this joint letter pursuant to Your Honor's Opinion and Order dated March 6, 2020 (ECF No. 32, the "Order").

Objectors' Position

Court intervention is required for two intertwined reasons. First, despite the extensive, good faith efforts by counsel for Malcomines Ltd. "("Malcomines"), Malcomines GmbH, S&M Pan African Mines & Logistics Ltd., Michel Babic, Murtala Laushi, and Malcomines Minor Metals Ltd. (collectively, the "Objectors") to meet and confer with counsel for Tiberius Group AG ("Applicant"), the parties have not been able to agree on the terms of a protective order. Indeed, Applicant's counsel has failed and refused to agree to the terms of a protective order that includes an Attorney's Eyes Only ("AEO") provision – despite this Court's direction, set forth in the Order at p. 18.

My extensive, good faith efforts to meet and confer with Applicant's counsel included numerous telephone calls, emails and the exchange of a draft protective order. I met and conferred with counsel (always including Courtney Scott, Esq., some of the conversations also included Charles Ben Bergin, Esq.) on March 9, 10, 13 and 23, 2020. I sent eight (8) emails dated from March 10–

Hon. Vernon S. Broderick
March 30, 2020
Page 2

26, 2020 to Applicant's counsel. (Attached hereto as Exhibit A is a true and correct copy of an email chain between me and Applicant's counsel dated from March 10–26, 2020) On March 13, 2020, I sent Applicant's counsel a draft protective order. (Attached hereto as Exhibit B is a true and of a draft protective order I sent to Applicant's counsel on March 13, 2020) The draft protective order includes a standard AEO provision at ¶ 8. Despite my efforts to meet and confer and the more than two weeks that have passed since I sent Applicant's counsel the draft protective order, Applicant's counsel has failed and refused to agree to the draft or even to propose revised language.

The second issue is greatly exacerbated by the first issue. On or about March 10, 2020, Applicant's counsel served subpoenas. As soon as I became aware of this, I wrote Applicant's counsel on March 10, 2020, stating in pertinent part: The "subpoenas and draft protective order you sent do not meet the Judge's requirements and are unacceptable". (Ex. A)

Applicant has failed to meet this Court's requirements. In the Order, this Court stated: "I am not satisfied that the record before me establishes the required nexus between the discovery sought and the underlying dispute in Nigeria or any contemplated proceedings, particularly in light of Objectors' concerns that discovery will unnecessarily expose the details of all of their commercial transactions over a three-year time period." (Order at 17) The Court helpfully suggested: "To the extent that Objectors are concerned about the disclosure of trade secrets or other sensitive information about their customers or business, these issues can be resolved by an appropriate protective order; for example, one that provides for an "Attorney's Eyes Only" designation with regard to highly sensitive documents and information." (Order at 18) The Court directed the parties to meet and confer about narrowing the scope of Tiberius' subpoenas and entering into a protective order. (Order at 19) Clearly, the Court contemplated that the parties would meet and confer about narrowing the scope of Tiberius' subpoenas and entering into a protective order.

Instead of following the Court's directions, Applicant served subpoenas and has failed and refused to agree to a protective order that includes an AEO provision. Because the subpoenas have been served and more than two weeks have passed since I sent the draft protective order to Applicant's counsel, I am causing this letter application to be filed with the Court. By this letter, Objectors respectfully request that the Court enter the attached draft protective order (Ex. B) as an order of the Court forthwith. Accordingly, Objectors respectfully request that the Court enter the attached draft protective order (Ex. B) as an order of the Court forthwith.

Applicant's Position

Applicants are constrained to correct and expand upon the chronology set forth by Objectors.  On March 9, 2020, immediately following the Court's March 6 Order, we contacted Mr. Cryan to discuss the matter and to meet and confer regarding next steps.  Counsel engaged in substantive discussions regarding their conflicting interpretations of the Order.  The Order states that: "Applicant *is granted leave to issue subpoenas* seeking information about wire transfers completed from 2016 through the present involving non-objectors WAMT and Full Bliss;[…] from 2018 through the present involving Objector S&M Pan African; and […] from 2019

Hon. Vernon S. Broderick
March 30, 2020
Page 3

through the present involving Objectors Malcomines Ltd., Malcomines GmbH, Babic and Laushi. *Applicant and Objectors shall meet and confer concerning the remaining information sought by Applicant.*"[1]

On March 10, 2020 we notified counsel by telephone that Tiberius intended to issue the subpoenas as narrowed and authorized by the Court, and would provide a draft Protective Order for discussion, with the goal of reaching an agreement on the Protective Order prior to the date specified for response and avoiding further delay in the Bank's processing of the subpoenas. We served a Notice of Subpoena of our intent to serve the subpoenas, which we did in accordance with the Order that same day.

On March 12, we emailed counsel a proposed draft Protective Order ("PO") based upon one issued by this Court in another Section 1782 matter involving wire transfer records.[2] Attached as Exhibit C is a true and correct copy of Applicants' proposed Protective Order with Objectors proposed changes in redline. Please advise if the Court would like a Word version of the document. In the covering email, we reiterated Tiberius' position that the information likely to be provided by the Banks - raw data regarding US dollar transfers in a spreadsheet – would not comprise trade secrets or otherwise merit AEO protection. We cited the Second Circuit's position – *i.e.,* that AEO designation should be invoked as sparingly as possible, only for the most sensitive information, and noted that it was Objectors' burden to show its need. We suggested that the parties confer regarding the PO with the goal of reaching agreement before the response date on the Subpoenas. In keeping with the Court's Practices, we have not included this email transmission, or any others, as exhibits.

On March 13, counsel for Objectors provided a redlined version of the PO, which added a broad AEO provision, as well as a provision presumptively designating discovery as AEO any information reflecting wire transfers involving any counterparty other than the Objectors. (Ex. C). Objectors did not respond to our points regarding their burden for such a designation, but rather stated the Objectors' position that the banks should redact the names of ***all parties*** except those named in the subpoenas (*e.g.,* that the banks should even redact the recipients of transfers made by Tiberius' affiliate WAMT to third parties).

On March 13, we agreed with Objectors' counsel and transmitted to the Banks a request that they not respond to the subpoenas until advised that the PO had been resolved. We again requested "that you specify the basis for your assertion that the wire transfer information could include 'trade secrets' when Tiberius is not a competitor, or otherwise merit heightened AEO

---

[1] Order at 18, emphasis added. Objectors' counsel takes the position that the Order requires the parties to meet and confer regarding narrowing the subpoenas explicitly granted by the Order, when in fact the Order states that those instructions apply only to the "remaining information" sought by Tiberius in its Application and thus far denied by the Court, *i.e.,* subpoenas relating to Malcomines Minor Metals and a longer time period for wire transfer involving the other Objectors.

[2] *In re Application of the Children's Investment Fund Foundation (UK).,* Case No.1:18-mc-00104-VSB (Doc. No. 61). The order there provided for "Confidential," but not AEO designation, in keeping with the prevailing wisdom regarding Section 1782 discovery that "an attorneys eyes only provision places an impractical burden either on this Court to continually review document designations or an impermissible burden on each foreign court." *In re Michael Wilson and Partners Ltd.,* 2007 WL 3268475 *3 (D. Col. Oct 30, 2007).

Hon. Vernon S. Broderick
March 30, 2020
Page 4

protection, and not simply Confidential treatment" and objected to presumptive AEO treatment that "improperly shifts the burden to Tiberius." Despite the recent disruption, we have made continuous, good faith efforts to come to an agreement on the terms of the PO, including numerous communications by phone and email. Counsel has declined to address the Objectors' burden of setting forth a good faith basis for AEO protections, for the very simple reason that no such cause exists.

To the extent articulated, the only basis counsel has advanced for AEO protection is a vague and conclusory suggestion that he is protecting the Objectors' customer lists. Such an argument fails both legally and factually. A party seeking to designate discovery as AEO must establish good cause with specific, demonstrable facts.  "Conclusory statements [and] broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.,* 171 F.R.D. 135, 143 (S.D.N.Y.); Fed.R.C.P. 26(c)(G).  Courts in this Circuit have routinely held that AEO provisions must be used "as sparingly as possible", "reserved for truly secret documents" and only when involving "trade secrets". *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.,* 2010 U.S. Dist. LEXIS 89546, at *5 (S.D.N.Y. Dec 5, 2010); *Renaissance Nutrition, Inc. v. Jarrett,* 747 F. Supp.2d 374, 380 (W.D.N.Y. 2010); *HSQD, LLC v. Morinville*, 2013 WL 1149944 (D. Conn. March 19, 2013) (declining AEO provision where party failed to demonstrate disclosure beyond counsel would work a "clearly defined and very serious injury," especially in light of other provisions of proposed protective order);[3] *Cf., Callsome Solutions v. Google, Inc.,* 2018 N.Y.Slip Op. 32716(U), at *6 (Sup. Ct. NY Cty.).[4]

To the extent that the wire transfer records would reveal "customer lists" of any of the entity Objectors, which Tiberius does not concede, Objectors fail to meet the burden of showing that the alleged customer lists should be designated "Confidential." A customer list is "not on its face a trade secret", and even a trade secret is not deemed "confidential" unless it is truly secret, which is not the case here.[5] *Friedman v. Wahsrager,* 848 F. Supp.2d 278, 302 (E.D.N.Y. 2012); *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 475-76 (1974); *Xavian Ins. Co. v. Marsh & McLennan Co. Inc.,* 2019 WL 1620754 (S.D.N.Y. April 16, 2020). Nonetheless, in good faith Tiberius drafted the PO to include the possibility of designating materials as "Confidential."

Tiberius has in good faith drafted a PO with standard confidentiality provisions. Objectors' counsel has insisted upon, but failed to justify, the need for heightened AEO protection, which

---

[3] New York is not alone. *See, e.g. Westbook v. Charlie Sciara & Son Produce Co. Inc.,* 2008 WL 839745 *3 (W.D. Tenn. March 27, 2008) (AEO "not warranted [as] the information sought does not contain trade secrets or other proprietary information, nor are the parties competitors.")

[4] Indeed, on the recommendation of the Council on Judicial Administration, the State Courts of Superior Jurisdiction Committee, and the Litigation Committee, in 2019 the New York Bar Association **removed** AEO designation from its standard form confidentiality order on the basis that AEO designation is "too easily abused and too likely to interfere with attorneys' ability to prepare their case for trial."

[5] Babic and Laushi are individuals and therefore have no "customer lists." The customer lists for the entities owned by Babic and Laushi are not confidential, are widely known within the industry, and – ironically and at issue in the Nigerian Action - were obtained by Babic *from Tiberius.* Further, Tiberius has offered to provide a signed statement that it is not a competitor, is not currently trading in any minerals in Nigeria and has no intention of doing so. Counsel flatly rejected this offer, stating only that this offer "did not change his position".

Hon. Vernon S. Broderick
March 30, 2020
Page 5

would improperly shift the burden to Tiberius to challenge such designation, and inevitably further burden the Court with future motion practice. Objectors' communications have demonstrated the breadth with which they intend to invoke an AEO designation, undercutting the very purpose of this discovery. The gravamen of the Nigeria Action is that Babic, acting with Laushi, improperly transferred Tiberius' funds from WAMT to themselves or the various entities they own – including, for example, Malcomines Minor Metals.[6]  The data sought from the banks will enable Tiberius and WAMT to establish the claims asserted in the Nigerian Action, to monitor compliance with the Mareva Injunction issued there, and to trace the funds they assert were diverted by Babic, Laushi, Malcomines and others acting in concert.  Tiberius is not currently aware of the identity of all such parties.  Inclusion of an AEO provision will permit Objectors improperly to shield relevant wire transfers and hobble Tiberius' evaluation and prosecution of its claims by excessively interfering with its ability to confer with counsel. Objectors' proposal threatens to render the Application pointless, to virtually guarantee the need for further Court intervention and delay, and to impose undue burden on the Nigerian court. Tiberius respectfully requests that the Court decline to authorize AEO designation given the facts of this matter and to approve the PO proposed by Tiberius.

Joint Conclusion

The parties respectfully submit this joint letter.  Counsel will make themselves available for a call with the Court, should Your Honor request one.

Respectfully,

Michael S. Cryan
Arent Fox LLP
Counsel for Objectors

Courtney E. Scott
Tressler LLP
Counsel for Applicant

---

[6] Since the completion of briefing on the motion to quash, Tiberius has confirmed that Malcomines Minor Metals was incorporated on May 21, 2019 and is owned equally by Babic and Laushi.