

**Attorneys at Law**
One Penn Plaza
Suite 4701
New York, New York 10119

**Courtney E. Scott**
Partner
Direct:  646-833-0890
Fax: 646-833-0877
cscott@tresslerllp.com

# Arent Fox

**Arent Fox LLP** / Attorneys at Law
Boston / Los Angeles / New York / San Francisco / Washington, DC

1301 Avenue of the Americas,
42nd Floor / New York, NY
10019-6040 / arentfox.com

**Michael S. Cryan**
Partner
212.484.3929 DIRECT
212.484.3990 FAX
michael.cryan@arentfox.com

May 11, 2020

VIA ECF
Hon. Vernon S. Broderick
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:     *In Re Ex Parte Application of Tiberius Group AG*, 1:19-mc-00467-VSB

Dear Judge Broderick:

The parties respectfully submit this joint letter pursuant to Your Honor's Opinion and Order dated March 6, 2020 (ECF No. 32, the "Order") to resolve disputed issues regarding Objectors' Confidentiality designations. The parties jointly request leave to submit this letter of nine pages.

**Applicants' Position**

Tiberius is constrained to seek judicial intervention to address Objectors' failure to comply with the terms of the Protective Order in connection with their designation of every line item of Objectors' data received from the New York Banks, save one, as Attorneys' Eyes Only ("AEO") without legitimate basis and their failure to even specify the basis for their designation as specifically required in the Protective Order.  Tiberius has attempted to obtain Objectors' compliance through multiple email communications and a meet and confer by conference call on April 29, 2020.  We absolutely reject counsel's suggestion that we have failed to meet and confer in good faith regarding the issues set forth below.

We requested that Objectors provide the explanation for its designations mandated by Paragraph 3 of the Protective Order in transmittal emails providing the responses and by email dated April 21, 2020.  Attached as Exhibit A is a copy of the exchange between counsel on this issue. During the scheduled meet and confer, Counsel for Objectors offered nothing beyond the repeated assertion that they had complied with the Protective Order.  By contract, Objectors designations and "explanations" contained nothing of the kind.  Attached hereto as Exhibit B are the emails Objectors now characterize as "Redaction and Email Explanation" that accompanied their designations.  The emails contain no explanation for Objectors' designations, as they now claim.  During our most recent meet and confer, Objectors counsel again repeatedly stated that they had complied with the Protective Order and declined to engage by providing detail or

explaining why they were not required to do so.  At this point, we concluded that discussions between the parties on this point were at an impasse, and we so advised Objectors counsel.  In lieu of disagreeing or requesting further discussion, Objectors accuse us of bad faith.

Objectors have abused the AEO provision of the Protective Order in a manner that defeats the purpose of this Application by attempting to shield from Tiberius, and foreign Courts, the entirety of the Banks' responses. Tiberius has not attached the documents in light of Objectors' designation but would welcome the opportunity to submit documents for *in camera* review.

## Objectors' Refusal to Comply With The Terms Of The Protective Order

Tiberius provided Objectors with responses received from the New York Banks promptly upon receipt and requested Confidentiality designations pursuant to the Protective Order, which provides that the Designating Party must_ "specify the Designating Party and provide sufficient information to the receiving party regarding the basis for the designation to enable the non-designating Party to evaluate the basis for such designation and enable counsel for the Parties to meet and confer regarding, and if necessary, to challenge such designation." (Protective Order, Paragraph 3). [1]

Objectors flatly refuse to do either. Upon receipt of Objectors' wholesale designations, this office requested via emails dated April 13, 2020 and April 24, 2020 that Objectors specify: (a) which of the Objectors is the Designating Party; and (b) the basis for each designation. (See Exhibit A). We requested a meet-and-confer and conducted a 41-minute teleconference on April 29 at which we repeated the request. Counsel declined to provide any basis for any designation, stating only that the designations were made "under the Protective Order."  Counsel asked this office to assume the burden of explaining to him which designations were not appropriate and why, a request made impossible by Objectors' refusal to provide the mandatory information that would make such an analysis possible. Nonetheless, we provided examples of transactions that do not appear to reflect customer information, including transfers to yet another entity owned by Misel Babic.

Counsel stated that each of the AEO designations were made "by all Objectors," (*i.e.* taking the position that *every* single Objector has the standing to protect every single piece of information connected to *any* Objector in any way). Counsel responded further by email after close of business on May 1, stating that the basis for every AEO designation was that "it disclosed the date, amount or counterparty of a wire to or from any entity that is not a Target Entity." Such a sweeping generalized basis falls well short of the requirements of the PO, as well as the Southern District's determination that "conclusory statements [and] broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" are insufficient to warrant AEO designation. *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.,* 171 F.R.D. 135, 143 (S.D.N.Y.)

In providing their portion of this joint letter, Objectors have articulated clearly for the first time the basis for their position that they are entitled to designate every wire transfer involving third parties as AEO without providing the information specified in Paragraph 3 of the Protective Order.  As we now understand Objectors' position, Paragraph 12 of the Protective Order relieves them of their obligation under Paragraph 3.  In other words, if a wire transaction involves any party other than Objectors, it is entitled to AEO protection without the need to specify the basis

---

[1] The responses received from the Banks comprise Excel spreadsheets listing wire transfers involving the Objectors, with details such as counterparty, date, amount, reference information, and involved banks.

pursuant to Paragraph 3.  Objectors also believe that they have no obligation to meet and confer regarding the AEO designations beyond pointing to Paragraph 12.  This is at odds with the language of the Protective Order and counsel's prior discussions.  During prior discussions, counsel discussed the removal of the presumptive designation provisions.  Based upon numerous lengthy discussions with Objectors' counsel prior to entry of the Protective Order, our clear understanding that the presumptive designations would operate to protect the information from disclosure during the interim period between receipt and the date for designation as specifically provided in Paragraphs 3 and 4. It was incumbent upon Objectors' counsel to specify, *e.g.*, that Malcomines Ltd. was designating certain transactions with customers as AEO because it believed that the same constituted a trade secret, or that Babic was designating certain other transfers to or from himself in his individual capacity on some other basis (as such transfers could not constitute "trade secrets.")  We have discussed these issues with Objectors' counsel, who responded, mantra-like, that they have complied with the Protective Order, while steadfastly refusing to elaborate or explain Objectors' position.

### Objectors' Blanket Designation of All Material As AEO

The Protective Order was entered, in part, based upon Objectors' representation that it was seeking to protect "trade secrets," specifically "the identity of [Malcomines] customers and the amount and nature of Malcomines' business."[2]  The Court recommended the parties enter into a protective order: "[t]o the extent that Objectors are concerned about the disclosure of *trade secrets or other sensitive information about their customers or business*, these issues can be resolved by an appropriate protective order; for example, one that provides AEO designation *with regard to highly sensitive documents and information."* (ECF. Doc. No. 32, (the "Order") at 18). The Protective Order itself limits AEO designations to information that is "*so personally, economically or competitively sensitive that disclosure would materially affect or threaten injury to personal, business, commercial or financial interests [including but not limited to] trade secrets or other highly sensitive personal, financial, commercial or customer information."* (at. 8). The concerns set forth by Tiberius in its correspondence to the Court [ECF. Doc. No.35] have sadly proven well-founded.

Objectors have designated as AEO ***every single line item*** (bar one "Confidential" line item) provided by the Banks in connection with the Objectors.[3]  This is precisely the behavior that the New York Bar deemed an "abuse" of the discovery process: *i.e.* using the designation not to protect sensitive business information, but as a litigation tactic to prevent Tiberius – and thus the foreign court - from being able to actually review and analyze information that would be detrimental to Objectors in the Nigerian Action and contemplated foreign proceedings.[4]

---

[2] A need for AEO protection, rather than Confidential, is preposterous on its face. As detailed in Tiberius' Application ECF Doc. Nos. 7, 8, Tiberius is intimately acquainted with the nature of Malcomines' business, and familiar with Malcomines' customers because they were originally Tiberius' customers and because the market for Nigerian minerals in small and generally known to participants.

[3] These designations are so absolute as to include items such as the transfer date, amount, the name of any processing bank and the bank's internal processing number – *i.e.* information that facially could not possibly under any circumstances be deemed Objectors' trade secrets.

[4] *In re Application of the Children's Investment Fund Foundation (UK).,* Case No.1:18-mc-00104-VSB (Doc. No. 61). The order there provided for "Confidential," but not AEO designation, in keeping with the prevailing wisdom regarding Section 1782 discovery that "an attorneys eyes only provision places an impractical burden either on this Court to continually review document designations or an impermissible burden on each foreign court." *In re Michael Wilson and Partners Ltd.,* 2007 WL 3268475 *3 (D. Col. Oct 30, 2007). *See, also, e.g, 255 Butler Assocs., LLC v. 255*

Hon. Vernon S. Broderick                                                                    Page 4
May 11, 2020

Moreover, the designation as AEO of all transactions with Malcomines customers in the Banks'
responses is palpably improper.  Not only are Malcomines' customers known within the
industry, but they include several Tiberius customers with whom Malcomines has continued to
do business, including, Tiberius believes, through selling shipments rightfully belonging to
Tiberius and/or materials purchased with funds diverted from WAMT.  Malcomines'
submissions in the Nigerian Action include sworn affidavits discussing and disclosing its
dealings with a number of customers, including Haipu Resources Ltd., Arrow Metals and
Trading AG, Gerald Metals and Kalon Resources Limited, identifying each as a Malcomines
Ltd. customer, client or supplier, and in some cases setting forth contract details. Further, United
Bank of Africa, which is subject to the Mareva Injunction, has submitted bank statements for a
Malcomines Ltd. account showing transactions with these customers, many of which were routed
through the New York Banks and appear in the materials provided in response to the subpoenas.
Objectors, collectively, have designated every single transaction as AEO, despite the submission
of Malcomines' bank statements in the Nigerian Action and its identification of its customers in
sworn declarations.

It is, at best, audacious for Objectors to say to this Court that certain wire transfers are so
sensitive that Tiberius should not be able to see them even under strict Confidentiality, while
simultaneously making some of those same transfers publicly available in the Nigerian Action
for the purpose of using them in their defense. Whether Objectors believe every single piece of
information to truly be worthy of AEO designation remains unclear, as they have refused to
comply with this Court's Order directing them to provide the bases for these designations.  In
order to be designated AEO the identify of a customer must be "truly secret."[5] Here, the
customer transactions designated as AEO by Objectors are unquestionably not secret but are
being openly used by Malcomines in the Nigerian Action. This is to say nothing of other
counterparties that have not been identified as customers and for which Objectors' claims of a
need for heightened confidentiality have not been specified.  Objectors' blanket designations of
all data as AEO without explanation is patently an improperly litigation tactic. In light of the
foregoing, Tiberius respectfully requests that the Court order all AEO designations stricken and
that such information be deemed "Confidential" only.

Tiberius is not, as Objectors claim, attempting to undermine the Court's ruling on the Protective
Order.  Rather, Tiberius has challenged the Objectors' compliance with its provisions in the
context of the information received and the excessive and abusive application of the AEO
designation provisions.  We read the Court's Order as permitting a mechanism for AEO
designation, not approving Objectors' actual wholesale designations.

Permitting the Objectors' global AEO designations to stand would utterly defeat the purpose of
Section 1782 by materially hampering Tiberius' efforts to prosecute the Nigerian Action and
contemplated actions in other jurisdictions, interfering with Tiberius' ability to communicate
with its foreign counsel, and imposing an impermissible burden on each foreign court.

---

*Butler LLC,* 2019 WL 688139 (2019) and *Callsome Solutions, Inc., v. Google., Inc.,* (2018 NY Slip Op. 32716(U)),
sanctioning defendants using blanket AEO designations as a litigation tactic, including by removing defendants'
ability to use the AEO designation at all.
[5] *Friedman v. Wahsrager,* 848 F. Supp.2d 278, 302 (E.D.N.Y. 2012); *Xavian Ins. Co. v. Marsh & McLennan Co.
Inc.,* 2019 WL 1620754 (S.D.N.Y. April 16, 2020).

Hon. Vernon S. Broderick                                                                  Page 5
May 11, 2020

## Objectors' Position

Each and every designation by Objectors strictly complies with the Protective Order, dated April 2, 2020 (ECF No. 36, the "Protective Order"), and Tiberius does not even argue otherwise. The plain language of the Protective Order therefore bars this request. Tiberius's request is an attempt rather to relitigate the terms of the Protective Order. Its arguments, although re-worded, are the same arguments it made and lost previously with the issuance of Your Honor's Protective Order. The Court should not now fashion different relief where Tiberius has failed to carry the heavy burden of showing a compelling need for modifying the Protective Order. Objectors' designations were proper and this motion lacks merit.

## Objectors Have Strictly Complied With the Terms of the Protective Order

Objectors' designations and redactions strictly adhere to the plain language of the Court's Protective Order, and this Court should not give credence to Tiberius's attempt to undermine the words of the Protective Order. *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 247 (2d Cir. 2018), *cert. denied sub nom. Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP*, 139 S. Ct. 852, 202 L. Ed. 2d 582 (2019) (court should not make a ruling that would undermine confidence in the force of the words of protective orders). Objectors have already fought and shown good cause for the terms in the Protective Order. *Sampedro v. Silver Point Capital, L.P.*, No. 19-272, 2020 WL 2092598, at *3 (2d Cir. May 1, 2020); *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir.1992) (citing *Galella v. Onassis*, 487 F.2d 986, 997 (2d Cir. 1973) ("[t]he grant and nature of protection is singularly within the discretion of the district court"). Objectors provided the basis for the designations based on the words of the Protective Order, and Tiberius's request is an empty attempt to contradict the terms and purpose of the Protective Order.

The Protective Order provided that "banking information disclosing the date, amount and counterparty of a wire among the Target Entities is presumptively entitled to designation as Confidential Material." Protective Order ¶ 11. It also provided that "banking information disclosing the date, amount and counterparty of a wire to or from any entity that is not a Target Entity is presumptively entitled to designation as Confidential – Attorney's Eyes Only." *Id.* ¶ 12; *See Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 1:08CV269 (LEK/RFT), 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2008) ("the beauty of § 1782 is that it permits this Court to impose a protective order that would extinguish any concern that privileged, confidential, or proprietary information would be indecorously revealed"). The production from the New York Banks provided six different categories of information, according to the plain language of the Protective Order and the Order dated March 6, 2020 (ECF No. 32, the "Order"): 1. wire transaction information from 2016 and outside the scope of the Order, which Objectors designated as information that was sent in error and should be destroyed; 2. wire transaction information involving West African Mineral Trading ("WAMT"), which is presumptively entitled to no designation according to the terms of the Order and was not redacted; 3. wire transaction information involving Full Bliss Logistics, which is presumptively entitled to no designation according to the terms of the Order and was not redacted; 4. wire transaction information involving a Target Entity and a third-party within the relevant period of the Order, which is presumptively entitled to the designation of Confidential – Attorney's Eyes Only and duly designated as such; 5. wire transaction information between and among Target Entities within the relevant period of the Order, which is presumptively entitled to designation as Confidential Material and duly designated as such; and 6. wire transaction information related to Malcomines

Minor Metals, which was presumptively outside the scope of the Order according to the terms of the order, and designated as sent in error and should be destroyed.

Tiberius in this letter, in correspondence on May 1, and at the meet and confer on April 29, continues to seek some alternative form of explanation not envisioned by the plain terms stating, perplexingly, that Objectors have "declined to provide any basis for any designation." Quite to the contrary, each of its designations provided a description of and explanation for the redactions in line with the plain language of the Protective Order. Citibank Redaction and Email Explanation, April 10, 2020; UBS Redaction and Email Explanation April 13, 2020; Deutsche Bank Redaction and Explanation April 16, 2020; BNY Mellon Redaction and Explanation April 17, 2020, Further Clarification Email, April 24, 2020. After asking Tiberius to bring any objections as to the AEO designations in line with the plain terms of the Protective Order, during the meet and confer on April 29, 2020, Objectors followed up with email correspondence on May 1, 2020, quoting to Tiberius the direct language of the Protective Order and referencing paragraphs 3, 11, and 12 of the Protective Order. Then as now, in this Joint Letter, Tiberius is unable to address its objections as to AEO designations to paragraphs 11 and 12 of the Protective Order. It is clear therefore that what Tiberius seeks is not the "basis for the designation" but to frustrate and oppose the plain terms of the Protective Order. Protective Order ¶ 3.

Contrary to Tiberius's argument, Objectors never used a blanket designation system. Tiberius flatly misrepresents that Objectors wholesale designated "every line item of data received from the New York Banks." The following wire transaction entries were not redacted at all: Citibank: miscellaneous spreadsheet 1: rows 53-79; miscellaneous spreadsheet 2: 35-62. Deutsche Bank: miscellaneous spreadsheet 1: rows 2-15; miscellaneous spreadsheet 2: 2-15. BNY Mellon: miscellaneous spreadsheet 1: 2-4; miscellaneous spreadsheet 2: 2-243. This is over three hundred distinct entries. Initially, Tiberius sought information pertaining to WAMT – none of the WAMT information was designated in any way. So Tiberius has all this information, none of it was designated, and yet because this information undermines Tiberius's position and representations to the Court, Tiberius seeks broader and different discovery in contravention of the Protective Order. *See, e.g.*, First Joint Letter, dated March 30, 2020 (ECF No. 34) at 5. The Court should not countenance this conduct.

Furthermore, all designations and redactions were made strictly in compliance with the plain language of the Protective Order and Objectors reinforced that fact in many communications to Tiberius. Protective Order ¶¶ 3, 11, 12. Tellingly, Tiberius does not argue with the Confidentiality designations pertaining to transactions between Target Entities; nor does Tiberius make its request "sufficiently tailored to the litigation issues for which production is sought." *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf,* No. M19-88 (BSJ), 2006 WL 3844464, at *1, *8 (S.D.N.Y. Dec. 29, 2006). Tiberius's argument is at its essence an argument with the Protective Order and a request for broader discovery.

**Tiberius's Arguments About the Terms of the Protective Order Should Be Foreclosed, Tiberius Already Made and Lost These Same Arguments**

"There is a strong presumption against the modification of a protective order . . . absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need, . . . [a court] should not countenance such modifications." *Kiobel*, 895 F.3d at 247 (internal quotations and alterations omitted); *In re Health Mgmt. Sys., Inc. Sec. Litig.,* 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) ("The Court recognizes that reconsideration of a previous

order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."). Tiberius cannot carry that high burden or show compelling need, particularly when it cites the same exact cases, repeats the same arguments, cases it made in the Joint Letter, dated March 30, 2020 (ECF No. 34 the "First Joint Letter"), and seeks to "expose the details of all [of] their [Objectors] commercial transactions over a three-year time period." Order at 17; *see In re Accent Delight Int'l Ltd.*, No. 16-MC-125 (JMF), 2017 WL 6568059, at *2 (S.D.N.Y. Dec. 22, 2017); *Four Pillars Enterprises Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1079 (9th Cir. 2002) (denying a request which "was seeking essentially the same material in several requests in its 'Supplemental Application;'" "the new requests were reworded, but 'sufficiently close that the rule of finality would have little meaning if it could be avoided by simply tweaking the request.'"). All four cases Tiberius cites above were cited by Tiberius in the Joint Letter, dated March 30, 2020 (ECF No. 34) at 3-4. Moreover, the cited authority is irrelevant or not supportive of Tiberius's position. *See, e.g.*, *Friedman v. Wahrsager*, 848 F. Supp. 2d 278, 302 (E.D.N.Y. 2012) ("A customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret and protected at the owner's instance against disclosure to a competitor, provided the information it contains is not otherwise readily ascertainable"); *Callsome Solutions Inc. v Google, Inc.*, No. 652386/2014, 2018 WL 5267147, at *4 (N.Y. Sup. Ct. Oct. 23, 2018) (sanctioning "Google's admitted use of AEO designations to punish Callsome for causing the enforcement action"). "AEO designations seek to 'protect one party from injury -- usually injury to the party's business -- that might occur if the information is revealed to the party's competitor.'" *Callsome Solutions Inc.* at *6 (quoting *Gerffert Co. v. Dean*, No. 09 CV 266 (MKB), 2012 WL 2054243, at *5 (E.D.N.Y. June 6, 2012). Relevantly, the time to seek reconsideration of the Protective Order also has passed; the time for appeal has passed. The Court has therefore already decided this issue with finality and should not permit Tiberius to undermine the Court's Protective Order by allowing Tiberius to reargue these issues.

Objectors have already established good cause for this Protective Order, and the Court appropriately tailored the Protective Order to the needs of this matter. *See Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004); *Am. Nat. Bank & Tr. Co. of Chicago ex rel. Emerald Investments LP v. AXA Client Sols., LLC*, No. 00 C 6786, 2002 WL 1067696, at *6 (N.D. Ill. May 28, 2002), *aff'd sub nom. Am. Nat'l Bank & Tr. Co. of Chicago v. Axa Client Sols., LLC*, No. 00 C 6786, 2002 WL 1838144 (N.D. Ill. Aug. 12, 2002) (denying a request for modification of a protective order) ("the court need not make a finding of good cause on a document-by-document basis," "[a] threshold finding of good cause is sufficient provided that the protective order covers properly demarcated categories of confidential information, makes explicit that either party can object to the other party's designation of documents as confidential, and the court is satisfied that the parties are acting in good faith in designating information as confidential"). Objectors' valid concerns remain that personal banking information and competitive business information will be revealed if the Protective Order is lifted, especially because Objectors are industry competitors with Tiberius. Fed. R. Civ. P. 26(c); *Minatec*, 2008 WL 3884374, at *9 ("Since this discovery request seeks internal documents, it is apparent that . . . confidential documents may be exposed unjustly"). "[S]uch information falls into the category of traditionally protected material." *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 144 (S.D.N.Y. 1997).

Nevertheless, Tiberius continues to reargue the same points it already lost. *See, e.g.*, *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 127 n.6 (2d Cir. 2017). Tiberius does not even attempt to show compelling need at this time; instead, Tiberius re-categorizes the AEO designations pertaining to Malcomines as "transactions with Malcomines [sic] customers" "Malcomines's customers [are] known within the industry . . . [and] include several Tiberius customers." *See Bank of New York v. Meridien* at 145 (the Applicant "has done little to substantiate its claim that it could not effectively litigate its case" without the requested documents). Far from showing compelling need, this shows precisely why the Protective Order is necessary. Tiberius's counsel now claims that it has analyzed the wire transaction information and can show which information is already publicly available and should be subject to greater discovery. *See Sullivan Marketing, Inc. v. Valassis Communications, Inc.,* No. 93 Civ. 6350, 1994 WL 177795, at *2 (S.D.N.Y. May 5, 1994). This assertion, while failing to show compelling need, also suggests that counsel is misusing protected information designated as Attorney's Eyes Only. The request should be denied and foreclosed.

During the meet and confer process, Tiberius exhibited bad faith and total disregard of the purpose of the meet and confer process. Tiberius failed and refused to address specific points Objectors raised concerning the plain language of this Court's Protective Order. For as Malcomines stressed in writing during the meet-and-confer process, "we [Malcomines] are willing to discuss any issue Tiberius may wish to raise but only in the context of the terms of the Court's Protective Order," and we specifically noted that Tiberius had made "requests and comments … at odds with the plain language of the Protective Order." Instead of addressing these issues as required, Tiberius unilaterally declared an impasse in the meet-and-confer process. Had Tiberius grappled with these points rather than truncate the meet-and-confer process, Tiberius likely would have realized its request about the designations lacks merit under the plain language of the Protective Order. By not engaging in the meet-and-confer process in a meaningful way, Tiberius is wasting the time and resources of Objectors and the Court on this meritless request. Tiberius's sharp conduct is the opposite of how Objectors approached the process before the First Joint Letter, where Objectors scrupulously adhered to the letter and spirit of the meet and confer process. On that occasion, even as Objectors exchanged drafts of our letter motion, Objectors emphasized their openness to further meet and confer efforts, in the hopes of reaching agreement on the language of Protective Order and obviating the need for the motion. Contrastingly, here, Tiberius unilaterally declared an impasse on May 8, 2020 and declared that they would file their letter on Monday, sent on late Friday afternoon, upending the meet and confer process. Tiberius has not and cannot address the fact that the plain language of the Protective Order expressly authorizes each and every designation made by Objectors. The designations are proper and this motion lacks merit. In addition, Tiberius's counsel's position in this Letter that Objectors' counsel is not willing to engage is an about-face turn. Tiberius's counsel unilaterally declared an impasse late on Friday afternoon, May 8, 2020, foregoing the whole basis of the meet and confer process and setting the timetable for the filing of the letter of today, May 11, 2020. Conveniently, now, Tiberius is now improperly and in bad faith seeking to bolster its position after seeing that Objectors pointed out Tiberius's insufficient meet-and-confer efforts, and is trying to manufacture a claim that Objectors somehow did not meet-and-confer (a claim that was not in Tiberius's original draft). The Court should not countenance this artificial attempt to bolster after the fact. Accordingly, Objectors respectfully request that the Court enter an Order denying this motion.

Hon. Vernon S. Broderick                                                                 Page 9
May 11, 2020

**Conclusion**

The Parties respectfully submit this joint letter and are available for a conference with the Court as Your Honor requires.

Respectfully,


Michael S. Cryan                                    Courtney E. Scott
Arent Fox LLP                                       Tressler LLP
Counsel for Objectors                               Counsel for Applicant