UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
IN RE:                                                      :
                                                            :
EX PARTE APPLICATION OF TIBERIUS                            :     19-mc-467 (VSB)
GROUP AG,                                                   :
                                                            :     **ORDER**
                                          Applicant.        :
                                                            :
------------------------------------------------------------X

<u>VERNON S. BRODERICK</u>, United States District Judge:

      I am in receipt of the parties' May 11, 2020, joint letters, one filed on the public docket, (Doc. 37), and one submitted by e-mail to chambers, detailing two pending discovery disputes in connection with Applicant Tiberius Group AG's request for discovery pursuant to 28 U.S.C. § 1782 and various objecting parties ("Objectors") who are among the subjects of those discovery requests. For the reasons stated below, (1) Applicant's request that I strike Objectors' Attorneys' Eyes Only designations is DENIED and the parties are directed to further meet and confer in accordance with this Order; (2) Applicant's request to serve subpoenas to obtain wire transfer information relating to Malcomines Minor Metals and BlackMetal s.r.o. Bratislava ("BlackMetal") is GRANTED; and (3) Applicant is advised that it is not permitted to serve subpoenas to obtain wire transfer information relating to Samaila Ibrahim and Slavko Kilibarda. In addition, to avoid any further misunderstandings as to the scope of Applicant's authorization to take discovery in connection with this action, paragraph 2(ii) of my Order dated November 6, 2019, (Doc. 12), is hereby VACATED.

I. **Background**[1]

Applicant Tiberius is an asset management and metal trading company that engages in the purchase and sale of tin concentrates in Nigeria. (Conf. Ltr. at 1.)[2] Applicant contends that during 2019, it provided over $34 million tin pre-financing for the procurement of tin concentrates to Malcomines Ltd., through Applicant's subsidiary. (*Id*. at 1–2.) Applicant further contends that Malcomines Ltd. neither delivered all the promised shipments nor returned the excess funding, and believes that Malcomines Ltd. sold or is selling the undelivered tin concentrates purchased with Applicant's funds to Applicant's customers. (*Id.* at 2.) Accordingly, Applicant initiated a legal proceeding in Nigeria (the "Nigeria Action") to "recover the outstanding 16 containers of tin concentrates from Malcomines [Ltd.] . . . or a refund." (*Id.*) The Lagos High Court issued an injunction restraining Malcomines Ltd. from dissipating any of its assets within Nigeria. (*Id.*)

Tiberius Group AG ("Applicant" or "Tiberius") commenced this action in this court on October 21, 2019 by filing an ex parte application for discovery pursuant to 28 U.S.C. § 1782. (Docs. 6–8.) Applicant sought permission to issue subpoenas to various New York-based banks (the "New York Banks") seeking wire transfer information relating to Malcomines Ltd., West African Mineral Trading Ltd. ("WAMT"), Malcomines GmbH ("Malcomines GmbH"), S&M Pan African Mines & Logistics Ltd. ("S&M Pan African"), Full Bliss Logistics Ltd. ("Full Bliss"), Michel Babic ("Babic"), Murtala Laushi ("Laushi"), and Malcomines Minor Metals Ltd. ("Minor Metals," and together with Malcomines Ltd., WAMT, Malcomines GmbH, S&M Pan African, Full Bliss, Babic, and Laushi, the "Target Entities"). Shortly thereafter, certain of the

---

[1] I assume familiarity with the factual and procedural history of this case, detailed in my March 6, 2020 Opinion & Order, and set forth only those allegations that are pertinent to the instant disputes. My summary of the factual allegations is not intended to be and should not be construed as a finding as to the veracity of those allegations.
[2] "Conf. Ltr." refers to the joint letter from the parties submitted by e-mail to my chambers on May 11, 2020.

Target Entities—Malcomines Ltd., Malcomines GmbH, S&M Pan African, Babic, Laushi, and Minor Metals (together, the "Objectors")—filed a motion to quash the subpoenas. (Doc. 17.) By Opinion & Order dated March 6, 2020 ("March 6 Opinion" or "Mar. 6 Op."), I granted that motion in part and denied it in part. (Doc. 32.) Specifically, because I found that Applicant had not sufficiently justified the breadth of the proposed subpoenas, I modified them and granted leave to Applicant to issue subpoenas: (1) seeking information about wire transfers completed from 2016 through the present involving non-objectors WAMT and Full Bliss; (2) seeking information about wire transfers completed from 2018 through the present involving Objector S&M Pan African; and (3) seeking information about wire transfers completed from 2019 through the present involving Objectors Malcomines Ltd., Malcomines GmbH, Babic, and Laushi. (Mar. 6 Op. at 18.) Among other aspects of Applicant's requests, I denied Applicant leave to subpoena information about Minor Metals because Applicant had "made no allegations about Minor Metals or its ownership . . . that would suggest it is interrelated with the other Target Entities." (*Id.* at 17.) I further directed the parties to meet and confer on the other information sought by Applicant and submit an update within thirty days, (*id.* at 19), and encouraged them to enter into a protective order to address Objectors' stated concerns about the disclosure of sensitive business information, (*id.* at 18.)

On March 30, 2020, Applicant and Objectors submitted a joint letter proposing entry of dueling proposed protective orders. (Doc. 34.) By endorsement dated April 2, 2020, I granted Objectors' request and denied Applicant's request, (Doc. 35), and so-ordered the protective order proposed by Objectors ("Protective Order," (Doc. 36).)

On May 11, 2020, the parties submitted (1) a joint letter on the public docket describing the parties' dispute over the interpretation of the protective order in place in this case, (Doc. 37),

3

and (2) a confidential joint letter by e-mail describing the parties' dispute over Applicant Tiberius Group AG's request to expand the scope of the subpoenas and stated intention to issue subpoenas seeking wire transfer information related to two new individuals.[3]  I address these disputes in turn.

>       II.     **<u>Applicant's Request that Objectors' Attorneys' Eyes Only Designations be Stricken</u>**

Applicant requests that I strike all of Objectors' "Attorneys' Eyes Only" ("AEO") designations because they are overbroad and because Objectors have failed to provide proper explanations of the basis for each designation.  According to Applicant, Objectors have designated as AEO every line item in the wire transfer records except one, improperly abusing the discovery process and "prevent[ing] Tiberius . . . from being able to actually review and analyze information that would be detrimental to Objectors in the Nigerian Action and contemplated foreign proceedings." (Doc. 37, at 3.)  Applicant contends this is particularly improper because many of the counterparties to the transactions are known to the industry to be customers of Malcomines, or are former Tiberius customers.  (*Id.* at 4.)  Further, Applicant argues, Objector has failed to satisfy its obligation under the Protective Order to explain its designations, impairing Applicant's ability to challenge them.  (*Id.*)

Objectors respond that (1) they did not actually designate all entries as AEO; (2) their designations comply with the Protective Order, which provides that "banking information disclosing the date, amount and counterparty of a wire to or from any entity that is not a Target Entity is presumptively entitled to designation as Confidential – Attorney's Eyes Only," (Protective Order ¶ 12); (3) they did in fact "provide a description of and explanation for the redactions"; and

---

[3] The parties are directed to (1) file a copy of the confidential letter in its original form under seal on the electronic docket, and (2) to meet and confer on whether that letter can be filed on the docket in redacted form, and to propose any redactions within 14 days.

(4) Applicant is effectively trying to relitigate the Protective Order.

The Protective Order sets forth various definitions and procedures related to confidential materials. Specifically, under the Protective Order, the designation of "Confidential" refers to "such portions of such material relating to the Parties, collectively or to any of them, that contain non-public business, commercial, financial, or personal information, the public disclosure of which is either restricted by law or could, in the good faith opinion of the Party making such designation (the "Designating Party"), adversely affect that Designating Party's privacy obligations or policies, business, commercial, financial, or personal interests." (Protective Order ¶ 2.) Further, "'Attorney's Eyes Only' means that subset of Confidential Information . . . which would not normally be disclosed to the Parties or to the public at large, would be maintained in confidence and that the Designating Party in good faith believes is so personally, economically, or competitively sensitive that disclosure would materially affect or threaten injury to personal, business, commercial or financial interests[,] . . . include[ing], but [] not limited to, trade secrets or other highly sensitive personal, financial, commercial or customer information." (*Id.* ¶ 8.) All wire banking information "disclosing the date, amount and counterparty of a wire to or from any entity that is not a Target Entity is presumptively entitled" to a designation of AEO. (*Id.* ¶ 12.) Nevertheless, all designations must be accompanied by "sufficient information . . . regarding the basis for the designation to enable the non-designating Party to evaluate the basis for such designation." (*Id.* ¶ 3.) To object to a designation of confidentiality, a party must "serve on the Designating Party a written notice stating with particularity the grounds of the objection." (*Id.* ¶ 10.) If the parties cannot come to an agreement on the designation, they may seek a ruling from me by filing a joint letter application in accordance with Rule 3 of my Individual Rules.[4] (*Id.*)

---

[4] I note that despite the fact that Rule 3 provides that letters seeking resolution of a discovery dispute must be no more than six pages long, Applicant and Objectors submitted a joint letter of nine pages without setting forth good cause and without seeking advance permission to do so.

Thus, to the extent that Objectors believe they are not required to explain their designations, that belief is incorrect and is inconsistent with the Protective Order. While information may be presumptively designated as AEO under the Protective Order, it must still satisfy the substantive definition of information that may be subject to the AEO designation; in other words, the Designating Party must actually believe that the information is "so . . . sensitive that disclosure would materially affect or threaten injury to personal, business, commercial or financial interests." (*Id.* ¶ 8.) In addition, nothing about the language or structure of the Protective Order suggests that the presumption either (1) relieves Objectors of their obligation to provide Applicant with sufficient "information regarding the basis for the designation[s]" to allow Applicant to evaluate that basis, or (2) precludes Applicant from challenging that designation.

Because Objectors' purported explanations for their designations do not actually set forth a basis for the AEO designations beyond simply referring to the presumptive designation,[5] I find that they are deficient and do not satisfy the requirements of the Protective Order. However, I also find that a wholesale striking of the designations is not warranted because Applicant has not yet made a compelling argument as to why the particular pieces of information at issue are not AEO within the meaning of the Protective Order. (*See id.* ¶ 8.)

Accordingly, the parties are directed to further meet and confer as to the AEO

---

[5] For example, one of the e-mails cited by the Objectors merely states:

> Pursuant to the Court's Protective Order dated April 2, 2020 (ECF No. 36, the "Protective Order"), Objectors hereby designate the following with respect to the production by UBS.
>
> UBS produced one Excel spreadsheet on March 6, 2020. Objectors hereby designate rows 1-2 as Confidential-Attorney's Eyes Only (or "C-AEO"). We have attached in native format a copy of the UBS production marked in accordance with the designations set forth above: C-AEO information has been marked as C-AEO.

(Doc. 37-2.)

designations in light of my rulings in this Order. Specifically, Objectors shall provide more detailed explanations for its designations consistent with this Order and the Protective Order; and to the extent that Applicant believes the designations are unwarranted, it shall "state with particularity the grounds of the objection." If the parties cannot come to an agreement, they shall submit a joint letter detailing their disputes along with copies of the relevant documents with the disputed designations indicated. The parties may submit the documents at issue for *in camera* inspection by e-mailing them to my chambers at BroderickNYSDChambers@nysd.uscourts.gov.

### III. Applicant's Request to Expand the Scope of the Subpoenas

Applicant also seeks leave to issue additional subpoenas to the New York Banks seeking wire transfers involving Minor Metals beginning May 21, 2019 and BlackMetal s.r.o. Bratislava ("BlackMetal"), owned by Objector Babic, beginning January 1, 2019. (Conf. Ltr. 1.) Applicant submits documents to demonstrate that Minor Metals is owned by Babic and Laushi and was incorporated the day after Babic left his position at WAMT. (*Id.* Ex. A.) Applicant also submits documents showing that BlackMetal is owned by Babic, (*Id.* Ex. B), and contends that the wire transfer records produced by the New York Banks in response to the previously issued subpoenas show wire transfers from S&M Pan-African to BlackMetal, (*id.* at 3–4). Applicant argues that these documents establish a factual nexus between wire transfers of Minor Metals and BlackMetal and the Nigerian Action. (*Id.*) Objectors principally argue in opposition that (1) Applicant's request is untimely and it has failed to show good cause for reconsideration; (2) Applicant has no basis for expanded discovery and is simply engaging in a fishing expedition. (*Id.* at 5–9.)

I find that Applicant's proposed subpoenas as to Minor Metals and BlackMetal satisfy the requirements for a § 1782 application. Pursuant to 28 U.S.C. § 1782, "a district court is authorized to grant a § 1782 request where: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for

7

use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012). In addition, the Supreme Court has identified the following four discretionary factors to aid district courts in determining whether to grant § 1782 applications: "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'" *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004)). In their motion to quash, Objectors did not dispute that Applicant had satisfied the three statutory factors and the first two *Intel* factors, but argued that the application should be denied on the basis of the third and fourth *Intel* factors. (Mar. 6 Op. at 8.) I found that the third factor favored Applicant. With respect to the fourth factor, although district courts should "be permissive" when assessing relevance in the context of § 1782, *In re Christen Sveaas*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008), I nevertheless found that "Applicant ha[d] not sufficiently justified the breadth and scope of their discovery requests in the face of Objectors' concerns about intrusiveness and relevance." (Mar. 6 Op. 16–17.) I therefore modified the subpoenas and allowed the discovery of information whose relevance to the Nigeria Action Applicant had been clearly established. (*See supra*, at 3.)

Similarly, here, Applicant has (1) reiterated that in the Nigeria Action it seeks to recover the outstanding containers of tin concentrates or a refund, that Malcomines is enjoined from dissipating

8

any assets located in Nigeria, and that Defendants have collectively diverted Applicant's money for their own use[6]; and (2) that Minor Metals and BlackMetal are interrelated with Malcomines because they are both owned by Objector Babic, suggesting that wire transfers to or from those entities within the specified time period—which overlaps with the events described in the application that underlie the Nigeria Action—might have probative value in the Nigerian Action.  These allegations establish a sufficient factual nexus for the purposes of a § 1782 application.

Objectors' argument as to timeliness is baseless.  In my March 6 Opinion, I directed the parties to meet and confer on the additional information sought by Applicant and directed the parties to "submit an *update* . . . within 30 days." (Mar. 6 Op. at 19 (emphasis added).)  I did not set a deadline for attempts by Applicant to seek additional information; therefore, considering Applicant's instant request does not require reconsideration of my prior decision.

Next, Objectors' argument that Applicant has failed to show why it needs "more discovery" or "why the information produced about WAMT and Malcomines Ltd. is insufficient," (Conf. Ltr. 7–8) suggests that Objectors believe that a § 1782 applicant must make all its discovery requests in its initial application, and that any subsequent application must be supported by some sort of heightened justification.  Objectors supply no authority for this proposition and I decline to find such a heightened justification is required.

Although courts should indeed "be wary of fishing expeditions in which § 1782 applicants seek new tidbits they can use as the basis to bring litigation, rather than support the

---

[6] Objectors claim that "the basis for Tiberius's entire application keeps changing." (Conf. Ltr. 7.)  According to Objectors, Applicant's original basis for discovery differs significantly from its current asserted basis that "Tiberius has reason to believe that Malcomines Ltd., Babic and/or Laushi have absconded with the excess funding, have sold, or are in the process of selling, the undelivered balance of tin concentrate, through Malcomines or related entities and individuals, and have diverted the outstanding prepayment balance for their own purposes." (*Id.* at 7–8.)  I disagree with Objectors that this assertion materially differs from the assertions made in Applicant's previous submissions; for example, in Applicant's declaration support of its initial ex parte application, it stated that "Tiberius has reason to believe that Malcomines Ltd. has simply absconded with the excess funding, and has sold, or in in the process of selling, the undelivered balance of tin concentrate, and intends to use the outstanding prepayment balance and proceeds from the sale of the undelivered tin concentrate to capitalize its new Swiss affiliate, Malcomines GmbH," jointly owned by Babic and Laushi. (Meredith Decl. ¶¶ 12, 38.)

claims they have already made," *Deposit Ins. Agency v. Leontiev*, No. 17MC00414GBDSN, 2018 WL 3536083, at *9 (S.D.N.Y. July 23, 2018) (citing *In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14-CV-1801 (NRB), 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014), *aff'd sub nom. Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015)), Objectors have not set forth a compelling reason to believe Applicant's request conceals an opportunistic effort to seek out information in support of additional litigation; to the contrary, the information Applicant now seeks is similar to the information that was the subject of their initial application and bears a similar connection to the Nigeria Action.  In contrast, the Objectors cite cases where district courts have denied applications as fishing expeditions involved requests for discovery that was significantly more attenuated from the merits of the foreign litigation than in the instant case. *See In re Postalis*, No. 18-MC-497 (JGK), 2018 WL 6725406, at *4 (S.D.N.Y. Dec. 20, 2018) (denying application which sought information from U.S. bank, even though only bank subsidiaries were parties to the foreign litigation); *Deposit Ins. Agency*, 2018 WL 3536083, at *9 (denying application for discovery of opposing party's personal assets where that information was not relevant to the merits of the claim); *Ayyash v. Crowe Horwath LLP*, No. 17-MC-482 (AJN), 2018 WL 2976017, at *3 (S.D.N.Y. June 13, 2018) (denying request that explicitly made clear that applicant was attempting to sort out legal and financial relationships to determine who he could "seek recovery from"); *In re Apotex Inc.*, No. M12-160, 2009 WL 618243, at *4 (S.D.N.Y. Mar. 9, 2009) (finding request unduly intrusive and burdensome where it required non-party to "perform onerous searches and then review voluminous documents for a potentially small subset of [] documents that date back nearly thirty years").

    Accordingly, Applicant is granted permission to serve subpoenas on the New York Banks seeking information on wire transfers involving Minor Metals beginning May 21, 2019 and

BlackMetal beginning January 1, 2019. These subpoenas should be substantially in the form proposed by Applicant in its initial ex parte application, (*see, e.g.* Doc. 7-1), and modified and approved by me on November 6, 2019, (Doc. 12.) If Applicant seeks to deviate that form beyond merely substituting the relevant bank, Target Entity, and date range, it must seek permission from me.

### IV.     Applicant's Intention to Serve Additional Subpoenas

Finally, Applicant states that it intends to issue subpoenas for wire transfers involving Samila Ibrahim and Slavko Kilibarda, co-owners of Objector S&M Pan-African, from January 1, 2018, to the present. Applicant does not seek leave to issue these subpoenas, but contends it may do so on its own initiative pursuant to my November 6, 2019 Order "authorizing Tiberius to serve additional subpoenas on the Domestic Banks." (Conf. Ltr. 4.)

In my November 6, 2019 Order, I "authorized [Applicant] to take discovery relating to issues identified in the Application and the supporting Memorandum of Law in accordance with the Federal Rules of Civil Procedure and the Rules of this Court, including by. . . serving additional subpoenas on the Domestic Banks for the production of documents and/or depositions as Applicant reasonably determines to be appropriate." (Doc. 12.) In other words, I granted Applicant leave to serve additional subpoenas to the extent they sought information related to the issues identified in the initial application and supporting documents.

Here, while Applicant's moving papers set forth allegations about S&M Pan-African and its alleged involvement in the events underlying the Nigeria Action, the papers did not identify Ibrahim or Kilibarda or detail their role in those events. Any subpoenas seeking information about either individual therefore falls outside the limited authorization provided by the November 6, 2019 Order, and Applicant must seek leave of Court to issue such subpoenas. Further, in the interests of avoiding any additional misunderstandings about the language of the

11

November 6, 2019 Order, the limited additional authorization provided by the Order in paragraph 2(ii) is hereby VACATED.  Applicant must make a new application for any additional subpoenas it seeks to issue on New York entities in connection with the Nigeria Action.

### V. The Meet and Confer Requirement

Both Applicant and Objectors contend that the other party's participation in the meet and confer process was deficient.  The parties are advised that they must redouble their efforts to meet and confer in good faith.

Accordingly, it is hereby:

ORDERED that Applicant's request that I strike all of Objectors' Attorneys' Eyes Only designations is DENIED.  Objectors are directed to provide Applicant with the bases for their designations, and to the extent Applicant disagrees with those bases, it must set forth its objections with particularity.  If, after meeting and conferring, the parties cannot come to an agreement, they may submit a joint letter consistent with my individual rules to me seeking guidance.

IT IS FURTHER ORDERED that Applicant's request to serve subpoenas on the New York Banks seeking information on wire transfers involving Minor Metals beginning May 21, 2019 and BlackMetal beginning January 1, 2019 is GRANTED.  These subpoenas should be substantially in the form proposed by Applicant in its initial ex parte application, (*see, e.g.* Doc. 7-1), and modified and approved by me on November 6, 2019, (Doc. 12.)  If Applicant seeks to make any non-clerical deviations from that form, it must seek permission from me.

IT IS FURTHER ORDERED that the portion of my November 6, 2019 Order granting Applicant authorization to serve "additional subpoenas on the Domestic Banks for the production of documents and/or depositions as Applicant reasonably determines to be appropriate," (Doc. 12, at ¶ 2(ii)), is VACATED.

IT IS FURTHER ORDERED the parties are directed to (1) file a copy of the confidential letter in its original form under seal on the electronic docket, and (2) to meet and confer on whether that letter can be filed on the docket in redacted form, and to propose any redactions within 14 days.

IT IS FURTHER ORDERED that counsel for Applicant and Objectors shall submit proposed redactions to this Opinion & Order within 14 days.  I will review those redactions and will file the Opinion & Order on the public docket in redacted form, if appropriate.  If they do not submit proposed redactions within that time, I will file this Opinion & Order on the public docket in its current form.

SO ORDERED.

Dated: September 14, 2020
      New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge